IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., ) | CIVIL NO. CV04-00509 SPK LEK |
| Plaintiff, ) | **SUPPLEMENTAL DECLARATION OF JAMES P. CARMICHAEL** |
| vs. ) | |
| GMP HAWAII, INC., ) | |
| Defendant. ) | |

**SUPPLEMENTAL DECLARATION OF JAMES P. CARMICHAEL**

I, JAMES P. CARMICHAEL, declare as follows:

1. I am the Executive Vice President of the Engineering & Facilities Development Group of Synagro Technologies, Inc. and Vice President of Synagro-WWT, Inc. ("Synagro"), which is the general contractor under the Construction Contract for the Design, Engineering, Construction and Testing of an In-Vessel Bioconversion Facility ("Project") for the City and County of Honolulu ("the City").

2. I make this declaration based on my personal knowledge and I am competent to testify as to the matters set forth herein.

3. I provide this supplemental declaration in support of Synagro's Reply in Support of its Renewed and Supplemented Motion for Summary Judgment in the above-captioned case, filed on December 2, 2005.



**EXHIBIT B**

4. On January 27, 2000, Synagro (then Bio-Gro) and U.S. Filter submitted a five volume joint venture packet to the City, which detailed their qualifications, experience, and technical proposal for the Project. There was no reference to or any mention of GMP in any of the qualification documents or the technical proposal submitted with that packet. Additionally, there was never any intent, agreement, or discussions between Synagro and GMP to enter a joint venture agreement on the Project.

5. Attached as Exhibit "S" is a true and correct copy of the "Executive Summary" to the "Proposal to the City and County of Honolulu, Hawai'i for an In-Vessel Bioconversion Facility", dated January 27, 2000.

6. Attached as Exhibit "T" is a true and correct copy of the "Offeror's Qualifications" to January 27, 2000 Proposal to the City. This document clearly identified the offerors as Synagro and U.S. Filter and further provided that these companies "have agreed to combine [their] experience and capabilities for this IFB."

7. As reflected in the "Offeror's Qualifications", both Synagro and U.S. Filter have extensive expertise, knowledge, and experience in the "design, construction, and operation of similar biosolids handling facilities of similar complexity."

8. On March 31, 2000, prior to the May 2001 presentation, the Synagro/U.S. Filter team was pre-qualified as a

2

potential contractor on the Project and their technical proposal was found acceptable by the City. Attached as Exhibit "U" is a true and correct copy of the March 31, 2000 letter from the City to Synagro/U.S. Filter.

9. Pre-qualification enabled the Synagro/U.S. Filter team "to participate in the negotiation of the Construction Contract", which allowed them to proceed in the bidding process and provide a presentation to further educate the City on its proposal for the Project.

10. Synagro did not meet GMP until late 2000 or early 2001. Therefore, GMP was not instrumental to and had no participation in either conceptualizing the Project proposed in the January 2000 qualifications and technical proposal or in assisting Synagro to become pre-qualified by the City in March of 2000.

11. Attached as Exhibit "V" is a true and correct copy of the July 18, 2001 letter from James R. Hecht of Synagro to Wagdy Guirguis of GMP. In this letter, Synagro stated its commitment to include GMP in the project delivery team, but clarified that GMP's "role would be primarily as engineering support for the non-process designed to [Synagro's] two main EPC sub-contractor, CBI and Andritz."

12. GMP was never informed by Synagro that they would provide engineering design for the entire project or construction management on the Project. Rather, as reflected in the July 18,

2001 letter to GMP, Synagro intended to include GMP in the project delivery team, and informed GMP to contract with CBI and Andritz for balance of plant engineering. It is undisputed that GMP was, in fact, part of the project deliver team and received work on the Project and compensation through its subcontracts with CBI, Andritz, and Analytical Planning Consultants, Inc. See Exhibits "F", "G", and "H" of Motion.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed in Honolulu, Hawai'i, __December 1, 2005__.

JAMES P. CARMICHAEL