IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., ) | CIVIL NO. CV04-00509 SPK LEK |
| ) | |
| Plaintiff, ) | **DECLARATION OF JAMES P.** |
| vs. ) | **CARMICHAEL** |
| ) | |
| GMP HAWAII, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DECLARATION OF JAMES P. CARMICHAEL

I, JAMES P. CARMICHAEL, declare as follows:

1. I am the the Executive Vice President, Engineering & Facilities Development Group, of Synagro Technologies, Inc. and Vice President of Synagro-WWT, Inc. ("Synagro"), which is the general contractor under the Construction Contract for the Design, Engineering, Construction and Testing of an In-Vessel Bioconversion Facility ("Project") for the City and County of Honolulu ("the City").

2. I make this declaration based on my personal knowledge and I am competent to testify as to the matters set forth herein.

3. On February 6, 2002, the City sent a letter informing Synagro that it was awarded the Contract for the Project. Exhibit "B" is a true and correct copy of that letter.

4. The City and Synagro executed the construction contract for the Project on May 7, 2002. Exhibit "C" is a true and correct copy of the contract between the City and Synagro.

590685 v1 / 7392-3



5. In November of 2001, Synagro entered into a contract with Andritz-Ruthner, Inc. ("ARI") for engineering and construction services related to the Project. Exhibit "D" is a true and correct copy of the contract between Synagro and ARI.

6. In March 2002, Synagro entered into a contract with Chicago Bridge & Iron Services, Inc. ("CBI") for design and construction work related to the biosolids digester portion of the Project. Attached as Exhibit "E" is a true and correct copy of the contract between Synagro and CBI Contract.

7. In August 2002, CBI entered into a separate subcontract with GMP for field investigation work to generate a geotechnical report, and design and civil engineering work for biosolids digester portion of the Project. Attached as Exhibit "F" is a true and correct copy of the subcontract between CBI and GMP, including all related correspondence and contract modifications between CBI and GMP.

8. In November 2002, ARI entered into a separate subcontract with GMP for design and engineering services related to the Project ("ARI-GMP Subcontract"). Attached as Exhibit "G" is a true and correct copy of the subcontract between ARI and GMP.

9. On August 22, 2002, Synagro entered a consulting agreement with Analytical Planning Consultants, Inc. ("APC") to prepare and process permits for construction of the Project, attached as Exhibit "H" as a true and correct copy of the

agreement. In July of 2002, GMP contracted with APC to provide environmental assessment work on the Project, attached as Exhibit "I" are true and correct copies of the July 5, 2005 letter reflecting the agreement between GMP and APC and GMP's invoices.

10. In a January 27, 2003 letter, Synagro submitted to the City a proposed pricing schedule for Change Order #1, which was subject to the City's "review and approval". Attached as Exhibit "J" is a true and correct copy of the January 27, 2003 letter to the City. This proposal provided a price schedule related to moving the construction site for the Project from a green field site, under the original contract, to an existing building.

11. The reference to "Additional construction management services by GMP" was included in the proposal at GMP's request. Attached at Exhibit "K" is a September 4, 2002 facsimile from Wadgy Guirguis containing GMP's "Proposed Language" related to construction management on the Project that Mr. Guirguis requested I include in the change order.

12. However, the proposed construction management work and related costs were subsequently deleted by the City during the review and approval process. Attached as Exhibit "L" is a true and correct copy of an email, dated June 5, 2003, from Steven Serikaku of the City to Synagro, where the City stated that "[t]he $200,000.00 cost for additional construction management shall be deleted."

13.  The raw sludge sampling performed by GMP pursuant to the February 27, 2004 email, see Opposition at Exh. 7, was an isolated request for services by Synagro to address the City's environmental concerns about salt water intrusion into the digester and its impact on digester performance, and it was unrelated to the construction of the Project.

14.  Attached as Exhibit "M" is a true and correct copy of an April 5, 2004 email I sent to Frank Doyle and Ken Kawahara of the City relaying the findings of the "anaerobic digestion study," which the City requested Synagro to perform to address its environmental concerns.

15.  Synagro has paid GMP in full for its sludge sampling services.  On April 27, 2004, Synagro approved the payment of $1,367.01 to GMP for its services related to the sludge sampling.  Attached as Exhibit "N" is a true and correct copy of Synagro's approval of GMP's invoice.

16.  On May 20, 2004, Synagro issued a check in the amount of $1,367.01 to GMP as payment for its services related to the sludge sampling.  This check was endorsed on May 24, 2004.  Attached as Exhibit "O" is a true and correct copy of the check issued by Synagro to GMP with the endorsement information on the back of the check.

17.  On December 30, 2004, construction of the Project commenced after approval of the building permit, and the

scheduled completion date is April 1, 2006, which is a 15-month construction period as contemplated in the City-Synagro Contract.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Honolulu, Hawai'i on September 12, 2005.

                                          _____
                                                JAMES P. CARMICHAEL