

**SAKAI IWANAGA SUTTON**
A Law Group, AAL, LLLC
RICHARD C. SUTTON, JR.    1010-0
Email: dsutton@lava.net
City Financial Tower
201 Merchant Street, Suite 2307
Honolulu, Hawaii 96813
Telephone: (808) 792-3888
Facsimile: (808) 521-5262

**CASE LOMBARDI & PETTIT**
A Law Corporation
MICHAEL R. MARSH        1327-0
Email: mmarsh@caselombardi.com
TED N. PETTIT            4287-0
Email: tpettit@caselombardi.com
JOHN D. ZALEWSKI        4718-0
Email: jzalewski@caselombardi.com
MALIA S. LEE            8159-0
Email: mlee@caselombardi.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone  (808) 547-5400
Facsimile:  (808) 523-1888

Co-Counsel for Defendant
**GMP HAWAI`I, INC.**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 2 3 2006

at ___ o'clock and ___ min. P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., | CIVIL NO. CV04-00509 SPK LEK |
| Plaintiff, | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO SYNAGRO TECHNOLOGIES, INC.'S** |
| vs. | **(Caption cont. on next page)** |

28130/2/428993

 

GMP HAWAI`I, INC.,

    Defendant.

***AMENDED* MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES; DECLARATION OF MICHAEL R. MARSH; DECLARATION OF WAGDY A. GUIRGUIS; EXHIBITS "1" – "7"; CERTIFICATE OF SERVICE**

Non-Hearing Motion



## Table of Contents

**Section**                                                                 **Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Defendant's Memorandum in Opposition to Synagro Technologies, Inc.'s
*Amended* Motion for Attorneys' Fees and Related Non-Taxable Expenses . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Relevant Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Relevant Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    Pursuant to Local Rule 54.3(d)(2), Inadequately Described Fees
        Are Not Awardable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    Several Categories of Fees Claimed by Synagro Are Not
        Awardable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.    Fees Claimed For "Half" of the Time Spent on the "Andritz"
            Case Should Not Be Awarded . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    Fees Claimed For "Unknown" Work Should Not Be
            Awarded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        3.    Fees Claimed For "Questionable" Work Should Not Be
            Awarded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        4.    Fees Claimed Which Have Been So "Redacted" as to Prevent
            Meaningful Review Should Not Be Awarded . . . . . . . . . . . . 16



C.  No Fees Can Be Awarded For Services Rendered on Claims Not "In the Nature of Assumpsit" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1.  Fees Claimed Solely With Respect to Claims Not "In the Nature of Assumpsit" Should Not Be Awarded . . . . . . . . . . . .20

a.  Count I of the complaint did not assert claims "in the nature of assumpsit," and fees incurred for such should not be awarded . . . . . . . . . . . . . . . . . . . . . . .   20

b.  Count II of the Complaint and Count II of the Counterclaim did not assert claims "in the nature of assumpsit," and fees incurred for such should not be awarded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

2.  Synagro Co-Mingled its Billings For Work on the Complaint and on the Counterclaim, and Such "Mixed" Billings Should Be Apportioned . . . . . . . . . . . . . . . . . . . . . . .25

3.  Billings For Work on "Settlement" of the Case Includes Work on Claims Not "In the Nature of Assumpsit" and Such "Settlement" Billings Should Be Apportioned . . . . . . . . 26

4.  Billings For "Discovery" Include Work on Claims Not "In the Nature of Assumpsit" and Such "Discovery" Billings Should Be Apportioned . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D.  In No Case is Synagro Entitled to an Award of Attorneys' Fees Exceeding the Ceiling of 25% of Damages Sought by GMP in its Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## Table of Authorities

**Federal Cases**                                                    **Page**

*Blackburn v. Goettel-Blanton*,
    898 F.2d 95 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

*DeRoburt v. Gannett Co., Inc.*,
    558 F. Supp 1223 (D. Haw. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

*Price v. Seydel*,
    961 F.2d 1470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18


**State Cases**                                                      **Page**

*Blair v. Ing*,
    96 Hawaii 327, 31 P.3d 184 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

*Ranger Insurance Co. v. Hinshaw*,
    103 Hawaii 26, 79 P.3d 119 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Rodrigues v. Chan*,
    5 Haw. App. 603, 705 P.2d 67 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . .28, 30

*TSA International Ltd. v. Shimizu Corp.*,
    92 Haw. 243, 990 P.2d 713 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


**Statutes**                                                         **Page**

HAW. REV. STAT. § 607-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

HAW. REV. STAT § 607-14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


**Rules**                                                            **Page**

FED. R. CIV. P. Rule 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

Local Rule 54.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## **Other Authorities**                                                   **Page**

BLACK'S LAW DICTIONARY 120 (7th ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20




**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO SYNAGRO TECHNOLOGIES, INC.'S *AMENDED* MOTION
FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES**

## I.    INTRODUCTION

Defendant GMP HAWAI`I, INC. ("GMP"), by and through its co-counsel,
CASE    LOMBARDI    &    PETTIT,    hereby    submits    the    following
Memorandum in Opposition ("Opposition") to Synagro Technologies, Inc.'s
("Synagro's") *Amended* Motion for Attorneys' Fees and Related Non-Taxable
Expenses ("Amended Motion"), filed herein on May 26, 2006.[1]

The Amended Motion should be denied for the following reasons:   1)
Synagro is not entitled to fees which have been inadequately described according
to the explicit requirements of Local Rule ("LR") 54.3(d)(2); 2) Synagro is not
entitled to fees incurred for work on claims not "in the nature of assumpsit"; 3)

---

[1]    Synagro also filed, on May 26, 2006, an Amended Bill of Costs, concurrently with
its Amended Motion, requesting the Clerk of the Court to tax the costs requested therein.
Pursuant to LR 54.2, GMP filed an Objection to Synagro's Amended Bill of Costs on
June 6, 2006.

"Upon the timely filing of any objections, the Clerk of the Court will refer both the
Bill of Costs and objections to the court for a determination of taxable costs."  LR
54.2(d).

