Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON                1126-0
MEI-FEI KUO                7377-0
SHELLIE K. PARK-HOAPILI  7885-0
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawaiʻi  96813
Telephone:  (808) 524-1800
E-Mail: palston@ahfi.com

Attorneys for Plaintiff
  SYNAGRO TECHNOLOGIES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| SYNAGRO TECHNOLOGIES, INC., | ) | CIVIL NO. CV04-00509 SPK LEK |
| | ) | |
| Plaintiff, | ) | **SYNAGRO TECHNOLOGIES, INC.'S** |
| | ) | **REPLY IN SUPPORT OF SYNAGRO** |
| | ) | **TECHNOLOGIES, INC'S** *AMENDED* |
| vs. | ) | **MOTION FOR ATTORNEYS' FEES AND** |
| | ) | **RELATED NON-TAXABLE EXPENSES,** |
| | ) | **FILED MAY 26, 2006;** |
| GMP HAWAIʻI, INC., | ) | **CERTIFICATE OF COMPLIANCE WITH** |
| | ) | **WORD LIMIT; DECLARATION OF** |
| Defendant. | ) | **JAMES P. CARMICHAEL;** |
| | ) | **DECLARATION OF MEI-FEI KUO;** |
| | ) | **EXHIBITS "I" - "N";** |
| | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| | ) | |
| | ) | Non-Hearing Motion |

618756 v 2 / 7392-3

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

II.  SUPPLEMENTAL STATEMENT OF FACTS . . . . . . . . . . . . 4

     A.   Additional Factual and Procedural Background . . . . 4

     B.   Representations of GMP in its Oppositions to Synagro's
          Motions for Summary Judgment . . . . . . . . . . . 5

     C.   Relevant Deposition Testimony of GMP's Rule 30(b)(6)
          Representatives . . . . . . . . . . . . . . . . . . 7

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.   The Legal Descriptions in the Itemized List are
          Adequate Under L.R. 54.3 and/or Contain Permissible
          Redactions to Protect Attorney-Client Privilege and
          Attorney Work-Product Information . . . . . . . . . 8

     B.   Synagro is Entitled to Full Recovery of the Reasonable
          Attorneys' Fees Requested in its Motion . . . . . 10

          1.   Synagro is Entitled to Recover Fees Related to the
               Declaratory Judgment Claim in the Complaint . 10

          2.   Synagro is Entitled to Recover the Fees Incurred
               in Defending the Punitive Damages Claim in the
               Counterclaim . . . . . . . . . . . . . . . . . 12

          3.   Synagro is Entitled to Recover Half of the Fees
               Related to Work with Andritz Counsel . . . . . 13

          4.   Synagro is Entitled to Recover Fees related to
               Conducting Discovery in the Action and Engaging in
               Settlement Efforts . . . . . . . . . . . . . . 14

     C.   The Requested Attorneys' Fees Do Not Exceed 25% of the
          Amount Prayed for by GMP in its Counterclaim . . . 15

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Environmental Defense Fund, Inc. v. Environmental*
*Protection Agency*,
672 F.2d 42 (D.D.C. 1982) . . . . . . . . . . . . . . . . 1

*Greb v. Murray*,
795 P.2d 1087 (Or. 1990) . . . . . . . . . . . . . . 12

*Matsuda v. Wada*,
101 F.Supp.2d 1315 (D. Haw. 1999) . . . . . . . . . . 12

*Rosenfeld v. S. Pac. Co.*,
519 F.2d 527 (9th Cir. 1975) . . . . . . . . . . . . . 1


**STATE CASES**

*Andritz-Ruthner, Inc. v. GMP Hawaiʻi Inc.*,
Civ. No. 04-00497 . . . . . . . . . . . . . . . . . 4

*Lee v. Scotia Prince Cruises Ltd.*,
843 A.2d 753 (Me. 2004) . . . . . . . . . . . . . . . 12

*Ranger Insurance Co. v. Hinshaw*,
103 Haw. 26, 79 P.3d 119 (Haw. 2003) . . . . . . . . 11, 12

