```
                  IN THE UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF HAWAI`I

    SYNAGRO TECHNOLOGIES,        )
                                 )
    INC.,                        )
                                 )
             Plaintiff,          )
                                 )
             vs.                 ) CIVIL NO.
                                 )
    GMP HAWAII, INC.,            ) CV04-00509 SPK LEK
                                 )
             Defendant.          )
    _____)



          DEPOSITION OF WAGDY A. GUIRGUIS, P.E.


       Taken on behalf of Plaintiff SYNAGRO TECHNOLOGIES,

    INC., at the offices of Alston Hunt Floyd & Ing, ASB

    Tower, 1001 Bishop Street, 18th Floor, Honolulu,

    Hawaii, commencing at 9:04 a.m., Monday, September 19,

    2005, pursuant to Notice.






    BEFORE:  ELSIE TERADA, CSR NO. 437

             Certified Shorthand Reporter
                  RALPH ROSENBERG COURT REPORTERS
                         (808)524-2090
```



EXHIBIT M

2

```
 1   APPEARANCES:

 2

 3   For Plaintiff SYNAGRO TECHNOLOGIES, INC.:

 4        MEI-FEI KUO, ESQ.
          Alston Hunt Floyd & Ing
 5        American Savings Bank Tower
          1001 Bishop Street, 18th Floor
 6        Honolulu, Hawaii  96813
          (808) 524-1800
 7
     For Defendant GMP HAWAII, INC.:
 8
          RICHARD C. SUTTON, JR., ESQ.
 9        Sakai Iwanaga Sutton Law Group
          City Financial Tower, Suite 2307
10        201 Merchant Street
          Honolulu, Hawaii  96813-2929
11        (808) 792-3888

12

13   ALSO PRESENT:

14        DANIEL HABIB, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

RALPH ROSENBERG COURT REPORTERS
(808) 524-2090

92

1    Q    Okay. And so the inclusion of -- and have
2 you had a chance yet to read Exhibit 15?
3    A    Uh-huh.
4    Q    Exhibit 15 is an accurate copy of Change
5 Order 1. Have you seen this document before today?
6    A    Long time ago, but I have seen it, yes.
7    Q    Okay. I want to take your attention to the
8 attachment that's on GMP - 184. Do you see the
9 reference here to 200,000, and it says, "Additional
10 construction management services by GMP"? Right here
11 (indicating).
12    A    Yes.
13    Q    Okay. This insertion here, who had put that
14 in? At whose request was that included in this change
15 order?
16    A    I have no idea, but this internal work by
17 Synagro.
18    Q    Okay. How did they arrive at the $200,000
19 amount?
20    A    From my recollection, they had 4-, 500,000
21 available initially, to start with. Was how much?
22 600,000.
23    MR. SUTTON:    (Indicating.)
24    THE WITNESS:    Construction management.
25    MR. SUTTON:    Yes.

RALPH ROSENBERG COURT REPORTERS
(808)524-2090

93

```
 1        THE WITNESS:  600,000.
 2        MR. SUTTON:  6460.
 3        THE WITNESS:  646- initially.
 4        MS. KUO:  Uh-huh.
 5        THE WITNESS:  And we said that's not enough
 6   because our fee proposal was much higher than that, so
 7   they added 200,000 more.
 8        Q    (BY MS. KUO):  Okay.  And so that's how that
 9   figure, your understanding?
10        A    Yeah.
11        Q    So this document here, this change order,
12   this is not a final document.  It still needs to be
13   approved by the City; correct?
14        A    That is correct.
15        Q    And do you have any understanding of whether
16   or not this additional amount for 200,000 for
17   construction management was ever approved by the city?
18        A    I have no idea.
19        Q    Okay.  I want to show you Exhibit 16 to Peter
20   Melnyk's deposition.
21        A    Uh-huh.
22        Q    And if you look at, this is an e-mail, a
23   June 5th e-mail from the city, Steven Serikaku, to
24   Connie Reynolds and Jim Hecht of Synagro.  And if you
25   go down towards the middle, it states, "We also provide
```

RALPH ROSENBERG COURT REPORTERS
(808)524-2090

94

1   the following comments: The $200,000 cost for
2   additional management shall be deleted."
3           Do you see that?
4       A   Yes.
5       Q   So, did you ever receive any type of
6   appropriation from the city to provide construction
7   management work?
8       A   We don't work for the city. We don't work
9   for the city. We work for Synagro.
10      Q   Okay. Did you ever receive any type of -- on
11  construction management, what were the terms that were
12  discussed between Synagro and GMP?
13      A   We have submitted our fee proposal, was an
14  excess of 700,000.
15      Q   Let me show you Exhibit No. 5. Is this what
16  you are calling your, quote-unquote, fee proposal?
17      MR. SUTTON: Exhibit 5 is document GMP - 0176.
18      THE WITNESS: Yes, and that's the portion of the
19  construction management, if you add the 400- plus the
20  300-, that comes to over the 700,000.
21      Q   (BY MS. KUO): Okay. I want to show you
22  here, though, it says: Peter Melnyk asked me to e-mail
23  you the following regarding your engineering fee
24  proposal. And later on down here, it says: Under
25  construction management GMP proposes.

RALPH ROSENBERG COURT REPORTERS
(808) 524-2090

147

