1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAI`I

3    SYNAGRO TECHNOLOGIES,            )
                                      )
4    INC.,                            )
                                      )
5              Plaintiff,             )
                                      )
6              vs.                    )  CIVIL NO.
                                      )
7    GMP HAWAII, INC.,                )  CV04-00509 SPK LEK
                                      )
8              Defendant.             )
     _____ )

9

10

11        DEPOSITION OF WAGDY A. GUIRGUIS, P.E.

12

13      Taken on behalf of Plaintiff SYNAGRO TECHNOLOGIES,

14   INC., at the offices of Alston Hunt Floyd & Ing, ASB

15   Tower, 1001 Bishop Street, 18th Floor, Honolulu,

16   Hawaii, commencing at 9:04 a.m., Monday, September 19,

17   2005, pursuant to Notice.

18

19

20

21

22

23

24   BEFORE:  ELSIE TERADA, CSR NO. 437

25            Certified Shorthand Reporter

RALPH ROSENBERG COURT REPORTERS
(808) 524-2090

EXHIBIT I

```
 1   APPEARANCES:

 2

 3   For Plaintiff SYNAGRO TECHNOLOGIES, INC.:

 4         MEI-FEI KUO, ESQ.
           Alston Hunt Floyd & Ing
 5         American Savings Bank Tower
           1001 Bishop Street, 18th Floor
 6         Honolulu, Hawaii  96813
           (808) 524-1800
 7
     For Defendant GMP HAWAII, INC.:
 8
           RICHARD C. SUTTON, JR., ESQ.
 9         Sakai Iwanaga Sutton Law Group
           City Financial Tower, Suite 2307
10         201 Merchant Street
           Honolulu, Hawaii  96813-2929
11         (808) 792-3888

12

13   ALSO PRESENT:

14         DANIEL HABIB, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         I N D E X

 2    EXAMINATION BY:                                    PAGE

 3       MS. KUO  ............................        4

 4

 5

 6    EXHIBITS FOR IDENTIFICATION:                       PAGE

 7    Plaintiff's

 8    1    Plaintiff Synagro Technologies, Inc.'s        6
           Second Amended Notice of Taking Continued
 9         Deposition Upon Oral Examination Pursuant
           to Rule 30(b)(6); Exhibit 'A' (8 pages)
10
      2    City & County of Honolulu - Sand Island      13
11         Sewage Treatment Facility, Pro Forma of
           Debt Service & Facility Depreciation; and
12         various other documents (49 pages)

13    3    Proposed Language; Bates No. A 000732         77
           (1 page)
14
      4    Various e-mails and Proposed Language;        87
15         Bates Nos. A 000729 through A 000732 (4 pages)

16    5    Construction Contract (173 pages)            106

17    6    Letter dated July 5, 2002, with attachment;  124
           Letter dated October 10, 2002; Letter dated
18         April 25, 2003 (4 pages)

19    7    Letter dated June 1, 2001, with attachments; 173
           Bates Nos. GMP - 1762 through GMP - 1767
20         (6 pages)

21    8    Letter dated September 8, 2003, with         179
           attachments; Bates Nos. GMP - 1749 through
22         GMP - 1754 (6 pages)

23    9    Contract, with attachments (27 pages)        211

24   10    Various documents; Bates Nos. GMP - 1492     218
           through GMP - 1495 (4 pages)
25
```

1     Q    Frank Doyle's boss?

2     A    Yeah.

3     Q    Did you ever have any direct contacts with

4 Mr. Steinberger?

5     A    Very limited.

6     Q    Very little, as in what kind of contacts?

7     A    Very limited regarding that project.  I don't

8 recall that I talked to him about this project.

9     Q    You don't recall talking to him?

10     A    No.

11     Q    Okay.  Do you know whether or not anybody

12 else at GMP has talked to him on the project?

13     A    Could be Peter Melnyk, I'm not sure.

14     Q    I wanted to go back to Counterclaim No. 6,

15 Paragraph 6.  Let's cover the counterclaim issues and

16 then we can take a break till this afternoon, when we

17 need to come back.

18     A    Yeah.

19     Q    Specific question is on No. 6, you have here,

20 "Plaintiff was awarded the contract from the City and

21 County of Honolulu based partly on the past work

22 performed by Defendant..." what are you referring to,

23 there?  Are you talking about the past work referenced

24 in the presentation or just generally past work.

