154

1            IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF HAWAII

3

4    SYNAGRO TECHNOLOGIES,      ) CIVIL NO. CV04-00509SPK LEK
     INC.,                      )
5                               )
                      Plaintiff, )
6                               )
          vs.                   )
7                               )
     GMP HAWAII, INC.,          )
8                               )
                      Defendant. )
9    _____)

10

11       CONTINUED DEPOSITION OF PETER MELNYK, Ph.D., P.E.

12

13   Taken on behalf of the Plaintiff SYNAGRO TECHNOLOGIES,

14   INC., at the law offices of Alston, Hunt, Floyd & Ing,

15   1001 Bishop Street, Suite 1800, American Savings Bank

16   Tower, Honolulu, Hawaii 96813, commencing at 11:10 a.m.,

17   on Wednesday, October 5, 2005 pursuant to Notice.

18

19          BEFORE:  MYRLA R. SEGAWA, CSR No. 397

20          Notary Public, State of Hawaii

21

22

23

24                    EXHIBIT 2

25

155

1    APPEARANCES:

2         For Plaintiff SYNAGRO TECHNOLOGIES, INC.:

3              MEI-FEI KUO, ESQ.
               Alston, Hunt, Floyd & Ing
4              American Savings Bank, Suite 1800
               1001 Bishop Street
5              Honolulu, Hawaii  96813

6

7

         For Defendant GMP HAWAII, INC.:
8
               RICHARD C. SUTTON, JR., ESQ.
9              Sakai, Iwanaga, Sutton Law Group
               City Financial Tower, Suite 2307
10             201 Merchant Street
               Honolulu, Hawaii 96813
11

12

13       Also present:  DANIEL HABIB

14

15

16

17

18

19

20

21

22

23

24

25

156

1                            I N D E X

2

3   EXAMINATION BY:                                    PAGE

4        MS. KUO.....................................

5

6   EXHIBITS MARKED FOR IDENTIFICATION              PAGE

7   18              Letter to Peter Melnyk from      203
                    Steve Huff, November 11, 2002
8
    19              E-mail to Kai Andrade from Kirk   227
9                   Lucas, February 27, 2004

10  20              E-mail to Kirk Lucas from Rahul   228
                    Zaven, March 9, 2004
11
    21              Facsimile transmittal to City    228
12                  and County of Honolulu from
                    GMP, January 23, 2004
13
    22              Memorandum to Jim Carmichael     231
14                  from Poe Tyler, April 5, 2004

15  23              Bill to Synagro Technologies     235
                    from GMP Hawaii, Inc., April 9,
16                  2004

17  24              Xerox check to GMP Hawaii, Inc.   235
                    from Synagro Technologies
18
    25              Letter to Wagdy Guirguis from    239
19                  James Hecht, July 18, 2001

20  26              Letter to James Hecht from       239
                    Wagdy Guirguis, December 15,
21                  2001

22  27              Letter to Wagdy Guirguis from    239
                    James Hecht, December 12, 2001
23
    28              E-mail to GMP Associates from    239
24                  James Hecht, October 22, 2001

25

157

1    EXHIBITS MARKED FOR IDENTIFICATION (Cont.)        PAGE

2    29              Change order from Andritz to       253
                     GMP Hawaii, Inc.
3
     30              CBI contract                        262
4
     31              Contract modification               263
5
     32              Letter of intent to Peter           263
6                    Melnyk from CBI, June 24, 2002

7    33              Letter to Jack Currie from          269
                     Peter Melnyk, August 26, 2004
8
     34              Letter to Alan Eisenbarth from      269
9                    Peter Melnyk, July 30, 2004

10   35              Project description                 284

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

174

1     A    Well, just the people that I would have

2  communicated with which would have been Mark

3  Girovich, Jim Hecht, Peter Cummingford, Jim

4  Carmichael, Poe Tyler, Kirk Lucas, Connie Reynolds.

5     Q    Is your office in the process of getting

6  these materials together for production?