Insomuch as GMP's objections to Synagro's Amended Bill of Costs was timely
filed, GMP herein incorporates the arguments in this Opposition, applicable to its
Objections to the Amended Bill of Costs, for the Court's consideration of the same.

Furthermore, GMP is submitting applicable argument herein in opposition to the
Amended Bill of Costs because Synagro concurrently filed the Amended Bill of Costs
and the Amended Motion.  Synagro claims that the costs requested in the Amended Bill
of Costs are "inextricably intertwined with and relate to Synagro's request for attorneys'
fees and expenses.  [And] to ease the Court's review and provide a clear and concise
itemization of the costs requested, Synagro submit[ted] its request for costs separately
pursuant to LR 54.2 and 54.3."  Synagro's Memorandum in Support of Amended Bill of
Costs, at 1-2, n.1.

Synagro is not entitled to fees incurred for work on another case; 4) Synagro is not entitled to fees for "unknown" work done; 5) Synagro is not entitled to fees which are "questionably" related to this case; 6) Synagro is not entitled to the fees which have been so severely "redacted" as to prevent meaningful review; and 7) in no case is Synagro entitled to an award of attorneys' fees exceeding the 25% ceiling on damages sought, imposed by HAW. REV. STAT. ("HRS") § 607-14, or **$23,767.50**.

This Opposition is submitted pursuant to FED. R. CIV. P. ("FRCP") Rule 54(d), LR 54.3, HRS §§ 607-14 and 607-9, and is supported by the declarations and Exhibits "1" - "7" attached hereto, and the records and files herein.

## II.   BACKGROUND

The relevant facts are set forth only as necessary for a determination on the Amended Motion.

### A.   Relevant Factual Background

This action essentially arises from disagreements over pieces of a larger pie, i.e., the City and County of Honolulu ("City") contract ("Project") for the design, engineering, construction, testing, and operation and maintenance of an in-vessel, wastewater treatment, bioconversion facility at Sand Island (the "Facility"). GMP had an oral agreement directly with Synagro to perform engineering and construction management "pieces" of Synagro's overall contract with the City.



Instead of contracting directly with GMP, Synagro subcontracted with, amongst others, Andritz-Ruthner, Inc. ("ARI") to design and build the dryer portion of the Facility and with CBI Walker ("CBI") to design and build the biosolids digester portion of the Facility.    Both ARI and CBI then sub-subcontracted with GMP to perform portions of the work from their respective subcontracts with Synagro.    However, the CBI subcontract did not include all of the design work that Synagro had agreed GMP would receive for design of the biosolids digester portion of the Facility and GMP did not receive a contract to perform construction management services for construction of the Facility as Synagro had agreed.

**B.    Relevant Procedural Background**

The Complaint was filed herein on August 18, 2004 by Synagro.    Pursuant to Count I, Synagro sought a declaratory judgment that it had "no contractual obligations to GMP."    ***See*** Complaint at ¶ 34.    In Count II, Synagro alleged tortious interference by GMP with Synagro's contract with the City.    Finally, Synagro sought punitive damages for GMP's alleged breach of its contract with ARI.

Separately, ARI had filed suit against GMP in the U.S. District Court for the District of Hawaii five days earlier on August 13, 2004, under civil case number 04-00497, relating to the scope of GMP's work on the Project and GMP's ability to comply with certain deadlines associated therewith.    Declaration of Wagdy A.



Guirguis ("Guirguis Dec."), at ¶ 17. Terms of settlement were placed on the record in that case on August 27, 2004,[2] after the matter was resolved between the parties therein. Guirguis Dec. at ¶ 17. Due to continuing obligations between the parties, the stipulated dismissal was not officially filed in that case until August 12, 2005. Guirguis Dec. at ¶ 17. The ARI complaint related solely to duties running between GMP and ARI and Synagro was not a party to that action. Guirguis Dec. at ¶ 17.

On September 2, 2004, GMP filed its Answer and Counterclaim herein. GMP claimed, in Count I, breach of implied contract, and sought punitive damages in Count II.[3] Having been sued by Synagro, GMP was compelled to either assert claims that, by their nature, were compulsory, or abandon them through inaction.

On January 3, 2005, Synagro filed a Motion for Summary Judgment claiming the statute of frauds barred the implied contract claim asserted by GMP. The Motion was continued by the Court to allow further discovery to be conducted, amongst other reasons. On September 14, 2005, Synagro filed a Renewed Motion for Summary Judgment. On November 25, 2005, GMP filed its Memorandum in Opposition to Synagro's Renewed Motion for Summary Judgment. On December 13, 2006, GMP filed a Motion for Leave to File an

---

[2]     Just nine days after suit in the instant matter was instituted by Synagro on August 18, 2004.

[3]     As such, **four** (**4**) total claims were made in this case: (1) by Synagro for declaratory judgment, (1) by Synagro for tortious interference and punitive damages, (1) by GMP for breach of implied contract, and (1) by GMP for punitive damages.



Amended Counterclaim.  After briefing and hearing on both motions, the Court entered an Order Granting Synagro's Renewed Motion for Summary Judgment and Denying GMP's Motion for Leave to File Amended Counterclaim on January 11, 2006.[4]

The parties thereafter stipulated to dismiss all remaining claims, vacate the trial date and trial-related deadlines, and to have the Court determine the sole remaining issue of attorneys' fees and costs.  *See* Stipulation and Order to (1) Vacate Trial Date, Trial-Related Deadlines, (2) Set Briefing on Plaintiff's Motion for Attorneys' Fees and Costs, and (3) Dismiss Claims, filed herein on March 30, 2006 ("Stipulation to Dismiss").