*Ross v. Stouffer*,
76 Haw. 454, 879 P.2d 1037 (1994) . . . . . . . . . . 12


**LOCAL RULES**

54.3 . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9

54.3(2) . . . . . . . . . . . . . . . . . . . . . . . . 8


**HAWAIʻI REVISED STATUTES**

§ 607-14 . . . . . . . . . . . . . . . . . . . 1, 3, 10-12, 15

**SYNAGRO TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF SYNAGRO TECHNOLOGIES, INC'S *AMENDED* MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES, FILED MAY 26, 2006**

## I.    INTRODUCTION

Plaintiff-Counterclaim Defendant Synagro Technologies, Inc. ("Synagro"), by and through its counsel, Alston Hunt Floyd & Ing, hereby replies to the Memorandum in Opposition ("Opposition") filed by Defendant-Counterclaim Plaintiff GMP Hawai'i, Inc. ("GMP") to Synagro's *Amended* Motion for Attorneys' Fees and Related Non-Taxable Expenses ("Motion").  The attorneys' fees and expenses requested by Synagro are reasonable and were necessitated by GMP's actions to delay, complicate, and prolong these proceedings.  GMP's repeated refusal to settle the dispute and its relentless pursuit of its meritless Counterclaim caused Synagro to incur fees and expenses related to (1) conducting discovery on GMP's Counterclaim, (2) drafting and arguing Synagro's Motions for Summary Judgment, (3) defending against GMP's Motions to Continue the Summary Judgment Hearing and Motion for Leave to File an Amended Counterclaim, and finally, (4) recovering its attorneys' fees, expenses, and costs pursuant to Haw. Rev. Stat. ("HRS") § 607-14.[1]

---

[1]    In its Opposition, GMP does not refute that Synagro is entitled to recovery its fees related to the preparation and drafting of the Motion for Fees and Expenses, this Reply, and the related Bill of Costs.  *See Rosenfeld v. S. Pac. Co.*, 519 F.2d 527, 530-31 (9th Cir. 1975) (ordering that fee award include an amount in remuneration for time spent on fee claim); *Environmental Defense Fund, Inc. v. Environmental Protection Agency*, 672 F.2d 42, 62 (D.D.C. 1982) (awarding fees for time spent preparing the fee application).  The fees sought by Synagro

GMP's arguments in its Opposition are unpersuasive and inapplicable to reduce Synagro's recovery of attorneys' fees and expenses.  First, the legal services descriptions in Exhibit "F" to the Motion (hereinafter "Itemized List") are sufficient to permit the Court to evaluate the reasonableness of the requested fees pursuant to Local Rule ("L.R.") 54.3 of the Rules of the United States District Court for the District of Hawai'i.  Moreover, L.R. 54.3 permits parties to redact "matters giving rise to attorney-client privilege and attorney work product doctrine".  That is all that was redacted by Synagro in its Itemized List.  Declaration of Mei-Fei Kuo ("Kuo Dec."), attached, at ¶ 4.  Further, this was the only active legal matter underway for Synagro and, therefore, there was no chance of "confusion" over which matter to bill the legal services.  *Id.* at ¶ 7.  However, to fully disclose the disputed information to the Court for the purposes of this Motion, while maintaining Synagro's attorney-client privilege and attorney work production, Synagro will, if the Court desires, separately provide the Court for *in camera* review its monthly invoices and an "unredacted" copy of the Itemized List.

Second, Synagro is entitled to recover the attorneys' fees related to the declaratory judgment claim in the Complaint

---

include the fees related to the preparation and drafting of the Motion, however, Synagro has incurred additional fees related to this Reply and will continue to incur additional fees until the issues of fees is resolved, all of which are recoverable.

and half of the fees incurred working with counsel for Andritz-Ruthner, Inc. ("Andrtiz"), which are reasonable and in the nature of assumpsit.  It is well established that attorneys' fees need not be apportioned when, as is here, the work is "inextricably intertwined" with the underlying assumpsit claim.  Moreover, GMP disregards that Synagro has already apportioned the non-assumpsit claims from the assumpsit claims in the Complaint and is only seeking a portion of the fees related to work with Andritz.  *See* Motion at 1 and fn. 3.