```
 1   upon one thing -- I mean, I'm still confused, based on
 2   the presentations and the work?
 3        A    Based on the representation of Synagro that
 4   GMP is the engineer for the team.
 5        Q    Okay.  I also wanted to -- hold on a second.
 6   I'd like to next go to the compensation issue.  You
 7   have here, the total design expenses is approximately
 8   2,683,422 for the said contract.  You're talking about
 9   the implied contract, right?
10        MR. SUTTON:  Which contract?
11        MS. KUO:  Well, I'm going by the counterclaim.  He
12   says the total of the design expenses is approximately
13   2,683,422 for the said contract.
14        Q    (BY MS. KUO):  What contract are you
15   referring to?  Right here.
16        A    That's number what?
17        Q    No. 1, Paragraph 12 of the counterclaim
18   that's attached as Exhibit 3 to Melnyk's depo.
19        MR. SUTTON:  You're answering her question on
20   Paragraph 12, as to what contract this is.
21        THE WITNESS:  From what I see right now, it
22   appears to be the implied contract.
23        Q    (BY MS. KUO):  Okay.  And what is this figure
24   based on, the 2 million six hundred eighty-three?
25        A    Yeah.  Based on what they negotiated.
```

RALPH ROSENBERG COURT REPORTERS
(808)524-2090

154

```
 1      Q    So all of these figures are based on industry
 2  standards?
 3      A    That is correct.
 4      Q    Just two more things I want to cover with the
 5  claim and then you can go.  We can come back and
 6  continue in the afternoon.
 7      A    Sure.
 8      Q    You have in here, on Paragraph 14, that:  As
 9  a result, Defendant is entitled to damages including
10  profits from the contract plus costs.
11           What are you talking about profits?
12      A    Profits of the engineering and the
13  construction management.
14      Q    So it's basically these figures here?
15      A    That is correct.
16      Q    Not an additional profit, right?
17      A    That's the profit for this project.
18      Q    And the last thing was, you also have a
19  Count II here, for punitive damage, what's the basis pf
20  this claim here?
21      A    Where is that?  I think this is a legal --
22      MR. SUTTON:  You can give the factual basis for
23  it.
24      THE WITNESS:  So what's the question?
25      Q    (BY MS. KUO):  My question is, what's the
```

RALPH ROSENBERG COURT REPORTERS
(808)524-2090

221

```
 1                    C E R T I F I C A T E
 2    STATE OF HAWAII            )
                                 ) SS.
 3    CITY AND COUNTY OF HONOLULU )
 4
 5            I, ELSIE TERADA, do hereby certify;
 6            That on September 19, 2005, at 9:04 a.m.
 7    appeared before me WAGDY A. GUIRGUIS, P.E., the witness
 8    whose deposition is contained herein; that prior to
 9    being examined he was by me duly sworn;
10            That the deposition was taken down by me in
11    machine shorthand and was thereafter reduced to
12    typewritten form under my supervision; that the
13    foregoing represents, to the best of my ability, a true
14    and correct transcript of the proceedings had in the
15    foregoing matter.
16            I further certify that I am not attorney
17    for any of the parties hereto, nor in any way concerned
18    with the cause.
19            DATED this 30th day of September, 2005, in
20    Honolulu, Hawaii.
21
22
23    _____
24    ELSIE TERADA, CSR NO. 437
      Notary Public, State of Hawaii
25    My Commission Expires: 4-07-2006
```

RALPH ROSENBERG COURT REPORTERS
(808)524-2090