25     A    Presentation and then knowledge with us.

1    Q    Okay.  And then your second sentence is,

2  "...and the understanding that Defendant would be

3  providing engineering design and construction

4  management..." what is that?  What's the factual basis

5  of that statement?

6    A    That means that the client will be assured

7  that the quality engineering will be done at a

8  reasonable cost.

9    Q    But you have here that the understanding that

10 Defendant, meaning GMP, would be providing engineering

11 design and construction management, is this statement,

12 are you talking about the City's understanding or just

13 the general understanding?

14   A    The City have qualified Synagro to go to

15 step three of the bidding, after this presentation.  So

16 the presentation showed that part of the team is GMP,

17 that have experience and specially on Sand Island.

18 Sand Island with GMP started working there since 1977,

19 and we know every pipeline, every valve.  So our

20 knowledge of Sand Island would bring GMP to running

21 there.

22   Q    So when you say here Plaintiff was awarded

23 the contract from the City, based partly on, and then

24 you have understanding that Defendant would be

25 providing engineering designing work, that is based

 1  upon one thing -- I mean, I'm still confused, based on

 2  the presentations and the work?

 3      A    Based on the representation of Synagro that

 4  GMP is the engineer for the team.

 5      Q    Okay.  I also wanted to -- hold on a second.

 6  I'd like to next go to the compensation issue.  You

 7  have here, the total design expenses is approximately

 8  2,683,422 for the said contract.  You're talking about

 9  the implied contract, right?

10      MR. SUTTON:  Which contract?

11      MS. KUO:  Well, I'm going by the counterclaim.  He

12  says the total of the design expenses is approximately

13  2,683,422 for the said contract.

14      Q    (BY MS. KUO):  What contract are you

15  referring to?  Right here.

16      A    That's number what?

17      Q    No. 1, Paragraph 12 of the counterclaim

18  that's attached as Exhibit 3 to Melnyk's depo.

19      MR. SUTTON:  You're answering her question on

20  Paragraph 12, as to what contract this is.

21      THE WITNESS:  From what I see right now, it

22  appears to be the implied contract.

23      Q    (BY MS. KUO):  Okay.  And what is this figure

24  based on, the 2 million six hundred eighty-three?

25      A    Yeah.  Based on what they negotiated.

1      Q      Excuse me?

2      A      Based on that design fees.

3      Q      I'm sorry.  So you're talking about GMP

4  Document 186, and you're referring to the adjusted

5  price, second item?

6      A      Yeah.

7      Q      That's what it's based on?

8      A      That is correct.

9      Q      Okay.  Anything else?

10     A      That's it.

11     Q      And this engineering design work value, the

12  total of it, does that include work that GMP provided

13  under the Andritz and CBI contracts?

14     A      Yes.

15     Q      How much, first of all, has -- what is the

16  contract value of the Andritz-CBI contract -- I mean,

17  the Andritz and GMP contract?

18     A      I don't recall the facts.

19     Q      Okay.

20     A      Peter Melnyk knows the figures, all the

21  figures.

22     Q      Same thing with the CBI, and Peter Melnyk

23  would be the best person for that?

24     A      That's correct.  But I can tell you, it was

25  not $2,683,422.

1      Q      And the construction management value here,

2   again, is that for the implied contract?

3      A      That is correct.

4      Q      And how did you get this value?

5      A      I took the 646- plus the 200- from the

6   adjusted amount.

7      Q      Okay.  So that includes the 200,000 that was

8   denied by the City, right?

9      A      I'm not sure because it appeared to me that

10   this is adjusted value, it appeared to me -- I have to

11   the look the contract.  It's 3, 3-9-7-8, then that one

12   is it.  Sometimes they denied, sometimes they included,

13   so we would have to look at the figure, find the figure

14   of the contract.