7     A    Not really.  Well, the only trouble is

8  they're all on my computer and it takes a long time

9  to print these out.  Like I said, I produced them

10  before for this case.  No, sorry.  This is not the

11  same case as with Andritz, is it?  That's when I

12  produced them.

13            MR. SUTTON:  Well, there was -- that

14  was a separate suit.

15            THE WITNESS:  Oh, that was a separate

16  suit, okay, because that's when I produced them.

17            MS. KUO:  Could you go through the

18  E-mails and to the extent that there's any

19  responsive, we would like those to be produced just

20  because it is relevant, you know, to the claims in

21  this action.

22            MR. SUTTON:  Okay.  I'll check.

23  BY MS. KUO:

24     Q    I'd like to ask you in little bit more

25  detail about GMP's counterclaim in this case.  The

175

1  counterclaim is attached to your formal deposition

2  exhibit.  It's Exhibit 3.

3                    MR. SUTTON:  I have a copy here.

4                    MS. KUO:  You have a copy, okay.

5  BY MS. KUO:

6      Q    I discussed this very brief with

7  Mr. Guirguis, but I wanted to ask you the same thing

8  because he had said you had more information on

9  engineering design work.  And specifically my

10 question related to paragraph -- let me see if I can

11 find it.  Paragraph 12 on page 4.

12                   MR. SUTTON:  I want him to get

13 familiar with the whole thing.

14 BY MS. KUO:

15     Q    Just take your time and review it, if you

16 want.

17     A    I read paragraph 12.

18     Q    My question is right here on paragraph 12

19 it says quote, "The total of the design expenses is

20 approximately $2,683,422 for the said contract."  Do

21 you see that?

22     A    Uh-huh.

23     Q    Said contract you're talking about the

24 implied contract?

25                   MR. SUTTON:  Well, let me object to

176

1   the form of the question.  But see, what this section

2   is called breach of implied contract, and so that's

3   the reference you're making is that this is -- do you

4   understand what she's asking at this point?  Perhaps

5   you might clarify again.

6   BY MS. KUO:

7       Q     My question is this $2 million figure, is

8   this what GMP's claiming is the design expenses

9   damages and pursuant to their implied contract?

10      A     Well, I think my interpretation -- and I

11  didn't write this -- my interpretation refers to the

12  total design expenses for the project.

13      Q     And Mr. Guirguis testified previously that

14  this -- do you know where this figure is based upon

15  before I --

16      A     Which figure?

17      Q     The $2 million figure.

18            MR. SUTTON:  I think it may be helpful

19  to make reference to the contract, the cost breakdown

20  to see if that's what it says.

21            THE WITNESS:  Repeat the question.

22  BY MS. KUO:

23      Q     Do you have an understanding of where this

24  figure comes from, the $2 million?

25      A     Not really.  I mean, I didn't prepare this.

177

1    So I can't testify where it came from.

2        Q    Okay.  However, you did previously testify

3    that your understanding that this is based upon the

4    engineering design expenses for the whole project,

5    correct?

6        A    Correct.

7        Q    That would include work that Andritz and

8    CBI, the engineering design work that Andritz and CBI

9    would be doing on the project as well?

10       A    In our understanding as the consulting

11   engineering firm, no.

12       Q    No?

13       A    No.

14       Q    And why is that?

15       A    Because typically the engineering expenses

16   from the equipment manufacturer are included in the

17   cost of the equipment.

18       Q    I don't think I quite understand.  Can you

19   explain what that means, the equipment?

20       A    Well, Andritz essentially is the

21   manufacturer and they provide a sludge drier which is

22   actually very complicated.  It's actually a system.

23   It's more than one piece of equipment.  Typically

24   their design expenses are included in the equipment

25   cost, the price of the equipment.

178

1    Q    So you're saying or your understanding

2  would be their design cost would be under equipment

3  cost references the engineering design cost?

4    A    Yes.

5    Q    And what is that understanding based upon,

6  just general practice?

7    A    Yes.

8    Q    What about with respect to CBI's work on

9  the project, is their engineering design cost

10 encompassed in this $2 million figure?