---

[4]    The Court held, *inter alia*, that GMP's Counterclaim was:
> [B]arred by the statute of frauds.  There is no writing.  Such an implied agreement, if there were one, cannot be performed within a year . . . .  There are no definite terms. . . . There was no partial performance because any work GMP did 'partially' was pursuant to the ARI-GMP contract (or other subcontracts GMP had with GBI and APC).  Any misrepresentations made, if any, were to the City, not to GMP. . . .  The counterclaim for breach of implied contract, even under a "notice" pleading standard, cannot be fairly read to encompass breaches of a joint venture or other contractual agreement as between Synagro and GMP (and ARI, CBI, Hawaiian Dredging), especially where the counterclaim focuses on the representations made in the presentation to the City.  Nothing in the counterclaim hints at a joint venture agreement involving GMP and Synagro.

Exhibit "E" to the Amended Motion, at 5-7.  This was a FRCP Rule 56 Motion for Summary Judgment, granting summary judgment only as to GMP's Counterclaim.



## III.  **ARGUMENT**

Synagro is arguably entitled to an award of some attorneys' fees in this case. However, the amount it is requesting, **$93,704.61** by GMP's calculation prior to various discounts offered by Synagro, must be significantly reduced for a number of reasons.  First, as argued in § III.A, $43,079.93 of the requested fees must be denied the entries lack of adequate descriptions as required by LR 54.3(d)(2).  An "adjusted total" of **$50,624.68** remains of what are arguably adequately described fees being sought by Synagro.  However, a large chunk of those remaining fees is not awardable.

As demonstrated in § III.B, several categories of fees claimed by Synagro are not awardable.  This includes: 1) $871.87 (the "adjusted total") for fees incurred for work on another case, 2) $468.75 (the "adjusted total") for fees incurred for unknown work, 3) $304.69 (the "adjusted total") for fees incurred which questionably relate to this case, and 4) $904.68 (the "adjusted total") for billings which have been so redacted as to prevent meaningful analysis of the same.  What remains of the "adjusted total" after deduction of those amounts is **$48,074.69**.

Of this $48,074.69, only those services related to Count I of the Counterclaim are awardable, as that was the only claim arguably "in the nature of assumpsit."  Billings directly relating to Count I of the Counterclaim, Synagro's



Motion for Summary Judgment (Category SJ), and to opposing GMP's Motion to Amend its Counterclaim (Category AC) are clearly in this category and total **$18,338.95** after adjustment for the inadequately described services. What remains is **$29,735.74** in fees that were incurred for combined work on the single claim "in the nature of assumpsit" and for the three claims which were not "in the nature of assumpsit."

Section III.C establishes that the fees requested that were not incurred in connection with a claim that is "in the nature of assumpsit" must be apportioned out of any award of fees to Synagro. A fair apportionment of these fees, for work not incurred on Count I of the Counterclaim, is 75% of these billings (3 counts of 4, or 75% of the claims in the case were not "in the nature of assumpsit"). The resulting total adjusted, awardable portion of the co-mingled fees requested is thus **$7,433.93**. Adding this to the $18,338.95 clearly incurred in relation to Count I of the Counterclaim, as indicated above, brings the appropriately requested amount to **$25,772.88**.

Finally, regardless of the amount arguably incurred for work related to Count I of the Counterclaim, Synagro's entitlement to fees is capped at **$23,767.50** by HRS § 607-14, as demonstrated in § III.D, ***infra***.

The Declaration of Michael R. Marsh attached hereto (the "Marsh Declaration") explains in detail how GMP has allocated the fees claimed by



Synagro into multiple categories depending on the claim or issue to which the service related or various objections and how the amounts for each category were calculated using the Excel program. In addition, the Marsh Declaration explains how the services for which the descriptions are inadequate have been identified and calculated in by category and in total. In short, attached as Exhibit "2" is a copy of Exhibits "F" and "A" to Synagro's Motion, the listing of every service and charge for which an award of fees is requested, on which annotations have been added allocating each entry to one of 13 categories (each of which is described at ¶ 3 of the Marsh Declaration) and on which the descriptions of services that are inadequate pursuant to LR 54.3 have been highlighted in color coding to identify the nature of the deficiency in the description (*see,* ¶ 5 of the Marsh Declaration for an explanation of the color coding).

Attached as Exhibit "3" is an Excel spreadsheet on which every entry from Synagro Exhibit "F" has been entered and the amount of fees shown for each of the 13 categories has been calculated, as has been the amount of the inadequately described fees within each of those categories, and the adjusted totals for each category with and without gross excise tax have been added. Finally, attached as Exhibit "1" is a one page summary of the Excel spreadsheet (Exhibit "3") with the fees totaled by invoice for all of the categories, which summary includes all of the adjustments and gross excise tax calculations included in Exhibit "3." As Exhibit



"1" provides a one page summary overview of all of the pertinent calculations, GMP suggests that the Court primarily utilize Exhibits "1" and "2" in reviewing and analyzing the following argument and only refer to Exhibit "3" as necessary to check or confirm the categorization and calculation of specific entries.

### A.    Pursuant to LR 54.3(d)(2), Inadequately Described Fees Are Not Awardable

Nearly half of the fees sought by Synagro lack adequate descriptions.  LR 54.3(d)(2) requires Synagro to adequately describe the services rendered such that "the reasonableness of the requested fees can be evaluated."  The Court may reduce an award of attorneys' fees if "the time descriptions are incomplete," or if the "descriptions fail to describe adequately the services rendered."  LR 54.3(d)(2). As such, the Court should not award the $43,079.93 in fees which are incompletely and/or inadequately described,[5] even assuming, arguendo, that such fees are awardable.

"[T]ime entries for telephone conferences must include an identification of all participants and the reason for the call."  LR 54.3(d)(2).  Attached hereto as Exhibit "2" is a true and correct copy of Synagro's Exhibits "F" and "A" to the Amended Motion.   The time entries in Exhibit "2" which do not include identification of "all participants" and/or the "reason for the call," have been highlighted in ORANGE for the Court.  These requested fees should be denied.

---

[5]    *See* Exhibit "1" ("Summary") (totaling Synagro's inadequately described fees).