Lastly, Synagro is entitled to full recover its requested attorneys' fees and expenses, which at time of the amended Motion totaled $93,457.81, and is continuing to increase with the drafting of this Reply.  *See supra* fn. 1.  Pursuant to HRS § 607-14, the requested amount of attorneys' fees and expenses is less than 25% of the amount of damages prayed for by GMP in its Counterclaim. Notably, the representations and arguments of GMP in its prior pleadings and the deposition testimonies of GMP's Rule 30(b)(6) Representatives confirm that GMP was seeking either enforcement of the purported implied contract and/or monetary damages in the amount of at least $950,700.00 and as much as $ 3,529,422.00 as is prayed for in the Counterclaim.

## II.  SUPPLEMENTAL STATEMENT OF FACTS

### A.  Additional Factual and Procedural Background

In July of 2004, contrary to its obligations under the Andritz-GMP contract, GMP refused to timely deliver the engineering plans and drawings, which were necessary to obtain the building permits to commence construction of the Project. Declaration of James P. Carmichael ("Carmicheal Dec."), attached, at ¶ 4.  On August 27, 2004, a hearing was held on Andritz's Motion for Temporary Restraining Order and Preliminary Injunction in *Andritz-Ruthner, Inc. v. GMP Hawai'i Inc.*, Civ. No. 04-00497. *Id.* at ¶ 5.

On August 18, 2004, Synagro filed a Complaint against GMP for declaratory judgment and tortious interference with economic advantage.  The Complaint was necessitated by GMP's refusal to timely deliver the engineering plans and drawings required under its sub-contract with Andritz unless and until it received an unspecified amount of money and/or work from Synagro.

On August 31, 2004 and September 13, 2004, GMP delivered to Andritz the "stamped" and electrical drawings for the Project.  *Id.* at ¶ 7.

On September 2, 2004, GMP filed a Counterclaim against Synagro for breach of implied contract and punitive damages. Therefore, after the Complaint was filed, GMP delivered the necessary materials to Andritz and it ceased to interfere with the Project.  *Id.* at 8.  Synagro, thereby, avoided potentially

crippling costs and delays on the Project, and focused its attention on defending the Counterclaim. *Id.*; Kuo Dec. at ¶ 7.

On November 16, 2004, the Court issued its Rule 16 Scheduling Order. Substantive discovery did not commence in this case until March of 2005 after GMP requested a continuance of Synagro's Motion for Summary Judgment and, thereafter, served a Request for Production of Documents on Synagro on March 16, 2005. Kuo Dec. at ¶ 7.

**B.    Representations of GMP in its Oppositions to Synagro's Motions for Summary Judgment**

On January 3, 2005, Synagro filed its initial Motion for Summary Judgment. On February 28, 2005, GMP filed a Motion to Continue the Hearing on the Summary Judgment Motion, whereto it attached the declarations of its counsel and principals, namely Wagdy Guirguis and Peter Melnyk. In these declarations, GMP stated that additional discovery was necessary to support GMP's position that (1) "GMP was the engineer and construction manager for the [P]roject"; (2) Synagro made oral and written statements to the County that "GMP would perform the entire GMP Project Scope of Work"; (3) Synagro represented to the County that GMP would be the engineer and construction manager for the Project and would be paid respectively $ 254,469.00 and $846,000.00 for these services; and (4) "the $3,040,000 difference between the Synagro-City Contract and the sum of the Synagro-Andritz and Synagro-CBI contracts was to pay GMP for its services". *See* Exh. "I", Declaration of Richard Sutton to GMP's

Motion to Continue at ¶¶ 10 and 13; Exh. "J", Declaration of
Peter Melnyk to GMP's Motion to Continue at ¶¶ 9, 12, and 14-16;
Exh. "K", Declaration of Wagdy Guirguis to GMP's Motion to
Continue at ¶¶ 9-11.