15      Q      So you're getting that amount from here?

16      A      Yeah, from the adjusted value, from the same,

17   GMP 1086.

18      Q      And that includes the $200,000; correct?

19      A      That is correct.

20      Q      That was in the initial change order, the

21   July --

22      A      -- 27 or whatever it is.

23      Q      Yeah.  The amount that's included in this

24   change order here, the January 2nd -- sorry, the

25   January 27, 2003?

1       A    Yes.

2       Q    And this figure was eventually denied by the

3  City; isn't that correct?

4       A    I'm not sure.  I have to look at the number

5  here, you see that number match the final contract or

6  not.

7       Q    Okay.

8       MR. SUTTON:  It doesn't say.

9       THE WITNESS:  What's the total?  The final number

10  will say if it matched the adjusted value, because when

11  you say adjusted value, from what I understand, this

12  came from the contract, from the -- where is the one

13  you were looking at here?

14      Q    (BY MS. KUO):  Right here.  The main

15  contract?

16      A    Yeah.

17      MR. SUTTON:  There is no schedule.

18      THE WITNESS:  This one?

19      MR. SUTTON:  Yeah.

20      MS. KUO:  There's a schedule, but it doesn't break

21  it down.

22      MR. SUTTON:  It doesn't break it down.  There is

23  no schedule on that.

24      THE WITNESS:  So where this one came from?

25      MR. SUTTON:  That's --

1       THE WITNESS:  Yeah.  Because it say adjusted

2  value, that means this is the final number, okay?

3       Q    (BY MS. KUO):  Okay.

4       A    So that's the adjusted value, the value

5  number, so the 200 must be in it.  Although there is

6  some reference that it's not been approved, that

7  doesn't mean sometimes it was not included, so we have

8  to look at this number here first and what's the final

9  number of the contract.

10       Q    Okay.  And I want to take your attention back

11  to Exhibit 5.  You have here the figures that support

12  your breakdown for the construction management

13  proposal, right?

14       A    Yes.

15       Q    Okay.  And this first figure, the 427,069,

16  can you describe for me again what that's taken from?

17       A    This is for the engineer from the proposed

18  construction value from the RFP.

19       Q    So that this figure is from the RFP?

20       A    Yeah, from the RFP, the estimated

21  construction, yes.

22       Q    I'm sorry, one more time.  The 427,000 is

23  from the RFP based on, you said the estimated time?

24  I'm confused on that.  Can you describe -- I'm sorry to

25  make you go through it, but I'm a little confused.  So

1  this amount is from where again?

2      A    This is the monthly payment of engineer times

3  the period of time required to build the plant,

4  according to the RFP.

5      Q    Oh, okay.  Okay.  And then the monthly amount

6  that's paid to a resident engineer, how is that figure

7  obtained?

8      A    Based on his salary, actual salary, the

9  approved overhead and profit, plus the 4.17 percent

10  tax.

11      Q    So the actual salary of a full-time resident

12  engineer, is that pretty standard across the board?

13      A    It depends on the experience.  For the

14  smaller job, you need less experienced engineer.  For

15  the bigger job, you get bigger experienced engineer,

16  but within the standards of the City.

17      Q    Okay.  So the resident engineer here, you

18  have -- to meet a standard of the City, they're on a

19  certain project, their salary would be about pretty

20  similar across the board?

21      A    According to the industry, this is standard.

22      Q    It's according to industry?  Okay.  And what

23  about the second figure, the 108,863, what is that

24  based on?

25      A    The price of an inspector.

1     Q    Again, multiplying according to the --

2     A    The hourly rate, overhead profits.

3     Q    Okay.  And then the hourly rate for the

4  inspector, is that also something that's pretty

5  standard across the board?

6     A    That is correct.

7     Q    And then the last one here, you used the same

8  thing.  It's a full-time inspector for construction of

9  digester?  So you guys broke it up, then, the sludge

10  versus the digester?

11     A    That is correct.

12     Q    Is this figure obtained the same way where

13  you get the hourly rate multiplied by --

14     A    That is correct, but you can see that we put

15  much more skilled inspector for the digester than the

16  dryer.

17     Q    That's why it's a little higher?

18     A    That is correct.

19     Q    And is there a reason why the inspector is

20  higher for the digester?

21     A    It's much more complex.

22     Q    And the hourly that you were providing the

23  inspector that you get this figure from, is that also

24  pretty standard across the board as well?

25     A    Yeah.  It's within the industry standard.

154

1     Q     So all of these figures are based on industry

2  standards?