11   A    I do not believe so, no.

12   Q    And why is that your understanding as well?

13   A    For the same explanation that I gave for

14 Andritz that the cost for the digester included their

15 design expenses.

16   Q    I do want to show you this document here.

17   A    And also --

18   Q    I'm sorry.  Go ahead.

19   A    I'd also like to add that they're selling

20 the same equipment to a number of different clients

21 so that a lot of their design costs are prorated, you

22 know, over various clients.

23   Q    What about the engineer and design work

24 that GMP was contracted to perform for Andritz and

25 CBI, is that engineering design work cost encompassed

179

1    in the $2 million figure?

2        A    Yes.

3        Q    Okay.  And I want to show you next what's

4    marked as Exhibit 15 to your prior deposition.

5        A    Uh-huh.

6        Q    Mr. Wagdy Guirguis -- and I'm going to say

7    the full name so that we can get it clarified for the

8    record -- had testified that the $2 million figure

9    was based on Exhibit 1.

10       A    Exhibit?

11       Q    One.

12            MR. SUTTON:  You mean attached to the

13   letter?

14            MS. KUO:  Yes.

15            MR. SUTTON:  Okay.

16   BY MS. KUO:

17       Q    Now, Mr. Wagdy Guirguis believed that -- he

18   believed the $2 million figure came from the design

19   expenses adjusted price.  Do you see that figure?

20       A    Yes.

21       Q    Do you know who created this document?

22       A    Synagro created this document.

23       Q    This $2 million figure is that Synagro's

24   figure?

25       A    That is correct.

180

1      Q      Did GMP have any involvement in providing

2  this figure to Synagro?

3      A      Yes.

4      Q      And what involvement was that?

5      A      This would have been the price proposal

6  that I gave to Steve Huff in June of 2001, and then

7  of course then subsequent proposals that I would have

8  given to both Andritz and CBI.

9      Q      Okay.  Now, when you talk about the

10  proposals, is this a proposal you're talking about?

11  And I'm referencing Exhibit 7 of Wagdy Guirguis's

12  deposition.  It's a June 1, 2001 letter.

13     A      What is the question?

14     Q      You previously stated that Synagro obtained

15  this figure -- I'm sorry.  You previously testified

16  that this figure had arose from GMP was involved in

17  coming up with this figure in helping Synagro come up

18  with this figure; is that correct?

19     A      Correct.

20     Q      And then you mentioned -- I asked you what

21  was that based upon and you said a proposal that you

22  submitted to Steve Huff.  So is this exhibit proposal

23  the one you're referring to?

24     A      Yes.  Well, I would like to clarify is that

25  if you look at the exhibit, there are three -- four

181

1    columns.  The first column would have been the number

2    that Synagro had given to the city.

3        Q    The $2,548,000 figure?

4        A    Right, in their price proposal December,

5    2001.  And then subsequent to that we would have

6    given price proposals to CBI and Andritz what it

7    would cost to relocate the facility and changes in

8    scope.

9        Q    So this 2,548,000 figure, did GMP have any

10   involvement in assisting Synagro come up with this

11   figure?

12       A    I guess that's what I'm -- the 2,548.

13              MR. SUTTON:  2 million.

14              THE WITNESS:  Sorry, the $2,548,000

15   figure was the price proposal that Synagro gave in

16   their price proposal.

17   BY MS. KUO:

18       Q    Okay.  So Synagro --

19       A    Our input for that would have come in June

20   of that year in the proposal that I gave to Steve

21   Huff.

22       Q    So any input to Synagro's design figure

23   would have been through this proposal that you gave

24   to Steve Huff.  Is that what you're testifying?

25       A    Well, I'm not sure that's all the input.

182

1    I'm not sure why they came up with that number.

2         Q     But this is Synagro's figures?

3         A     That is Synagro's figures, and Exhibit 8 is

4    our input -- no, Exhibit No. 7 is our input.

5         Q     Now, with respect to -- and would you mind

6    sharing his exhibit so I can ask questions.  Now with

7    respect to --

8                    MR. SUTTON:  Let's go off the record.

9                    OFF THE RECORD.

10   BY MS. KUO:

11        Q     I'd like to take your attention to the

12   design services on page GMP1763 on the very bottom.