"[Time] entries for legal research must include an identification of the specific issue researched, and, if possible, should identify the pleading or document for which the research was necessary." LR 54.3(d)(2). Time entries in Exhibit "2" which do not include an "identification of the specific issue researched" and/or, where possible, did not "identify the pleading or document for which the research was necessary" have been highlighted in PURPLE for the Court. These requested fees should be denied.

"[Time] entries describing the preparation of pleadings and other papers must include an identification of the pleading or other document prepared and the activities associated with such preparation." LR 54.3(d)(2). Time entries in Exhibit "2" which do not include an identification of the "pleading or other document prepared" and/or did not identify "the activities associated with such preparation" have been highlighted in PINK for the Court. These requested fees should be denied.

LR 54.3 provides the above as examples of the kinds of descriptions which are required from the movant, but these are merely "examples." GMP therefore submits that the following entries were also incomplete and/or inadequate. Time entries were submitted for various e-mails which did not list the sender and/or recipient and/or the reason therefor or the subject thereof. Time entries in Exhibit "2" which do not include an identification of "all participants" in the email and/or

the "reason for the email" have been highlighted in GREEN for the Court. These elements have been identified based on the telephone call requirements, as both telephone calls and emails are forms of communication. Billings for emails should be identified with similar adequacy to that required for telephone calls. The requested fees for inadequately described emails should therefore also be denied.

There are "other" time entries which are incomplete and/or inadequate for various other reasons, not stated above in this subsection. These entries have been highlighted in BLUE for the Court on Exhibit "2". These are entries for meetings, conferences, "work" or other activities. Such entries do not state what was worked on, who was met with, and/or what the reason for the activity was. These requested fees for inadequately described "other" work should likewise be denied.

Finally, the time entries are incomplete and/or inadequate in that the time is lumped-together, and cannot be apportioned into objectionable entries and non-objectionable entries, and in that various objectionable parts cannot be apportioned. For example, on page 4 of Exhibit "2" (Exhibit "F" to the Amended Motion), there is an entry on 09/07/04 for 0.40 hours by Paul Alston. The description reads: "email to A. Thomas and J. Carmichael re [REDACTED]; Telephone call to D. Hasert and A. Oshiro re electrical drawings; telephone call from and to J. Carmichael." GMP is objecting to the e-mail billing as it does not describe the subject matter of the e-mail. GMP is also objecting to the telephone

11



call from and to J. Carmichael in that it does not state the "reason for the call." However, it is impossible for GMP to state whether the Court should reduce the time for the "email," for example, by .1, .2, or even .3 hours, because counsel did not state how long the e-mail, and/or the various phone calls took. This is the manner in which a large percentage of time entries were made in Exhibits "A" and "F," to the Amended Motion, and as it is impossible for GMP to request specific reductions for objectionable time therein. The fees with objectionable, inadequately described portions should therefore be denied in their entirety.

In Exhibits "1" ("Summary") and "3" ("Detailed Excel Spreadsheet") to the Opposition, GMP has indicated which of the fees, in each category of objected-to fees, are also "inadequately described" according to LR 54.3(d)(2). These amounts are noted in RED in the second to the last column of each row, referencing specific billing entries. These amounts are further marked in RED on Exhibit "3", which also totals the amounts of the inadequately described fees. The inadequately described fees total **$43,079.93.** *See* Exhibit "1" ("Summary"). None of these "inadequately described" fees should be awarded, leaving only **$50,624.68** of Synagro's requested fees that were described in compliance with LR 54.3(d)(2). *See* Exhibit "1" ("Summary").

B.    **Several Categories of Fees Claimed by Synagro Are Not Awardable**



1.    Fees Claimed for "Half" of the Time Spent on the "Andritz" Case Should Not be Awarded

Synagro has included in its claim for attorneys' fees in the instant case, attorneys' fees that it incurred in connection with another case to which it was not a party. In footnote 6 of its Amended Motion, Synagro states: "Prior to filing the Complaint, counsel for Synagro expended time and effort working with counsel for ARI to address GMP's refusal to produce the plans and drawing and to provide assistance on a motion for temporary injunction." As that was a separate action,[6] *see* Guirguis Dec., at ¶ 17, separately adjudicated, between separate parties, any and all attorneys' fees should have been sought therein, if at all, and not in relation to this case.

Synagro has requested award of $4,617.00 in fees related to the ARI-GMP litigation, after purportedly applying a one-half discount such that the total fees Synagro claims to have incurred in connection with the Andritz matter are $9,234.00. However, Synagro has failed to identify the services it attributes to the Andritz case. *See* Amended Motion at 5, n.6. Based upon a careful review of Synagro's billing entries, GMP can only identify $5,371.84 of services relating to

---

[6]    HRS § 607-14 permits attorneys' fees to be taxed in an action in the nature of assumpsit. It does not permit attorneys' fees to be taxed relating to separate actions. Furthermore, it provides that the fees are to be paid by the losing party and are to be "included in the sum for which execution may issue." Because Synagro was not a party to that case, much less the "prevailing party" therein, it cannot here seek taxation of attorneys' fees for any work it did in relation to that separate action.



the Andritz matter.[7] *See* GMP's breakdown of fees incurred in relation to the Andritz-GMP litigation, attached hereto as Exhibits "1" and "3," under the column entitled "Category A (Andritz)". As there is no legal basis for award in this action of fees Synagro incurred in connection with the Andritz case, to which it was not a party, Synagro's request for award of fees should be reduced by **$9,234.00**, the fees which it claims to have incurred in connection with the Andritz case and not just by half of that amount, $4,617.00, as proposed by Synagro.

### 2.    Fees Claimed for "Unknown" Work Should Not Be Awarded

Synagro has requested $1,318.74 for work which was billed with such vagueness that it is unknown what work was done for what case in relation to what issue. After accounting for the "inadequately described" fees according to LR 54.3(d)(2), the adjusted amount of these "unknown" fees totals **$468.75**. *See,* GMP's breakdown of fees attached hereto as Exhibits "1" and "3," under the column entitled "Category U (Unknown)". An example of an "unknown" billing is on page 5 of Exhibit "F" to the Amended Motion, there is an entry on 10/23/04 for .20 hours by Paul Alston. The "description," in its entirety, reads "email from and to M. Kuo." It is impossible to ascertain what case this entry refers to or even what issue the email regarded.