On September 15, 2005, Synagro Renewed its Motion for
Summary Judgment.  In its Opposition to this Motion, GMP argued
that (1) GMP's role "as a member of the Project Delivery Team
included both preparation of the engineering design for the
entire Project and construction management" and (2) "GMP was to
share in profits by way of being the party to perform all the
engineering and construction management work required to complete
design and construction of the [Project]".  *See* GMP's Opposition
to Renewed Motion for Summary Judgment at 5 and 22.

Furthermore, there, GMP clarified that the relief it
sought in this action was either enforcement of the purported
implied contract or an award of its reliance and expectancy
damages:

> The only way injustice can be avoided in this
> case is to **enforce the oral agreement or to
> award GMP both reliance and expectancy
> damages.**  GMP has already expended
> substantial amounts of time, effort, and
> other resources . . . in detrimental reliance
> on Syngaro's promise of being engineer of
> record and construction manager of the entire
> Project.  **The engineering and construction
> management contracts were to be GMP's only
> compensation** for their contributions to the
> Project. . . .  **To deprive GMP of this
> benefit of the promise** upon which it
> detrimentally relied on would constitute an
> injustice.

(Emphasis added) *Id.* at 24.

In its Opposition, GMP attached a July 26, 2002 email from Peter Melnyk of GMP to James Hecht of Synagro to support its arguments that the implied contract included proposed engineering services for $245,469.00 and construction management services for $696,231.00. *See* Opposition to Renewed Summary Judgment Motion at 9; Exh. "L", July 26, 2002 E-mail.

### C. Relevant Deposition Testimony of GMP's Rule 30(b)(6) Representatives

On September 19, 2005, Wagdy Guirguis, the President and Chairman of the Board of GMP, was deposed as a Rule 30(b)(6) representative for GMP. At the deposition, Mr. Guirguis confirmed that the references to "said contract" in the Counterclaim in discussing the total design and construction management amounts related to the "implied contract". Exh. "M", Deposition of Wagdy A. Guirguis, taken Sept. 19, 2005, at 147. Furthermore, when asked about GMP's claim for "profits" in the Counterclaim, Mr. Guirguis explained that the "profits" sought by GMP were the figures in the Counterclaim, which stated $2,683,422.00 for design expenses and $846,000.00 for construction management:

> Q: You have in here, on **Paragraph 14**, that: As a result, Defendant is entitled to damages including profits from the contract plus costs.
>
> **What are you talking about profits?**
>
> A: **Profits of the engineering and the construction management.**

Q:    **So it's basically these figures here?**

A:    **That is correct.**

Q:    Not an additional profit, right?

A:    **That's the profit for this project.**

(emphasis added) *Id.* at 154.  Mr. Guirguis also clarified that the fees related to construction management work increased an additional $200,000.00 from $646,000.000 with the change orders. *Id.* at 92-94.

On October 5, 2005, Peter Melnyk, who was also identified as a Rule 30(b)(6) Representative of GMP, explained that the $2,683,422.00 "design expenses" in the Counterclaim reflected the engineering and design work that GMP was to perform on the Project and that this amount was derived from the price proposals that GMP provided Synagro, Andritz, and Chicago Bridge and Iron ("CBI").  Exh. "N", Deposition of Peter Melnyk, taken on Oct. 5, 2005, at 175-180, specifically 175 and 178-180.

## III. ARGUMENT

**A.    The Legal Descriptions in the Itemized List are Adequate Under L.R. 54.3 and/or Contain Permissible Redactions to Protect Attorney-Client Privilege and Attorney Work-Product Information**

In it Opposition, GMP extensively argues that the legal services rendered by Synagro are not adequately described because they either contain redactions and/or are incomplete.  L.R. 54.3(2) states in relevant part as follows:

> *Description of Services Rendered*.  The party
> seeking an award of fees must describe
> adequately the services rendered, so that the
> reasonableness of the requested fees can be
> evaluated.  In describing such services,
> **counsel should be sensitive to matters giving
> rise to attorney-client privilege and
> attorney work product doctrine**, but must
> nevertheless furnish an **adequate non-
> privileged description** of the services in
> questions.