3     A     That is correct.

4     Q     Just two more things I want to cover with the

5  claim and then you can go.  We can come back and

6  continue in the afternoon.

7     A     Sure.

8     Q     You have in here, on Paragraph 14, that:  As

9  a result, Defendant is entitled to damages including

10  profits from the contract plus costs.

11        What are you talking about profits?

12     A     Profits of the engineering and the

13  construction management.

14     Q     So it's basically these figures here?

15     A     That is correct.

16     Q     Not an additional profit, right?

17     A     That's the profit for this project.

18     Q     And the last thing was, you also have a

19  Count II here, for punitive damage, what's the basis pf

20  this claim here?

21     A     Where is that?  I think this is a legal --

22     MR. SUTTON:  You can give the factual basis for

23  it.

24     THE WITNESS:  So what's the question?

25     Q     (BY MS. KUO):  My question is, what's the

```
 1   factual basis of this punitive damages count that you

 2   have there, No. 2?

 3        A    Is because of the breach of contract.

 4        Q    Breach of the implied contract?

 5        A    That is correct.

 6        Q    Okay.

 7        MS. KUO:   That's all the questions I have now.

 8   We'll continue this afternoon.

 9             (Session was resumed at 4:05 p.m.)

10        Q    (BY MS. KUO):  Mr. Guirguis, you understand

11   that you are still under oath?

12        A    I do.

13        Q    Okay.  I wanted to go through what's marked

14   as Exhibit 2.  These are documents that you mentioned

15   that you had reviewed for preparing for today's

16   deposition; is that correct?

17        A    Yes.

18        Q    Are there any other documents that you

19   reviewed other than those that are attached as

20   Exhibit 2?

21        A    No.

22        Q    No, okay.  I did want to go through a couple

23   of these with you to get more information.  This first

24   document here, which is in the gray binder, what is the

25   date of this document?
```

```
 1              C E R T I F I C A T E

 2    STATE OF HAWAII            )
                                 )  SS.
 3    CITY AND COUNTY OF HONOLULU )

 4

 5         I, ELSIE TERADA, do hereby certify;

 6         That on September 19, 2005, at 9:04 a.m.

 7    appeared before me WAGDY A. GUIRGUIS, P.E., the witness

 8    whose deposition is contained herein; that prior to

 9    being examined he was by me duly sworn;

10         That the deposition was taken down by me in

11    machine shorthand and was thereafter reduced to

12    typewritten form under my supervision; that the

13    foregoing represents, to the best of my ability, a true

14    and correct transcript of the proceedings had in the

15    foregoing matter.

16         I further certify that I am not attorney

17    for any of the parties hereto, nor in any way concerned

18    with the cause.

19         DATED this 30th day of September, 2005, in

20    Honolulu, Hawaii.

21

22

23    _____

24    ELSIE TERADA, CSR NO. 437
      Notary Public, State of Hawaii
25    My Commission Expires:  4-07-2006
```

RALPH ROSENBERG COURT REPORTERS
(808)524-2090

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 0 2 2004

at _____ o'clock and ___ min. ___ M.
WALTER A.Y.H. CHINN, CLERK

RUSH MOORE CRAVEN SUTTON MORRY & BEH
A LIMITED LIABILITY LAW PARTNERSHIP, LLP

RICHARD C. SUTTON, JR.     1010-0
REGINAULD T. HARRIS       7516-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii  96813
Tel. No. (808) 521-0400
e-mail: Rsutton@rmhawaii.com
          Rharris@rmhawaii.com

Attorneys for Defendant
GMP HAWAII, INC.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| SYNAGRO TECHNOLOGIES, INC., | ) | CIVIL NO. CV044-00509 (SPK /LEK) |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT GMP HAWAII, INC.'S |
| vs. | ) | ANSWER TO COMPLAINT FILED |
| | ) | ON AUGUST 18, 2004 AND |
| GMP HAWAII, INC., | ) | COUNTERCLAIM AGAINST |
| | ) | PLAINTIFF SYNAGRO |
| Defendants. | ) | TECHNOLOGIES, INC.; |
| | ) | CERTIFICATE OF SERVICE |