13   When I added these figures, you have -- I'm sorry.  I

14   think the design services starts on -- yes, it starts

15   on GMP1763 has site work and road digestion and then

16   on the next page it goes into sludge drying.

17                When these figures are added up, they only

18   come out to about half a million.  So do you know

19   what the other $2 million comes from the design

20   services?

21        A     I think you're wrong when you come up with

22   half a million.

23        Q     It does.  We could add it up if you'd like,

24   but you have $145,749 for site work.

25        A     I added it up.  It comes out to $603,064.

183

1      Q     But of course that is still $2 million

2   short of this design expenses figure.

3      A     It's -- no, it's 100 -- well, it's about

4   1.8, yeah, there's $1.8 million figure.

5      Q     But from the 2.6 figure it's approximately

6   $2 million short?

7      A     You can't apply that -- you can't apply

8   these numbers to that.

9      Q     To that figure?

10     A     To that figure.

11     Q     Okay.

12     A     You have to apply it to the first column.

13     Q     So with the first column let's take a rough

14  estimate that it's about $1.8 million short.  Do you

15  have any understanding of what the remainder

16  $1.8 million is supposed to cover?

17     A     No.

18     Q     Okay.  Do you know anybody in your office

19  who would have an understanding of what the $1.8

20  million is supposed to cover?

21     A     No, the only person who would know that or

22  any group of people that would know that would be

23  Synagro because they prepared the figure.

24     Q     And with respect to -- I'm sorry.  Scratch

25  that question.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 0 2 2004

at_____o'clock and ___ min. ___M.
WALTER A.Y.H. CHINN, CLERK

RUSH MOORE CRAVEN SUTTON MORRY & BEH
A LIMITED LIABILITY LAW PARTNERSHIP, LLP

RICHARD C. SUTTON, JR.    1010-0
REGINAULD T. HARRIS       7516-0
737 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
Tel. No. (808) 521-0400
e-mail: Rsutton@rmhawaii.com
        Rharris@rmhawaii.com

Attorneys for Defendant
GMP HAWAII, INC.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| SYNAGRO TECHNOLOGIES, INC., | ) | CIVIL NO. CV044-00509 (SPK /LEK) |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT GMP HAWAII, INC.'S |
| vs. | ) | ANSWER TO COMPLAINT FILED |
| | ) | ON AUGUST 18, 2004 AND |
| GMP HAWAII, INC., | ) | COUNTERCLAIM AGAINST |
| | ) | PLAINTIFF SYNAGRO |
| Defendants. | ) | TECHNOLOGIES, INC.; |
| | ) | CERTIFICATE OF SERVICE |

**DEFENDANT GMP HAWAII, INC.'S ANSWER TO COMPLAINT FILED
ON AUGUST 18, 2004 AND COUNTERCLAIM AGAINST
PLAINTIFF SYNAGRO TECHNOLOGIES, INC.**

Defendant GMP HAWAII, INC. (hereinafter "Defendant") by and

through its attorneys Rush Moore Craven Sutton Morry and Beh, LLP., answers



EXHIBIT

3

P. MELNYK

the Complaint filed herein on August 18, 2004 (herein "Complaint") by

SYNAGRO TECHNOLOGIES, INC. (herein "Plaintiff") as follows:

1.      With respect to the allegations in paragraph 1, Defendant

admits that Plaintiff had a contract with the City and County of Honolulu for the

construction of a wastewater treatment bioconversion facility.  Defendant also

admits that Plaintiff entered into a sub-contract with Andritz-Ruthner, Inc. for

engineering and construction services related to the contract to construct the

bioconversion facility. Defendant also admits that it entered into a contract with

Andritz-Ruthner, Inc. for design and engineering services.  Defendant alleges that

the attached Exhibits referenced in paragraph speaks for themselves and denies the

remaining allegations of said paragraph1 with respect to the dates of execution for

these contracts.