---

[7]    The "adjusted total" for Category "A" fees, after the "inadequately described fees" have been subtracted, is **$871.87**. *See* Exhibit "1" ("Summary").

As discussed in detail above, *see* § III.A *supra*, LR 54.3(d)(2) requires Synagro to adequately describe the services rendered such that "the reasonableness of the requested fees can be evaluated."  The Court may reduce an award of attorneys' fees if "the time descriptions are incomplete," or if the "descriptions fail to describe adequately the services rendered."  LR 54.3(d)(2).

A true and accurate breakdown of fees incurred for such "unknown" work is attached hereto as Exhibits "1" and "3," under the columns entitled "Category U (Unknown)".  Category U fees, totaling **$1,318.74** after adjustment for the inadequately described entries should not be awarded to Synagro.[8]

3.    Fees Claimed for "Questionable" Work Should Not Be Awarded.

Synagro has requested **$1,054.68** for work which was billed but is questionable as to whether it even relates to this case.  The "adjusted total," after accounting for those fees which were inadequate under LR 54.3(d)(2) is **$304.69**. An example of such questionably related work is on page 4 of Exhibit "F" to the Amended Motion where there is an entry on 09/17/04 for .30 hours by Mei Fei Kuo.  The "description" reads "review of Defendants opposition to motion to compel and opposition to motion to consolidate and exhibits for case background and development."  There was no "Defendants Motion to Compel" filed in this

---

[8]    The "adjusted total" for Category "U" fees, after the "inadequately described fees" have been subtracted, is **$468.75**.  *See* Exhibit "1" ("Summary").



case by GMP, especially on or before September 17, 2004, before GMP's Answer and Counterclaim was even filed. This and the other "questionable" fees, as to this case, should not be allowed as Synagro has not shown that such fees even remotely relate to the case, much less to a claim "in the nature of assumpsit."

A true and accurate breakdown of fees incurred for such "questionable" work is attached hereto as Exhibits "1" and "3," under the columns entitled "Category Q (Questionable)". Category Q fees, totaling **$1,054.68** should not be awarded to Synagro.[9]

> **4.    Fees Claimed Which Have Been so "Redacted" as to Prevent Meaningful Review Should Not be Awarded**

As set forth above, Synagro has submitted a request for many fees which should not be allowed. Some fees should not be allowed due to the fact that they were not incurred in relation to a claim "in the nature of assumpsit," some because they were incurred in work on a separate case, and others because of the unknown and/or questionable nature thereof. Synagro has also extensively redacted many of the descriptions of services rendered for its requested fees. Some redaction is permitted under LR 54.3(d)(2): "In describing such services, counsel should be sensitive to matters giving rise to attorney-client privilege and attorney work

---

[9]    The "adjusted total" for Category "Q" fees, after the "inadequately described fees" have been subtracted, is **$304.69**. *See* Exhibit "1" ("Summary").



product doctrine, but ***must nevertheless furnish an adequate non-privileged description of the services in question***." (emphasis added).

Many of Synagro's fees have been so extensively redacted that GMP, and likewise the Court, cannot even state a basis for which the same should be allowed or disallowed.  For example, on page 24 of Exhibit "F" to the Amended Motion, there is a billing on 04/21/05 for .40 hours by Mei Fei Kuo.  The "description," in its entirety, reads:  "calls (two) with J. Charmicheal [sic] on [REDACTED]; email to D. Kakazu re [REDACTED]."  Surely counsel for Synagro could have and should have "furnished an adequate non-privileged description" of these services to enable GMP and the Court to determine whether this entry, and others like it, should be allowed or disallowed as a taxable attorneys' fee.  Because they did not, such fees can not be awarded.

GMP's breakdown of the fees which have been so redacted as to prevent meaningful review is attached hereto as Exhibits "1" and "3," under the columns entitled "Category R (Redacted)".  Category R fees, totaling **$10,014.52** should not be awarded to Synagro.[10]

### C.    No Fees Can Be Awarded For Services Rendered on Claims Not "In the Nature of Assumpsit"

---

[10]    The "adjusted total" for Category "R" fees, after the "inadequately described fees" have been subtracted, is **$904.68**.  *See* Exhibit "1" ("Summary").

After taking out all unawardable fees as indicated above, Synagro's requested fees approximate **$48,074.69**. However, these fees were incurred in relation to all aspects of the case. Of the remaining fee request, only that which is attributable to work on Count I of the Counterclaim is awardable. Count I of the Counterclaim was the only claim made in this case which was "in the nature of assumpsit."

"A federal court sitting in diversity must apply state law with regard to the allowance or disallowance of attorneys' fees." *DeRobert v. Gannett Co., Inc.*, 558 F. Supp 1223, 1226 (D. Haw. 1983); *see also Price v. Seydel*, 961 F.2d 1470, 1475 (9th Cir. 1992). Relevant Hawaii law states:

> Generally, under the 'American Rule,' each party is responsible for paying for his or her own litigation expenses. A notable exception to the 'American Rule,' however, is the rule that attorneys' fees may be awarded to the prevailing party where such an award is provided for by statute, stipulation, or agreement.

*TSA International Ltd. v. Shimizu Corp.*, 92 Haw. 243, 263, 990 P.2d 713, 733 (1999) (citations omitted). *See also Blair v. Ing*, 96 Haw. 327, 329, 31 P.3d 184, 186 (2001).