(Italics in original and bolded emphasis added).

Here, a basic review of the descriptions in the

Itemized List demonstrates that Synagro properly redacted

attorney-client privileged and attorney work-product information,

while retaining adequate non-privileged information for the Court

to evaluate the services rendered, including the type of services

rendered (*i.e.*, telephone calls, emails, research, drafting and

preparation of pleadings) and the participants in calls and

emails.  GMP inappropriately seeks to compel Synagro to disclose

privileged attorney-client communications and protected attorney

work-product.  No such disclosure is required and, to the

contrary, is protected by L.R. 54.3.  Nonetheless, in order to

facilitate the Court's evaluation of Synagro's request for fees,

while continuing to protect the privileged information, Synagro

will, upon request from the Court, submit to the Court for an *in

camera* review its monthly invoices and an "unredacted" copy the

Itemized List.

On the descriptions that GMP claims are "unknown" or

incomplete because omit information on the content of telephone

calls, emails, or other communications and correspondence, this is an insufficient grounds to preclude the recovery of fees. Most of the subject entries concern attorney-client privileged or attorney work-product information.  Additionally, these services are obviously related to the litigation and incurred in the course and scope of either working with counsel for Andritz, pursuing the Complaint, and predominately defending against the Counterclaim, all of which are recoverable under HRS § 607-14. *See* Motion at fn.6 and Section III.A and *infra* at Section III.B.

> **B.    Synagro is Entitled to Full Recovery of the Reasonable Attorneys' Fees Requested in its Motion**

In its Opposition, GMP contests the fees incurred by Synagro in(1) working on the declaratory judgment claim in the Complaint; (2) defending GMP's claim for punitive damages in the Counterclaim; (3) working with counsel for Andritz to address GMP's refusal to deliver the engineering plans and drawings required under GMP's sub-contract with Andritz;(4) conducting discovery on GMP's Counterclaim; and (5) engaging in settlement efforts to resolve the dispute.  None of GMP's arguments are persuasive to reduce the reasonable amount of fees sought by Synagro under HRS § 607-14.

> **1.    Synagro is Entitled to Recover Fees Related to the Declaratory Judgment Claim in the Complaint**

GMP argues that Synagro is not entitled to recover the fees related to the Complaint because they are not in the nature of assumpsit.  Opposition at 20-25.  Notably, as <u>ignored</u> by GMP,

Synagro has already apportioned the fees related to the assumpsit claim (*i.e.,* Count I related to declaratory judgment) from the non-assumpsit claim in the Complaint (*i.e.,* Count II related to tortious interference with contract) and, therefore, is only seeking to recovery a reasonable portion of the fees related to the Complaint.  *See* Motion at 11-13.

As discussed in the Motion, the Hawai'i Supreme Court has recognized that a declaratory judgment action related to the nature and extent of a contractual relationship, as is here, is an action in the nature of assumpsit for purpose of HRS § 607-14. *See* Motion at 11-13 (citing and discussing *Ranger Insurance Co. v. Hinshaw*, 103 Haw. 26, 79 P.3d 119 (Haw. 2003)).  GMP argues that *Ranger* is inapplicable and distinguishable because (1) Synagro sought a determination that there was no contract between the parties in its Complaint and (2) *Ranger* concerned an existing contract between the parties in the form of an insurance policy. Opposition at 20-23.  However, GMP's arguments directly conflict with its prior position that GMP had a purported limited contract with Synagro to provide raw sludge sample, which evidenced an implied contract to provide engineering design and/or construction management work on the Project.  *See* GMP's Opposition to Synagro's Motion for Summary Judgment, filed February 28, 2005, at 9-10.

Here, as in *Ranger*, Synagro seeks a declaratory judgment that it owed no contractual obligations to GMP to provide engineering design and/or construction management work on

the Project. *See also* Motion at 11-13. As such, Synagro's claim for declaratory judgment is in the nature of assumpsit, and Synagro is entitled to recovery its attorneys' fees under HRS § 607-14 and *Ranger.* Moreover, Synagro's claim for declaratory judgment is inextricably intertwined with GMP's breach of implied contract claim in its Counterclaim and, therefore, the related attorneys' fees are recoverable and do not have to be apportioned.[2] *See* Motion at 11 and fn.5, and *infra* at fn.2.