**DEFENDANT GMP HAWAII, INC.'S ANSWER TO COMPLAINT FILED
ON AUGUST 18, 2004 AND COUNTERCLAIM AGAINST
PLAINTIFF SYNAGRO TECHNOLOGIES, INC.**

Defendant GMP HAWAII, INC. (hereinafter "Defendant") by and

through its attorneys Rush Moore Craven Sutton Morry and Beh, LLP., answers

S:\Wpdata\RSutton\GMP\Sand Island\Synagro\Pleading (Synagro)\Answer.wpd



EXHIBIT

3

P. MELNYK

the Complaint filed herein on August 18, 2004 (herein "Complaint") by

SYNAGRO TECHNOLOGIES, INC. (herein "Plaintiff") as follows:

1.    With respect to the allegations in paragraph 1, Defendant admits that Plaintiff had a contract with the City and County of Honolulu for the construction of a wastewater treatment bioconversion facility.  Defendant also admits that Plaintiff entered into a sub-contract with Andritz-Ruthner, Inc. for engineering and construction services related to the contract to construct the bioconversion facility. Defendant also admits that it entered into a contract with Andritz-Ruthner, Inc. for design and engineering services.  Defendant alleges that the attached Exhibits referenced in paragraph speaks for themselves and denies the remaining allegations of said paragraph1 with respect to the dates of execution for these contracts.

2.    Defendant denies the allegations in paragraph 2.

3.    Defendant denies the allegations of paragraph 3.

4.    With respect to the allegations in paragraph 4, Defendant is without sufficient knowledge as to the allegations and on that basis denies them.

5.    Defendant admits the allegations contained in paragraph 5.

6.    Defendant admits the allegations contained in paragraph  6.

7.    Defendant admits the allegations contained in paragraph  7.

8.     With respect to the allegations in paragraph 8, Defendant alleges that the referenced portion of Exhibit 4 speaks for itself and denies the remaining allegations of said paragraph.

9.     With respect to the allegations in paragraph 9, Defendant alleges that the referenced portion of Exhibit 4 speaks for itself and denies the remaining allegations of said paragraph.

10.     With respect to the allegations in paragraph 10, Defendant alleges that the referenced portion of the Exhibit speaks for itself, and admits the allegations of paragraph 10, except that the quoted language in paragraph 10 is contained in Exhibit 1 and not Exhibit 4 as stated in paragraph 10 of the Complaint.

11.     With respect to the allegations in paragraph 11, Defendant alleges that the referenced portion of the Exhibit speaks for itself, and admits the allegations of paragraph 11, except that the quoted language in paragraph 11 is contained in Exhibit 1 and not Exhibit 4 as stated in paragraph 11 of the Complaint.

12.     With respect to the allegations in paragraph 12, Defendant alleges that there was a contract between Plaintiff and Andritz-Ruthner, Inc., and further alleges that the referenced Exhibit 2 speaks for itself, and denies the

remaining allegations of said paragraph.

13.     With respect to the allegations in paragraph 13, Defendant alleges that the referenced portion of Exhibit 2 speaks for itself and denies the remaining allegations of said paragraph.

14.     With respect to the allegations in paragraph 14, Defendant alleges that the referenced portion of Exhibit 2 speaks for itself and denies the remaining allegations of said paragraph.

15.     With respect to the allegations in paragraph 15, Defendant admits that it executed a contract with Andritz-Ruthner, Inc., and alleges that the contract provisions cited at Exhibit 3 speak for themselves, and denies the remaining allegations of said paragraph.

16.     With respect to the allegations in paragraph 16, alleges that the contract provisions cited at Exhibit 3 speak for themselves and denies the remaining allegations of said paragraph.

17.     With respect to the allegations in paragraph 17, alleges that the contract provisions cited at Exhibit 3 speak for themselves and denies the remaining allegations of said paragraph.

18.     With respect to the allegations in paragraph 18, Defendant admits that it has prepared drawings and plans for the Project, and denies the remaining

allegations of said paragraph.

19. Defendant denies the allegations of paragraph 19.

20. Defendant denies the allegations of paragraph 20.

21. Defendant admits that Mr. Richard Sutton, counsel for Defendant, wrote to Mr. Carmichael of Plaintiff, and denies the remaining allegations of paragraph 21.