2.      Defendant denies the allegations in paragraph 2.

3.      Defendant denies the allegations of paragraph 3.

4.      With respect to the allegations in paragraph 4, Defendant is

without sufficient knowledge as to the allegations and on that basis denies them.

5.      Defendant admits the allegations contained in paragraph 5.

6.      Defendant admits the allegations contained in paragraph  6.

7.      Defendant admits the allegations contained in paragraph  7.

8.    With respect to the allegations in paragraph 8, Defendant alleges that the referenced portion of Exhibit 4 speaks for itself and denies the remaining allegations of said paragraph.

9.    With respect to the allegations in paragraph 9, Defendant alleges that the referenced portion of Exhibit 4 speaks for itself and denies the remaining allegations of said paragraph.

10.    With respect to the allegations in paragraph 10, Defendant alleges that the referenced portion of the Exhibit speaks for itself, and admits the allegations of paragraph 10, except that the quoted language in paragraph 10 is contained in Exhibit 1 and not Exhibit 4 as stated in paragraph 10 of the Complaint.

11.    With respect to the allegations in paragraph 11, Defendant alleges that the referenced portion of the Exhibit speaks for itself, and admits the allegations of paragraph 11, except that the quoted language in paragraph 11 is contained in Exhibit 1 and not Exhibit 4 as stated in paragraph 11 of the Complaint.

12.    With respect to the allegations in paragraph 12, Defendant alleges that there was a contract between Plaintiff and Andritz-Ruthner, Inc., and further alleges that the referenced Exhibit 2 speaks for itself, and denies the

remaining allegations of said paragraph.

13.    With respect to the allegations in paragraph 13, Defendant alleges that the referenced portion of Exhibit 2 speaks for itself and denies the remaining allegations of said paragraph.

14.    With respect to the allegations in paragraph 14, Defendant alleges that the referenced portion of Exhibit 2 speaks for itself and denies the remaining allegations of said paragraph.

15.    With respect to the allegations in paragraph 15, Defendant admits that it executed a contract with Andritz-Ruthner, Inc., and alleges that the contract provisions cited at Exhibit 3 speak for themselves, and denies the remaining allegations of said paragraph.

16.    With respect to the allegations in paragraph 16, alleges that the contract provisions cited at Exhibit 3 speak for themselves and denies the remaining allegations of said paragraph.

17.    With respect to the allegations in paragraph 17, alleges that the contract provisions cited at Exhibit 3 speak for themselves and denies the remaining allegations of said paragraph.

18.    With respect to the allegations in paragraph 18, Defendant admits that it has prepared drawings and plans for the Project, and denies the remaining

allegations of said paragraph.

19. Defendant denies the allegations of paragraph 19.

20. Defendant denies the allegations of paragraph 20.

21. Defendant admits that Mr. Richard Sutton, counsel for Defendant, wrote to Mr. Carmichael of Plaintiff, and denies the remaining allegations of paragraph 21.

22. With respect to the allegations in paragraph 22, Defendant is without sufficient knowledge as to the allegations and on that basis denies them.

23. With respect to the allegations in paragraph 23, Defendant is without sufficient knowledge as to the allegations and on that basis denies them.

24. Defendant denies the allegations of paragraph 24.

25. Defendant admits the allegations of paragraph 25.

26. Defendant admits the allegations of paragraph 26.

27. Defendant denies the allegations in paragraph 27.

28. With respect to the allegations in paragraph 28, Defendant re-alleges and incorporates its responses to paragraphs 1 through 27.

29. With respect to the allegations in paragraph 29, Defendant admits that there exists an actual controversy between Defendant and Plaintiff, and that Plaintiff has a contractual obligation to Defendant. Defendant denies the

remaining allegations of paragraph 29.

     30. Defendant denies the allegations of paragraph 30..

     31. Defendant denies the allegations contained in paragraph 31.

     32. Defendant denies the allegations of paragraph 32.

     33. Defendant denies the allegations contained in paragraph 33.

     34. Defendant denies the allegations contained in paragraph 34.

     35. With respect to the allegations in paragraph 35, Defendant re-alleges and incorporates its responses to paragraphs 1 through 34.