Synagro seeks attorneys' fees pursuant to HRS § 607-14, that in relevant part, provides: "In all courts, in all actions *in the nature of assumpsit* . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be

included in the sum for which execution may issue, a fee that the court determines to be reasonable . . . " (emphasis added).[11]

Synagro's billings, clearly related solely to Count I of the Counterclaim have been identified by GMP in Exhibits "1" and "3" under the columns entitled "Category CC (Counterclaim)," and total **$1,045.31** after inadequately described fees are apportioned out. These are awardable as adequately described fees incurred for work on a claim in the nature of assumpsit. Also, Synagro's Motion for Summary Judgment as to GMP's Counterclaim was clearly work on the assumpsit claim. The adjusted total for fees incurred for work on the Motion for Summary Judgment is **$13,778.04**. *See* Exhibit "1," Category "SJ (Motion for SJ)." Finally, fees incurred in opposing GMP's Motion to Amend its Counterclaim were also incurred in connection with the assumpsit claim. Synagro's billings, clearly related to opposing GMP's Motion to Amend have been identified by GMP in Exhibits "1" and "3," under the columns entitled "Category AC (Amended Counterclaim)," and total **$1,045.31** after inadequately described fees are accounted for.

---

[11]    HRS § 607-14 also provides for an award of reasonable attorneys' fees in actions on "a promissory note" or "other contract in writing that provides for an attorneys' fee." However, there is no question that none of the claims in the instant action, whether in the Complaint or the Counterclaim, were based on a promissory note or other written contract. As such, this Opposition proceeds based solely on Synagro's assertion that the claim in Count I of the Counterclaim was "in the nature of assumpsit."

These fees, clearly related to Count I of the Counterclaim amount to $18,338.95. What remains, of the $48,074.69, is **$29,735.74** in fees which were incurred for combined work on the one claim "in the nature of assumpsit" and the three claims not "in the nature of assumpsit." This $29,735.74 must be apportioned and only fees which are arguably attributable to Count I of the Counterclaim should be awarded. Synagro submitted co-mingled billings for work on these different kinds of claims, and the same should be apportioned as follows.



1.      Fees Claimed Solely With Respect to Claims Not "In The Nature of Assumpsit" Should Not Be Awarded

HRS § 607-14 does not permit an award of attorneys' fees incurred in relation to the claims which are not "in the nature of assumpsit" herein. The Hawaii Supreme Court has defined "assumpsit" as "a common law form of action which allows for the ***recovery of damages for non-performance of a contract***, either express or implied, written or verbal, as well as quasi contractual obligations." ***TSA***, 92 Haw. at 264, 990 P.2d at 734 (citation omitted) (emphasis added). Furthermore, "assumpsit" has been defined as "a common-law action for breach of … [an express or implied promise, not under seal, by which one person undertakes to do some act or pay something to another,] or for breach of a contract." BLACK'S LAW DICTIONARY 120 (7th ed. 1999).

a.      Count I of the Complaint did not assert claims "in the nature of assumpsit," and fees incurred for such should not be awarded.

Count I of the Counterclaim, for breach of an implied contract, is arguably "in the nature of assumpsit."[12]  In contrast, Count I of the Complaint, seeking a declaration by the Court that no contract or contractual duties existed between the parties, is not "in the nature of assumpsit."  As such, **Ranger Insurance Co. v. Hinshaw**, 103 Haw. 26, 79 P.3d 119 (2003), is inapplicable.  Attorneys' fees attributable to the Complaint must therefore be apportioned, and not awarded to Synagro, as there is no legal basis for an award of the same.  **See TSA** at 264, 990 P.2d at 734.

Careful analysis of the claim for declaratory relief made in Count I of the Complaint reveals that it is not "in the nature of assumpsit."  Specifically, the Complaint alleges:

\* \* \*

29.    An actual controversy exists between Synagro and GMP.  GMP claims that Synagro has a contractual obligation to give additional money and / or work to GMP relating to the Project.  Those claims are false.

30.    Synagro denies that it has any express or implied contractual obligations to GMP.

\* \* \*

34.    Synagro is entitled to a declaratory judgment that it has no contractual obligations to GMP.

Synagro thus sought a declaration by the Court that no contract existed. Synagro did not seek "recovery of damages for non-performance of a contract."  It

---

[12]    This is only one of the four total claims made in this case.

did not seek to prove breach of a contract by GMP.  Nor is the relief that Synagro

sought pursuant to Count I of the Complaint premised upon the existence of a

contract.  Rather, Synagro sought to prove that *no contract*, express or implied,

written or verbal, existed between it and GMP.  In fact, Synagro's claim is actually

the *opposite* of a claim in the nature of assumpsit.

Furthermore, ***Ranger*** is distinguishable, and confirms that Synagro's claim

is not "in the nature of assumpsit."  Synagro has erroneously asserted that ***Ranger***

***Insurance Co. v. Hinshaw***, 103 Haw. 26, 79 P.3d 119 (2003), is analogous to the

instant case.  In ***Ranger***, the insurer, Ranger Insurance Company, filed a complaint

against Skydive, the insured, seeking a declaration that the insurance policy it had

issued to Skydive, *a contract*, "did not insure against liability for the claims

alleged," in an underlying lawsuit.  ***Id.*** at 33, 79 P.3d at 126.  In other words,

Ranger was seeking a declaration of its rights and duties, or more aptly, its lack of

rights and duties, ***under a contract*** that it indisputably had with Skydive.[13]

In holding that Ranger's claims were "in the nature of assumpsit," for

purposes of awarding attorneys' fees, the Hawaii Supreme Court expressly stated

---

[13] ***See also Blackburn v. Goettel-Blanton***, 898 F.2d 95, 99 (9th Cir. 1990) (holding
the prevailing party was entitled to attorneys' fees under similar facts to those alleged in
***Ranger*** – where the claim was for a "declaration that the defendant had no obligation" to
the losing party "under the ***contract***" between the parties) (emphasis added).