### 2. Synagro is Entitled to Recover the Fees Incurred in Defending the Punitive Damages Claim in the Counterclaim

In Hawai'i, punitive damages are not recoverable in breach of contract actions and it is a remedy, rather than a separate claim for relief.[3] Synagro is entitled to recover the fees incurred in defending the punitive damages claim in the Counterclaim because this claim is inextricably intertwined with and directly based on GMP's breach of implied contract claim, which is in the nature of assumpsit. *See* Counterclaim at ¶¶ 16

---

[2]    *See Greb v. Murray*, 795 P.2d 1087, 1088 (Or. 1990) ("Attorney fees need not be apportioned when they are incurred for representation on an issue common to a claim in which fees are proper and one in which they are not."); *Lee v. Scotia Prince Cruises Ltd.*, 843 A.2d 753, 756 (Me. 2004) (declining to apportion attorneys' fees because issues arising under counterclaim and the cross-appeal were "inextricably intertwined").

[3]    *See Matsuda v. Wada*, 101 F.Supp.2d 1315, 1325 fn. 6 (D. Haw. 1999)(stating "[u]nder Hawai'i law, it has long been settled that punitive damages are not recoverable for breach of contract"); *Ross v. Stouffer*, 76 Haw. 454, 466, 879 P.2d 1037 (1994) (ruling there is no independent cause of action for punitive damages).

618756 v 2 / 7392-3                    12

and 18 (alleging that GMP is entitled to punitive damages as a result of Synagro "blatant and unjustified refusal to provide engineering work, construction management work, and/or compensation to [GMP] for work on the [Project]" and "refusal to honor its implied contract with [GMP]").

### 3. Synagro is Entitled to Recover Half of the Fees Related to Work with Andritz Counsel

Synagro is entitled to recover half of the fees incurred working with counsel for Andritz to address GMP's refusal to produce the plans and drawing related to the Project. *See also* Motion at fn. 6. This work is not only inextricably intertwined with the underlying assumpsit claim (*i.e.*, GMP's failure to deliver the plans and drawings as a result of its unjustified insistence that it had an agreement with Synagro for work on the Project), but it was necessary to pursue and develop the declaratory judgment claim in the Complaint, which as discussed above is in the nature of assumpsit.

Therefore, GMP's contention that these fees are not recoverable because they related to another action, which Synagro was not a party, are unpersuasive and do not preclude recovery of these fees. Furthermore, as a demonstration of reasonableness, Synagro is only seeking half of the fees incurred in working with counsel for Andritz to resolve the dispute and refute GMP's claims that it had an implied contract with Synagro prior to filing the Complaint.

**4. Synagro is Entitled to Recover Fees related to Conducting Discovery in the Action and Engaging in Settlement Efforts**

GMP incorrectly argues that the fees incurred in conducting discovery and engaging in settlement efforts need to be apportioned between the assumpsit claims and the non-assumpsit claims and between the Complaint and the Counterclaim. The fundamental error with GMP's argument is that the discovery conducted by Synagro was for the purposes of defending against the Counterclaim. In fact, shortly after the Complaint was filed by Synagro and before any substantive discovery was conducted by Synagro, GMP delivered the necessary materials to Andritz under their sub-contract and it ceased to interfere with the Project. *See* Carmichael Dec. at ¶¶ 7-8. Synagro, therefore, avoided potentially crippling costs and delays on the Project and, thereafter, focused its attention in this action to defending the Counterclaim. *Id.* at ¶ 8; Kuo Dec. at ¶ 7. As such, GMP is wrong that Synagro has inappropriately "co-mingled" and/or "mixed" its billings for work on the Complaint and Counterclaim.