22. With respect to the allegations in paragraph 22, Defendant is without sufficient knowledge as to the allegations and on that basis denies them.

23. With respect to the allegations in paragraph 23, Defendant is without sufficient knowledge as to the allegations and on that basis denies them.

24. Defendant denies the allegations of paragraph 24.

25. Defendant admits the allegations of paragraph 25.

26. Defendant admits the allegations of paragraph 26.

27. Defendant denies the allegations in paragraph 27.

28. With respect to the allegations in paragraph 28, Defendant re-alleges and incorporates its responses to paragraphs 1 through 27.

29. With respect to the allegations in paragraph 29, Defendant admits that there exists an actual controversy between Defendant and Plaintiff, and that Plaintiff has a contractual obligation to Defendant. Defendant denies the

remaining allegations of paragraph 29.

30.  Defendant denies the allegations of paragraph 30..

31.  Defendant denies the allegations contained in paragraph 31.

32.  Defendant denies the allegations of paragraph 32.

33.  Defendant denies the allegations contained in paragraph 33.

34.  Defendant denies the allegations contained in paragraph 34.

35.  With respect to the allegations in paragraph 35, Defendant re-alleges and incorporates its responses to paragraphs 1 through 34.

36.  Defendant denies the allegations of paragraph 36.

37.  Defendant admits the allegations contained within paragraph 37.

38.  Defendant alleges that it has not refused to provide plans and drawings under its contract with Andritz-Ruthner, Inc. and denies the remaining allegations contained within paragraph 38.

39.  Defendant re-alleges and incorporates its response to paragraph 38, and denies the allegations contained within paragraph 39.

40.   Defendant re-alleges and incorporates its response to paragraph 38, and denies the allegations contained within paragraph 40.

41.  With respect to the allegations in paragraph 41, Defendant re-alleges and incorporates its responses to paragraphs 1 through 40.

42.  Defendant denies the allegations contained within paragraph 42 (misnumbered as paragraph 46 in the Complaint).

43.  Defendant denies the allegations contained within paragraph 43 (misnumbered as paragraph 47 in the Complaint).

## SEPARATE AFFIRMATIVE DEFENSES

Defendant states the following affirmative defenses without assuming the burden of proof on such defenses that would otherwise rest on Plaintiff:

### First Affirmative Defense

The Complaint and each purported claim fails to state a claim on which relief may be granted.

### Second Affirmative Defense

The claims for relief of the Complaint are barred by lack of jurisdiction.

### Third Affirmative Defense

The claims for relief of the Complaint are barred by the defense of mistake.

### Fourth Affirmative Defense

The claims for relief of the Complaint are barred by the defense of

consent, knowledge and acquiescence.

### Fifth Affirmative Defense

Defendant intends to rely on the defense that Plaintiff failed to mitigate its damages, if any.

### Sixth Affirmative Defense

The claims for relief of the Complaint are barred by the defense that Plaintiff failed to perform material conditions of its contract with Defendant.

### Seventh Affirmative Defense

The claims for relief of the Complaint are barred by set off, offset, waiver, estoppel, laches and unclean hands.

### Eighth Affirmative Defense

If Plaintiff suffered any of the injuries or damages as alleged in the Complaint, said injuries or damages were caused by or contributed to by the negligence of Plaintiff

### Ninth Affirmative Defense

If Plaintiff suffered any of the injuries or damages as alleged in the Complaint, said injuries or damages were caused by or contributed to by persons other than Defendant.

and equitable.

DATED: Honolulu, Hawai'i, September _2_, 2004

_Reginald T Harris_
RICHARD C. SUTTON, JR.
REGINAULD T. HARRIS
Attorneys for Defendant
GMP HAWAII, INC.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| SYNAGRO TECHNOLOGIES, INC., | ) | CIVIL NO. CV044-00509 (SPK /LEK) |
| | ) | |
| Plaintiff, | ) | |
| | ) | COUNTERCLAIM AGAINST |
| vs. | ) | PLAINTIFF SYNAGRO |
| | ) | TECHNOLOGIES |
| GMP HAWAII, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**COUNTERCLAIM AGAINST PLAINTIFF SYNAGRO TECHNOLOGIES**

Comes now Defendant GMP HAWAII, INC. (hereinafter "Defendant-Counterclaimant") by and through its attorneys Rush Moore Craven Sutton Morry and Beh, LLP., to file a counterclaim against Plaintiff SYNAGRO TECHNOLOGIES (hereinafter "Plaintiff")alleges and avers as follows:

1.    Plaintiff Synagro ("Plaintiff") made a presentation to the City & County of Honolulu proposing to design, engineer, construct, and test an In-vessel bioconversion facility at the Sand Island Waste Water Treatment Plant in the City and County of Honolulu, Hawaii. The bioconversion facility is to separate sludge from the waste water treatment process and convert it into a

1

marketable fertilizer pellet.