     36. Defendant denies the allegations of paragraph 36.

     37. Defendant admits the allegations contained within paragraph 37.

     38. Defendant alleges that it has not refused to provide plans and drawings under its contract with Andritz-Ruthner, Inc. and denies the remaining allegations contained within paragraph 38.

     39. Defendant re-alleges and incorporates its response to paragraph 38, and denies the allegations contained within paragraph 39.

     40. Defendant re-alleges and incorporates its response to paragraph 38, and denies the allegations contained within paragraph 40.

     41. With respect to the allegations in paragraph 41, Defendant re-alleges and incorporates its responses to paragraphs 1 through 40.

42. Defendant denies the allegations contained within paragraph 42 (misnumbered as paragraph 46 in the Complaint).

43. Defendant denies the allegations contained within paragraph 43 (misnumbered as paragraph 47 in the Complaint).

## SEPARATE AFFIRMATIVE DEFENSES

Defendant states the following affirmative defenses without assuming the burden of proof on such defenses that would otherwise rest on Plaintiff:

### First Affirmative Defense

The Complaint and each purported claim fails to state a claim on which relief may be granted.

### Second Affirmative Defense

The claims for relief of the Complaint are barred by lack of jurisdiction.

### Third Affirmative Defense

The claims for relief of the Complaint are barred by the defense of mistake.

### Fourth Affirmative Defense

The claims for relief of the Complaint are barred by the defense of

consent, knowledge and acquiescence.

## Fifth Affirmative Defense

Defendant intends to rely on the defense that Plaintiff failed to mitigate its damages, if any.

## Sixth Affirmative Defense

The claims for relief of the Complaint are barred by the defense that Plaintiff failed to perform material conditions of its contract with Defendant.

## Seventh Affirmative Defense

The claims for relief of the Complaint are barred by set off, offset, waiver, estoppel, laches and unclean hands.

## Eighth Affirmative Defense

If Plaintiff suffered any of the injuries or damages as alleged in the Complaint, said injuries or damages were caused by or contributed to by the negligence of Plaintiff

## Ninth Affirmative Defense

If Plaintiff suffered any of the injuries or damages as alleged in the Complaint, said injuries or damages were caused by or contributed to by persons other than Defendant.

and equitable.

DATED: Honolulu, Hawai'i, September 2, 2004

_____
RICHARD C. SUTTON, JR.
REGINAULD T. HARRIS
Attorneys for Defendant
GMP HAWAII, INC.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| SYNAGRO TECHNOLOGIES, INC., | ) | CIVIL NO. CV044-00509 (SPK /LEK) |
| | ) | |
| Plaintiff, | ) | |
| | ) | COUNTERCLAIM AGAINST |
| vs. | ) | PLAINTIFF SYNAGRO |
| | ) | TECHNOLOGIES |
| GMP HAWAII, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**COUNTERCLAIM AGAINST PLAINTIFF SYNAGRO TECHNOLOGIES**

Comes now Defendant GMP HAWAII, INC. (hereinafter "Defendant-Counterclaimant") by and through its attorneys Rush Moore Craven Sutton Morry and Beh, LLP., to file a counterclaim against Plaintiff SYNAGRO TECHNOLOGIES (hereinafter "Plaintiff")alleges and avers as follows:

1. Plaintiff Synagro ("Plaintiff") made a presentation to the City & County of Honolulu proposing to design, engineer, construct, and test an In-vessel bioconversion facility at the Sand Island Waste Water Treatment Plant in the City and County of Honolulu, Hawaii. The bioconversion facility is to separate sludge from the waste water treatment process and convert it into a

marketable fertilizer pellet.

    2.    Based upon said presentation to the City and County of Honolulu, Plaintiff was awarded a contract with the City and County of Honolulu, Hawaii to design, engineer, construct, and test an In-vessel Bioconversion facility at the Sand Island Waste Water Treatment Plant in the City and County of Honolulu, Hawaii on or about May 7, 2002.

    3.    The presentation that Plaintiff made to the City and County of Honolulu featured examples of work done by Defendant in previous engineering projects for the City & County of Honolulu involving waste water treatment plants.