Again, seeking a declaratory judgment, under a contract, of duties and/or lack of
duties thereunder, could constitute a sufficient claim "in the nature of assumpsit" for
purposes of awarding attorneys' fees under HRS § 607-14.  However, claiming that no
contract exists does not constitute a claim "in the nature of assumpsit" and no attorneys'
fees are awardable for such non-assumpsit claims.



that "[i]t is undisputed that the insurance policy is a ***contract*** between Skydive and Ranger," ***Ranger*** at 33, 79 P.3d at 126 (emphasis added). "Under Hawaii law, an action in the nature of assumpsit includes all possible contract claims," ***id.***, however, a claim asserting the non-existence of a contract is clearly not a contract claim. Consequently, Count I of the Complaint does not assert a claim "in the nature of assumpsit."

As such, there is no legal basis for award of fees incurred with respect to the Complaint. GMP's identification of the fees incurred solely in relation to the Complaint is attached hereto as Exhibits "1" and "3," under the columns entitled "Category C (Complaint)". Category C fees, totaling **$6,074.96** should not be awarded to Synagro.[14]

> b. Count II of the Complaint and Count II of the Counterclaim did not assert claims "in the nature of assumpsit," and fees incurred for such should not be awarded.

In Count II of the Complaint, Synagro asserted a claim for "Tortious Interference with Economic Advantage" and for "Punitive Damages." It is undisputed that these claims, in Count II of Synagro's Complaint, are not "in the

---

[14]     The "adjusted total" for Category "C" fees, after the "inadequately described" fees have been subtracted, is **$2,671.86**. *See* Exhibit "1" ("Summary").

nature of assumpsit."[15]  Furthermore, Count II of the Counterclaim, for "Punitive Damages," is likewise not "in the nature of assumpsit."  This conclusion is supported by the holding in ***TSA***.  In ***TSA***, Shimizu was the "prevailing party" at the trial level, in a case involving claims sounding both in tort and in contract.  In reversing the trial court's award of fees, the Hawaii Supreme Court reasoned:

> Although Shimizu argues that TSA's [the losing party's] claims are all predicated upon the [contracts at issue in the case], TSA's claims do not involve monetary damages based upon the non-performance of a contractual or quasi-contractual obligation (i.e., breach of contract). The mere fact that TSA's claims relate to a contract between the parties does not render a dispute between the parties an assumpsit action.  Instead, TSA's claims for fraud and breach of fiduciary duty sound in tort.

***TSA*** at 264, 990 P.2d 713.

Similarly, in the instant case, the mere fact that GMP's claim, in Count II of the Counterclaim, related to an alleged breach of contract by Synagro, did not render it an assumpsit action.  The claim asserted a ***tortious*** breach of contract, and

---

[15]    ***See*** Amended Motion at 3, n.3 ("Synagro has apportioned the fees and expenses related to the assumpsit claim from the limited work related to its tortious interference claim"), and at 16 (noting Synagro's exclusion of fees related to the "non-assumpsit aspects of this case").  Synagro claims that the amount of fees for work incurred on the tortious interference claim, **$292.50**, has already been apportioned out of their fee request.

Because Synagro's billing entries are inadequately described, ***see*** § III.A ***supra***, counsel and the Court cannot ascertain if this is accurate or not.  The time entries for the tortious interference case mainly appear on page 14 of Exhibit "F" to the Amended Motion, and total 1.0 hours of Paul Alston's time.  It is difficult to determine how 1.0 hours of Paul Alston's time, billed at $450.00 per hour, added up to $292.50 which Synagro has "discounted" from its fee request.  ***See*** "Non-Assumpsit Fee" "discount" marked on page 60 of Exhibit "F" to the Amended Motion.



as such, fees incurred in defending against that Count should be apportioned out of any award of attorneys' fees to Synagro. The only claim which is "in the nature of assumpsit" therefore, is GMP's claim, in Count I of the Counterclaim, for breach of an alleged "implied contract."[16] "In awarding attorneys' fees in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, if practicable, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims." *TSA* at 264, 990 P.2d at 734.

> 2. Synagro Co-Mingled its Billings for Work on the Complaint and on the Counterclaim, and Such "Mixed" Billings Should Be Apportioned

Synagro has requested **$5,928.61** in work which was clearly billed for work on both the Complaint and the Counterclaim. Count I of the Counterclaim is the only claim which is arguably "in the nature of assumpsit." Synagro's billings co-mingle time spent on the Complaint with time spent on the Counterclaim and should be apportioned. As invoiced, however, it is impossible for GMP to ascertain how much of the mixed fees were incurred in relation to assumpsit versus non-assumpsit claims. As such, GMP has listed all of the co-mingled billings in Exhibits "1" and "3," under the columns entitled "Category M (Mixed – Complaint

---

[16] GMP does not dispute that its claim, in Count I of the Counterclaim, for "implied contract" is "in the nature of assumpsit" for purposes of awarding attorneys' fees under HRS § 607-14. *See TSA*, 92 Haw. 243, 990 P.2d 713. To the extent that the fees sought in defending against GMP's claim for breach of implied contract are not barred and/or reduced for other reasons, stated at §§ A, B, and D herein, GMP does not contest that such fees are awardable to Synagro.



& Counterclaim)," which category totals **$5,675.48**.[17]  GMP requests that the Court apportion a reasonable amount, which Synagro should have and could have apportioned by way of more careful billing practices, to work done on Count I of the Counterclaim.

3.    Billings for Work on "Settlement" of the Case Includes Work on Claims Not "in the Nature of Assumpsit" and Such "Settlement" Billings Should be Apportioned

Until the Stipulation to Dismiss was filed herein on March 30, 2006, any and all work done by Synagro for settlement of the case involved work on both the assumpsit claim in GMP's Counterclaim, and all the other, non-assumpsit claims raised in this case.  As such, the **$5,916.11** in billings,[18] attributable to settlement of all claims herein, should be apportioned to exclude a reasonable amount not incurred for work on the assumpsit claim.

4.    Billings for "Discovery" Include Work on Claims Not "in the Nature of Assumpsit" and Such "Discovery" Billings Should Be Apportioned

Similar to its billings incurred in relation to settlement of the case, Synagro's work on discovery was incurred in relation to both claims "in the nature of

---

[17]    The "adjusted total" for Category "M" fees, after the "inadequately described fees" have been subtracted, is **$4,700.49**. *See* Exhibit "1" ("Summary").