Similarly, Synagro is entitled to recover the fees related to settlement efforts in the case. First, the settlement efforts were directly related to resolving the Complaint and the Counterclaim, both of which contain claims in the nature of assumpsit. Second, GMP's argument is unpersuasive because the exact same extent and scope of legal services related to settlement would have been incurred regardless of if it was

solely for the Counterclaim, the Complaint, or, as is here, for both.

**C.    The Requested Attorneys' Fees Do Not Exceed 25% of the Amount Prayed for by GMP in its Counterclaim**

Under HRS § 607-14, Synagro, as the prevailing party on the Counterclaim and the Complaint, is entitled an award of attorneys' fees not to exceed twenty-five percent of the amount of damages prayed for by GMP in its Counterclaim Fees. *See* Motion at 15-17. GMP's arguments on this issue are two-folds: (1) the amounts stated in the Counterclaim, which are $2,683,422.00 for engineering design and $846,000.00 for construction management, are not the damages prayed for in the Counterclaim and (2) GMP never claimed that it was entitled to an award of the full value of the implied contracts, but rather only the profits, which is 10% of the total value of the contracts. *See* Opposition at 28-29.

These statements completely misrepresent GMP's claims for relief and damages in the Counterclaim. Obviously, GMP is merely taking this novel and limited position to minimize its liability for fees.

GMP's arguments fail for numerous reasons. First, the Counterclaim states that "profits" were only one category of the damages sought by GMP, not the sole damages. *See* Counterclaim at ¶ 14 ("[GMP] is entitled to **damages including profits** from the contract"). In fact, in GMP's Opposition to the Renewed Summary Judgment Motion, GMP sought either enforcement of the purported

implied contract or an award of its reliance and expectancy damages, which at the very minimum totaled $950,700.00. *See* Opposition to Renewed Summary Judgment Motion at 9; Exh. "L", July 26, 2002 E-mail (stating GMP's proposed fee for engineering services was of $245,469.00 and for construction management services was $696,231.00, which total $950,700.00).

Second, according to GMP's Rule 30(b)(6) Representative, the $2,683,422.00 figure for engineering design and the $846,000.000 figure for construction management in the Counterclaim in reference to the "said contract" pertained to the "implied contract". Exh. "M", Guirguis Depo. at 147. GMP's Rule 30(b)(6) Representative also testified that the figures in the Counterclaim reflected the value of the engineering design and construction management work to be performed by GMP as derived from proposals submitted by GMP to Synagro, Andritz, and CBI. Exh. "N", Melnyk Depo. at 175, 178-180. Clearly, GMP's current position that the phrase "said contract" in the Counterclaim refers to the contract between Synagro and the County is a misrepresentation.

Even if the Court adopts GMP's position that it only sought "profits", GMP's 30(b)(6) Representative explained that the profits sought in the Counterclaim were $2,683,422.00 for engineering design and $846,000.000 for construction management. Exh. "M", Guirguis Depo. at 154. The fees requested by Synagro in the amount of $93,457.81 are easily less than 25% of the total damages prayed for in the Counterclaim, which total

$3,529,422.00.  No where in the Counterclaim, its prior pleadings, or the depositions of its Rule 30(b)(6) Representative, did GMP ever claim that it was only seeking 10% of its "profits".

## IV.  CONCLUSION

For the foregoing reasons, Synagro respectfully requests that this Court grant its Motion for Fees and Non-Taxable Expenses and to award Synagro its attorneys' fees in the amount of **$93,214.87** and related non-taxable expenses in the amount of **$242.94,** for a total award of **$93,457.81.**  The attorneys' fees and expenses incurred by Synagro and requested to be recovered by this Motion were reasonably and necessarily incurred in defeating the assumpsit claims raised by GMP in its Counterclaim for breach of implied contract and punitive damages, and prevailing on the overlapping claim for declaratory judgment in the Complaint.

DATED:  Honolulu, Hawai'i, July 7, 2006.

_____/s/ MEI-FEI KUO_____
PAUL ALSTON
MEI-FEI KUO
SHELLIE K. PARK-HOAPILI
Attorneys for Plaintiff
  SYNAGRO TECHNOLOGIES, INC.