     2.     Based upon said presentation to the City and County of Honolulu, Plaintiff was awarded a contract with the City and County of Honolulu, Hawaii to design, engineer, construct, and test an In-vessel Bioconversion facility at the Sand Island Waste Water Treatment Plant in the City and County of Honolulu, Hawaii on or about May 7, 2002.

     3.     The presentation that Plaintiff made to the City and County of Honolulu featured examples of work done by Defendant in previous engineering projects for the City & County of Honolulu involving waste water treatment plants.

     4.     The presentation also listed Defendant as a member of the project delivery team for the bioconversion facility. The presentation described the members of the project delivery team as the persons and entities that would perform engineering work as well as the construction management for the overall bioconversion facility at the Sand Island Waste Water Treatment plant.

**(Count I. Breach of Implied Contract)**

     5.     It was the representation of Plaintiff that Defendant would be involved in providing engineering design and construction management for the overall project.

6.    Plaintiff was awarded the contract from the City and County of Honolulu based partly on the past work performed by Defendant, and the understanding that Defendant would be providing engineering design and construction management for the Sand Island bioconversion facility project.

7.    Plaintiff utilized the reputation and goodwill of Defendant in order to obtain the Sand Island bioconversion facility contract with the City and County of Honolulu.

8.  Defendant relied upon these representations that Plaintiff made to Defendant and to the City and County of Honolulu that Defendant was to perform a substantial portion of the of the engineering design services and construction management for the bioconversion facility at the Sand Island Waste Water Treatment Plant.

9.    Said representations created an implied contract between Defendant and Plaintiff

10    However, Plaintiff has failed to provide work to Defendant, and has sought to use other contractors to perform the work it had promised Defendant.

11.    Plaintiff's actions represent a breach of its implied contract with Defendant.

12.    The total of the design expenses is approximately $2,683,422.00 for the said contract.

13.    The total of the construction management is approximately $846,000.00 for the said contract.

14.    As a result, Defendant is entitled to damages including profits from the contract plus any costs incurred.

### (Count II. Punitive Damages)

15.    Defendant realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14, above.

16.    Plaintiff's blatant and unjustified refusal provide engineering work, construction management work, and/or compensation to Defendant for work on the Sand Island Bioconversion Facility Project constitutes a willful and deliberate repudiation of its implied contract with Defendant.

17.    Plaintiff clearly has knowledge of the representations that it made to the City and County of Honolulu and Defendant regarding the amount of work that Defendant would perform on the Project, and knowledge of Defendant's justified reliance upon those representations.

18.    Plaintiff's refusal to honor its implied contract with Defendant is wanton, reckless, willful, malicious, and oppressive.

19.    As a consequence of Plaintiff's actions, Defendant is entitled to punitive damages commensurate with the evidence adduced at trial.

WHEREFORE, Defendant GMP Hawaii, Inc. prays as follows:

A.    For general damages in amounts to be shown at trial;

B    For special damages in amounts to be shown at trial;

C.    Punitive Damages;

D.    For attorneys' fees, costs, prejudgment and post-judgment interest and for such other and further relief, both legal and equitable, as the Court deems just and property under the circumstances.