    4.    The presentation also listed Defendant as a member of the project delivery team for the bioconversion facility. The presentation described the members of the project delivery team as the persons and entities that would perform engineering work as well as the construction management for the overall bioconversion facility at the Sand Island Waste Water Treatment plant.

### (Count I.  Breach of Implied Contract)

    5.    It was the representation of Plaintiff that Defendant would be involved in providing engineering design and construction management for the overall project.

6.     Plaintiff was awarded the contract from the City and County of Honolulu based partly on the past work performed by Defendant, and the understanding that Defendant would be providing engineering design and construction management for the Sand Island bioconversion facility project.

7.     Plaintiff utilized the reputation and goodwill of Defendant in order to obtain the Sand Island bioconversion facility contract with the City and County of Honolulu.

8.  Defendant relied upon these representations that Plaintiff made to Defendant and to the City and County of Honolulu that Defendant was to perform a substantial portion of the of the engineering design services and construction management for the bioconversion facility at the Sand Island Waste Water Treatment Plant.

9.     Said representations created an implied contract between Defendant and Plaintiff

10     However, Plaintiff has failed to provide work to Defendant, and has sought to use other contractors to perform the work it had promised Defendant.

11.     Plaintiff's actions represent a breach of its implied contract with Defendant.

12.    The total of the design expenses is approximately

$2,683,422.00 for the said contract.

13.    The total of the construction management is approximately

$846,000.00 for the said contract.

14.    As a result, Defendant is entitled to damages including profits

from the contract plus any costs incurred.

**(Count II.  Punitive Damages)**

15.    Defendant realleges and incorporates by reference the

allegations set forth in paragraphs 1 through 14, above.

16.    Plaintiff's blatant and unjustified refusal provide engineering

work, construction management work, and/or compensation to Defendant for work

on the Sand Island Bioconversion Facility Project constitutes a willful and

deliberate repudiation of its implied contract with Defendant.

17.    Plaintiff clearly has knowledge of the representations that it

made to the City and County of Honolulu and Defendant regarding the amount of

work that Defendant would perform on the Project, and knowledge of Defendant's

justified reliance upon those representations.

18.    Plaintiff's refusal to honor its implied contract with Defendant

is wanton, reckless, willful, malicious, and oppressive.

19.    As a consequence of Plaintiff's actions, Defendant is entitled to

punitive damages commensurate with the evidence adduced at trial.

WHEREFORE, Defendant GMP Hawaii, Inc. prays as follows:

A.    For general damages in amounts to be shown at trial;

B.    For special damages in amounts to be shown at trial;

C.    Punitive Damages;

D.    For attorneys' fees, costs, prejudgment and post-

judgment interest and for such other and further relief, both legal and equitable, as

the Court deems just and property under the circumstances.

DATED: Honolulu, Hawai'i, September _2_, 2004

RICHARD C. SUTTON, JR.
REGINAULD T. HARRIS

Attorneys for Defendant
GMP Hawaii, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., | ) CIVIL NO. CV044-00509 (SPK /LEK) |
| | ) |
| Plaintiff, | ) |
| | ) CERTIFICATE OF SERVICE |
| vs. | ) (Defendant GMP Hawaii, Inc.'s |
| | ) Answer to Complaint Filed on August |
| GMP HAWAII, INC., | ) 18, 2004; Counterclaim Against |
| | ) Plaintiff Synagro Technologies) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the foregoing will be duly

served this date by hand delivery addressed to the following:

PAUL ALSTON, ESQ,
MEI-FEI KUO, ESQ.
Alston Hunt Floyd and Ing
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawaii 96813

Attorneys for Plaintiff SYNAGRO TECHNOLOGIES

S:\Wpdata\R.Sutton\GMP\Sand Island\Synagro\Pleading (Synagro)\Answer.wpd

DATED: Honolulu, Hawai'i, September _2_, 2004

_Reginauld T. Harris_
RICHARD C. SUTTON, JR.
REGINAULD T. HARRIS

Attorneys for Defendant
GMP Hawaii, Inc.