[18]    A true and accurate breakdown of fees which were incurred in settlement activity on all claims, including the non-assumpsit claims,  is attached hereto as Exhibits "1" and "3", under the columns entitled "Category S (Settlement)," which Category totals **$5,916.11**.

The "adjusted total" for Category "S" fees, after the "inadequately described fees" have been subtracted, is **$4,378.62**. *See* Exhibit "1" ("Summary").

assumpsit" and not "in the nature of assumpsit." As such, the **$20,348.31** in billings,[19] attributable to discovery relating to all claims herein, should be apportioned to exclude a reasonable amount not incurred for work on the assumpsit claim.

When the court is apportioning the $29,735.74 of co-mingled fees, it could alternatively apportion out 75% of the fees. Only one-fourth (or 25%) of the claims in this case were "in the nature of assumpsit". As such, awarding one-fourth of the co-mingled fees, or $7,433.93, plus the $18,338.95 clearly incurred in relation to Count I of the Counterclaim, totals **$25,772.88** in arguably awardable fees to Synagro in this case, subject however to the cap on such fees as discussed below in § III.D.

### D.    In No Case is Synagro Entitled to An Award of Attorneys' Fees Exceeding 25% of the Damages Sought by GMP in Count I of its Counterclaim

Whatever the amount of the recoverable fees may be after exclusion of fees incurred for claims other than Count I of the Counterclaim, the maximum award that Synagro can recover is 25% of the damages GMP sought in Count I of its Counterclaim (the only claim "in the nature of assumpsit"). Pursuant to HRS §

---

[19]    A true and accurate breakdown of fees which were incurred in "discovery" activities on all claims, including assumpsit and non-assumpsit claims, is attached hereto as Exhibits "1" and "3," under the columns entitled "Category D (Discovery)," which Category totals **$20,348.31**.    The "adjusted total" for Category "D" fees, after the "inadequately described fees" have been subtracted, is **$17,663.95**. *See* Exhibit "1" ("Summary").




607-14, the Court may only tax attorneys' fees, "provided that this amount shall not exceed *twenty-five per cent* of the judgment." (emphasis added).

> Section 607-14 taxes attorneys' fees on the losing party in "all actions in the nature of assumpsit." The amount on which the fees are to be assessed is dependent upon who obtains the judgment ... *the amount sued for* if the ... counterclaimee wins.

*Rodrigues v. Chan*, 5 Haw. App. 603, 608, 705 P.2d 67, 71 (1985) (emphasis added).

The amount sued for in Count I of the Counterclaim was the lost profits from the alleged implied contract GMP had with Synagro. *See* Counterclaim at ¶ 14. In its Motion, Synagro erroneously contends that the amounts stated in ¶¶ 12-13 of the Counterclaim ($2,683,422.00 as the amount of the design contract and $846,000.00 as the amount of the construction management contract) are the amounts that GMP was seeking to recover on its implied contract claim. However, they are the amounts referenced within Synagro's contract with the City and have no relation to the amounts claimed by GMP. (*See,* ¶¶ 12-14, Guirguis Declaration). GMP never contended that its implied contract with Synagro included all of the design and construction management contracts Synagro had with the City. Rather, GMP claimed that its implied contract with Synagro was for the amounts that it had proposed to Synagro for provision of certain design and construction management work. (*Id.*)



The amounts of the implied contracts GMP sought to enforce by way of the Counterclaim are set forth in a July 26, 2002 email from GMP to Synagro that was attached as Exhibit "R" to Synagro's Renewed and Supplemented Motion for Summary Judgment, filed herein on September 15, 2005, and is attached hereto as Exhibit "5" (*see,* ¶¶ 6-13, Guriguis Declaration). The amounts stated in GMP's email to Synagro, which email addressed the design and construction management services which Synagro had orally agreed GMP would perform but for which GMP had not received contracts (*id.*) total $254,469.00 for engineering services, and $696,231.00 for construction management services. As such, GMP's Counterclaim was for loss of profits from these (implied or alleged) contracts totaling **$950,700.00** (*id.* at ¶ 13).

In addition, GMP never sought nor claimed that it was entitled to award of the full value of the implied contracts themselves. Rather, GMP sought damages, including lost profits, for breach of these implied contracts. Profits from engineering and construction management contracts would be approximately 10% of the total value of said contracts. *See* Guirguis Dec. at ¶¶ 14-16. This is the industry standard for governmental contracts of this nature. *Id.* 10% of $950,700.00 is **$95,070.00**, which is the amount that GMP could have recovered as damages pursuant to its Counterclaim for breach of its implied contract with Synagro. *Id.*

Because HRS § 607-14 caps awardable fees at 25% of the amount sued for in a counterclaim in the nature of assumpsit, *see Rodrigues*, 5 Haw. App. at 608, 705 P.2d at 71, the maximum attorneys' fees that can be awarded to Synagro for prevailing on Count I of the Counterclaim is **$23,767.50**. This maximum is before any reduction for inadequate billings and other objectionable billings from Synagro's request.

## IV.    CONCLUSION

For the foregoing reasons, Defendant GMP respectfully requests that this Court Grant in Part and Deny in Part Synagro's *Amended* Motion for Attorneys' Fees and Related Non-Taxable Expenses.   The Court should apportion the requested attorneys' fees and not award any which 1) are not reasonable, 2) are not related to Count I of the Counterclaim, which is the only claim in the nature of assumpsit, 3) are inadequately described, in the amount of **$43,079.93**, and/or 4) exceed **$23,767.50**, which constitutes the 25% cap on fees pursuant to HRS § 607-14.

DATED:  Honolulu, Hawaii, _____JUN 2 3 2006_____.



MICHAEL M. MARSH
TED N. PETTIT
JOHN D. ZALEWSKI
MALIA S. LEE
Co-Counsel for Defendant
**GMP HAWAI`I, INC.**