DATED: Honolulu, Hawai'i, September _2_, 2004

_____
RICHARD C. SUTTON, JR.
REGINAULD T. HARRIS

Attorneys for Defendant
GMP Hawaii, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., | ) CIVIL NO. CV044-00509 (SPK /LEK) |
| | ) |
| Plaintiff, | ) |
| | ) CERTIFICATE OF SERVICE |
| vs. | ) (Defendant GMP Hawaii, Inc.'s |
| | ) Answer to Complaint Filed on August |
| GMP HAWAII, INC., | ) 18, 2004; Counterclaim Against |
| | ) Plaintiff Synagro Technologies) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the foregoing will be duly

served this date by hand delivery addressed to the following:

PAUL ALSTON, ESQ,
MEI-FEI KUO, ESQ.
Alston Hunt Floyd and Ing
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawaii 96813

Attorneys for Plaintiff SYNAGRO TECHNOLOGIES

S:\Wpdata\R.Sutton\GMP-Sand Island\Synagro\Pleading (Synagro)\Answer.wpd

DATED: Honolulu, Hawai'i, September 2, 2004

RICHARD C. SUTTON, JR.
REGINAULD T. HARRIS

Attorneys for Defendant
GMP Hawaii, Inc.

City & County of Honolulu - Sand Island
Change Order #1 Restatement - Capital Changes
01/27/03

| | Contract Price | Facility Relocation | Building Demo/Rehab | Scope Additions | Adjusted Price |
|---|---|---|---|---|---|
| **A** **SYSTEM** | | | | | |
| 1 Bid Expenses | $ 353,750 | | | | $ 353,750 |
| 2 Design Expenses | $ 2,548,750 | $ 100,000 | | $ 34,672 | $ 2,683,422 |
| 3 Construction Management | $ 646,000 | | | $ 200,000 | $ 846,000 |
| 4 Others | $ - | | $ 95,000 | $ - | $ 95,000 |
| | $ 3,548,500 | $ 100,000 | $ 95,000 | $ 234,672 | $ 3,978,172 |
| **B** **SITE WORK** | | | | | |
| 1 Clearing and Grubing | $ 350,000 | $ (241,167) | | | $ 108,833 |
| 2 Roadways | $ 675,000 | $ (408,035) | | | $ 266,965 |
| 3 Landscaping | $ 25,000 | $ | | | $ 25,000 |
| 4 Others | $ - | | | | $ - |
| | $ 1,050,000 | $ (649,202) | $ - | $ - | $ 400,798 |
| **C** **SITE UTILITY** | | | | | |
| 1 Water System | $ 325,000 | | | | $ 325,000 |
| 2 Drain System | $ 375,000 | $ (108,429) | | | $ 266,571 |
| 3 Sewer System | $ 150,000 | $ (50,000) | | | $ 100,000 |
| 4 Power System | $ 750,000 | $ (25,000) | | | $ 725,000 |
| | $ 1,600,000 | $ (183,429) | $ - | $ - | $ 1,416,571 |
| **D** **BUILDINGS** | | | | | |
| 1 Receiving and Storage | $ - | | | | $ - |
| 2 Process Building | $ 3,000,000 | $ (1,494,170) | $ 1,104,914 | $ 52,588 | $ 2,663,332 |
| 3 Product Storage Area | $ 1,250,000 | | | | $ 1,250,000 |
| 4 Utilities | $ 571,389 | | | | $ 571,389 |
| | $ 4,821,389 | $ (1,494,170) | $ 1,104,914 | $ 52,588 | $ 4,484,721 |
| **E** **EQUIPMENT** | | | | | |
| 1 Processing | $ 18,475,611 | | | | $ 18,475,611 |
| 2 Operational | $ 449,000 | | | | $ 449,000 |
| 3 Odor, Env & Safety Controls | $ 2,150,000 | $ 134,638 | | $ 456,990 | $ 2,741,628 |
| 4 Others | $ - | | | $ 371,240 | $ 371,240 |
| | $ 21,074,611 | $ 134,638 | $ - | $ 828,230 | $ 22,037,479 |
| **F** **SYSTEM TESTING** | $ 1,038,750 | | | | $ 1,038,750 |
| **G** **MISC EXPENSES** | | | | | |
| 1 Insurance | $ 164,750 | | | | $ 164,750 |
| 2 Performance Bond | $ 457,000 | | | | $ 457,000 |
| 3 Others | $ - | | | | $ - |
| | $ 621,750 | $ - | $ - | $ - | $ 621,750 |
| **H** **TOTAL** | $ 33,755,000 | $ (2,092,163) | $ 1,199,914 | $ 1,115,490 | $ 33,978,241 |

Exhibit 1

GMP -0186