**SAKAI IWANAGA SUTTON**
A Law Group, AAL, LLLC
RICHARD C. SUTTON, JR.   1010-0
Email: dsutton@lava.net
City Financial Tower
201 Merchant Street, Suite 2307
Honolulu, Hawaii 96813
Telephone:  (808) 792-3888
Facsimile:   (808) 521-5262

**CASE LOMBARDI & PETTIT**
A Law Corporation
MICHAEL R. MARSH          1327-0
Email: mmarsh@caselombardi.com
TED N. PETTIT                       4287-0
Email: tpettit@caselombardi.com
JOHN D. ZALEWSKI            4718-0
Email: jzalewski@caselombardi.com
MALIA S. LEE                         8159-0
Email: mlee@caselombardi.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone   (808) 547-5400
Facsimile:   (808) 523-1888

Co-Counsel for Defendant
**GMP HAWAI'I, INC.**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAI'I**

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. | CIVIL NO. CV04-00509 SPK LEK <br><br> **DEFENDANT'S MOTION TO MODIFY REPORT OF SPECIAL** <br><br> [caption continued on next page] |

4

| | |
|---|---|
| GMP HAWAI'I, INC.,<br><br>                Defendant. | MASTER ON PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES<br><br>Non-Hearing Motion |

**DEFENDANT'S MOTION TO MODIFY REPORT OF SPECIAL MASTER ON PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES**

Defendant GMP Hawaii, Inc. ("GMP") hereby submits its Motion to Modify Report of Special Master on Plaintiff's Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses.

This Motion is brought pursuant to Rule 53 of the Federal Rules of Civil Procedure, Local Rule 53.2 of the Rules of the United States District Court for the District of Hawaii, Hawaii Revised Statutes §§ 607-14 and 607-9, and is supported by the declaration of counsel and Exhibits "1" - "5" attached hereto, and the records and files herein.

        Dated:        Honolulu, Hawaii     FEB 0 2 2007      .

                                                         /s/ Michael M. Marsh
                                                     MICHAEL M. MARSH
                                                     TED N. PETTIT
                                                       JOHN D. ZALEWSKI
                                                     MALIA S. LEE
                                                     Co-Counsel for Defendant
                                                   **GMP HAWAI'I, INC.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., | CIVIL NO. CV04-00509 SPK LEK |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF MOTION** |
| vs. | |
| GMP HAWAI'I, INC., | |
| Defendant. | **Non-Hearing Motion** |

**MEMORANDUM IN SUPPORT OF MOTION**

I.  **INTRODUCTION**

Defendant GMP HAWAI'I, INC. ("GMP"), by and through its co-counsel, CASE LOMBARDI & PETTIT, hereby submits its Motion to Modify the Report of Special Master on Plaintiff's Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses ("Report"), filed herein on January 23, 2007. The Report's findings and recommendations are with respect to Plaintiff Synagro Technologies, Inc.'s ("Synagro's") Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses ("Amended Motion"), filed herein on May 26, 2006, and GMP's Objections to Amended Bill of Costs, filed herein on June 6, 2006.

1

28130/2/646816.1

The Court reviews the Special Master's legal conclusions de novo and reviews findings of fact for clear error. ***Doe ex rel. Doe v. Keala***, 361 F. Supp. 2d 1171, 1191 (D. Haw. 2005); FED. R. CIV. P. ("FRCP") Rule 53(g).

The Report should be adopted in part and modified in part. GMP objects to the Special Master's recommendation to award attorneys' fees in so far as it exceeds the 25% ceiling on damages sought, which ceiling is imposed by HAW. REV. STAT. ("HRS") § 607-14. Thus, this Court should reject the Special Master's recommendation to award $53,214.82 and modify the award to not exceed **$23,767.50.**

The following findings and recommendations of the Special Master should remain intact and be adopted:

1)  Synagro is not entitled to fees for its Complaint under HRS § 607-14 because its claims in the Complaint are not in the nature of assumpsit;

2)  The hourly rates submitted for Mr. Alston, Ms. Kakazu, and Ms. Kanada were unreasonable and should be adjusted to $300, $85, and $80 per hour, respectively;

3)  All of the work by Jya-Ming Bunch and Sampson Lee was clerical in nature and should be subsumed in the law firm's overhead and thus excluded in the fees;

4)  All of the time that counsel spent on work in the Andritz case is not compensable because counsel is not entitled to fees for work performed in connection with another case;

5)  Synagro should not recover for attorneys' fees and costs for May 2006 because they were prompted by counsel's failure to perform adequate

2

    research before filing and because Synagro did not submit supporting documentation;

6) A substantial portion of counsel's time entries were in block billing format and should be reduced by five percent;

7) Ms. Kuo's time was excessive and should be reduced by 50 hours; and

8) Counsel's heavily redacted time entries hampered review and should be reduced by fifteen percent to account for inadequately described entries.

The Special Master properly made the foregoing reductions in the award, however, the award is still subject to the 25% cap on attorneys' fees pursuant to HRS § 607-14. This Memorandum is submitted pursuant to FRCP Rule 53(g), LR 53.2, HRS §§ 607-14 and 607-9, and is supported by the declaration of counsel and Exhibits "1" - "5" attached hereto, and the records and files herein.

## II. BACKGROUND

### A. Relevant Factual Background

This action essentially arises from disagreements over pieces of a larger pie, i.e., the City and County of Honolulu ("City") contract ("Project") for the design, engineering, construction, testing, and operation and maintenance of an in-vessel, wastewater treatment, bioconversion facility at Sand Island (the "Facility"). GMP had an oral agreement directly with Synagro to perform engineering and construction management "pieces" of Synagro's overall contract with the City.

Instead of contracting directly with GMP as agreed, Synagro subcontracted with, amongst others, Andritz-Ruthner, Inc. ("ARI") to design and build the dryer

3

portion of the Facility and with CBI Walker ("CBI") to design and build the biosolids digester portion of the Facility. Both ARI and CBI then sub-subcontracted with GMP to perform portions of the work from their respective subcontracts with Synagro. However, the CBI subcontract did not include all of the design work that Synagro previously agreed GMP would receive for design of the biosolids digester portion of the Facility and GMP did not receive a contract to perform construction management services for construction of the Facility.

B.  **Relevant Procedural Background**

The Complaint was filed herein on August 18, 2004 by Synagro. In Count I, Synagro sought a declaratory judgment that it had "no contractual obligations to GMP." *See* Complaint at ¶ 34. In Count II, Synagro alleged tortious interference by GMP with Synagro's contract with the City. Finally, Synagro sought punitive damages for GMP's alleged breach of its contract with ARI.

Separately, ARI had filed a suit against GMP in the U.S. District Court for the District of Hawaii five days earlier, on August 13, 2004, under civil case number 04-00497, relating to the scope of GMP's work on the Project and GMP's ability to comply with certain deadlines associated therewith. *See* Declaration of Wagdy A. Guirguis to Defendant GMP Hawaii, Inc.'s Memorandum in Opposition to Synagro Technologies, Inc.'s Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses at ¶ 17, attached hereto as Exhibit "1" and made a part

4

hereof. Terms of settlement were placed on the record in that case on August 27, 2004,[1] after the matter was resolved between the parties therein. Exhibit "1" at ¶ 17. Due to continuing obligations between the parties, the stipulated dismissal was not officially filed in that case until August 12, 2005. Exhibit "1" at ¶ 17. The ARI complaint related solely to duties running between GMP and ARI and Synagro was not a party to that action. Exhibit "1" at ¶ 17.

On September 2, 2004, GMP filed its Answer and Counterclaim herein. GMP claimed, in Count I, breach of implied contract, and sought punitive damages in Count II.[2] Having been sued by Synagro, GMP was compelled to either assert claims that, by their nature, were compulsory, or abandon them through inaction.

On January 3, 2005, Synagro filed a Motion for Summary Judgment claiming the statute of frauds barred the implied contract claim asserted by GMP. The Motion was continued by the Court to allow further discovery to be conducted, amongst other reasons. On September 14, 2005, Synagro filed a Renewed Motion for Summary Judgment. On November 25, 2005, GMP filed its Memorandum in Opposition to Synagro's Renewed Motion for Summary Judgment. On December 13, 2005, GMP filed a Motion for Leave to File an

---

[1] Just nine days after suit in the instant matter was instituted by Synagro on August 18, 2004.

[2] As such, *four* (4) total claims were made in this case: (1) by Synagro for declaratory judgment, (1) by Synagro for tortious interference and punitive damages, (1) by GMP for breach of implied contract, and (1) by GMP for punitive damages.

5

Amended Counterclaim. After briefing and hearing on both motions, the Court entered an Order Granting Synagro's Renewed Motion for Summary Judgment and Denying GMP's Motion for Leave to File Amended Counterclaim on January 11, 2006.[3]

The parties thereafter stipulated to dismiss all remaining claims, vacate the trial date and trial-related deadlines, and to have the Court determine the sole remaining issue of attorneys' fees and costs. *See* Stipulation and Order to (1) Vacate Trial Date, Trial-Related Deadlines, (2) Set Briefing on Plaintiff's Motion for Attorneys' Fees and Costs, and (3) Dismiss Claims, filed herein on March 30, 2006 ("Stipulation to Dismiss").

On April 21, 2006, Synagro filed its Motion for Attorneys' Fees, which included a substantively different set of bills than that which Synagro had initially submitted to GMP for review. After extensive analysis of that set of billings for over one months' time and in anticipation of its deadline to file an opposing memorandum, Synagro filed its Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses ("Amended Motion") on May 26, 2006.

The Amended Motion for Attorneys' Fees contained a third version of billings, again substantively different from the first two versions, and containing additional entries, all of which needed to be analyzed in detail, for the third time,

---

[3] This was a FRCP Rule 56 Motion for Summary Judgment, granting summary judgment only as to GMP's Counterclaim.

6

by GMP. GMP filed its Memorandum in Opposition to the Amended Motion for Attorneys' Fees on June 23, 2006. Synagro submitted its Reply in Support of its Amended Motion for Attorneys' Fees on July 7, 2006 ("Reply"), which included inappropriate materials and argument submitted by Synagro and to which GMP never had a chance respond.

Pursuant to a designation by this Court, the Special Master took the Amended Motion for Attorneys' fees under advisement. Thereafter, Synagro attempted again to supplement its Motion for Attorneys' Fees by moving, *ex parte*, to submit a fourth version, which was lengthy and substantially different than the prior three versions. The Special Master denied Plaintiff's *ex parte* Motion to Submit a Supplemental Exhibit in support of Synagro's Amended Motion on October 2, 2006.

On January 23, 2007, the Special Master filed a Report, finding and recommending that the Amended Motion be granted in part and denied in part. The Special Master recommended that, after entry of judgment, this Court award Synagro attorneys' fees in the amount of $53,214.82 and taxable costs in the amount of $242.94, for a total of $53,457.76. The Special Master further recommended that, after entry of judgment, this Court tax costs against GMP in favor of Synagro in the amount of $5,088.96.

7

### III. ARGUMENT

#### A. Synagro Is Only Entitled To 25% Of The Damages Sought By GMP In Its Counterclaim Which Were For Lost Profits From Contracts Totaling $950,700.00, Not $3,529,422.00

The maximum award that Synagro can recover is 25% of the damages GMP sought in Count I of its Counterclaim,[4] which were for lost profits from the alleged implied contracts with Synagro totaling **$950,700.00** – not $3,529,422.00, which incorrect amount was the *total* amount of the Synagro-City Contract. *See* Counterclaim at ¶ 14, attached hereto as Exhibit 2 and made a part hereof. GMP expected $95,070.00, i.e., 10% of $950,700.00, in profits it should have received from the various *portions* of the Synagro-City contract. Thus, this Court should reject the Special Master's award of $53,214.82 and modify the award so that it does not exceed 25% of lost profits from $950,700.00, or **$23,767.50.**

Synagro erroneously contended that the amounts stated in ¶¶ 12-13 of the Counterclaim ($2,683,422.00 as the amount of the design contract and $846,000.00 as the amount of the construction management contract) are the amounts that GMP was seeking to recover on its implied contract claim. GMP never contended that

---

[4] Pursuant to HRS § 607-14, the Court may only tax attorneys' fees, "provided that this amount shall not exceed *twenty-five per cent* of the judgment." (emphasis added).

> Section 607-14 taxes attorneys' fees on the losing party in "all actions in the nature of assumpsit." The amount on which the fees are to be assessed is dependent upon who obtains the judgment … *the amount sued for* if the … counterclaimee wins.

*Rodrigues v. Chan*, 5 Haw. App. 603, 608, 705 P.2d 67, 71 (1985) (emphasis added).

8

28130/2/646816.1

its implied contract with Synagro included all of the design and construction management contracts Synagro had with the City. Rather, GMP claimed that its implied contract with Synagro was for the amounts that it had proposed to Synagro for provision of certain design and construction management work.

The Special Master relied heavily on Synagro's Reply in Support of its Amended Motion for Attorneys' Fees, filed July 7, 2006, in determining the amount of damages that GMP sought as the basis from which to calculate the 25% cap on attorneys' fees. The Special Master calculated the cap to be $88,235.55, or 25% of $352,942.20. The $352,942.20 is 10% of $3,529,422.00, which is the amount of the entire City-Synagro contract, not the lesser amount that GMP should have received from its various smaller portions of the entire contract. *See* pp. 8 and 31 of the Report. The Special Master was necessarily misled by the Reply which cited testimony out-of-context and inappropriately appended these materials and argument. The inclusion of the testimony and argument was not limited to responses "only to arguments raised in the opposition," as is required by LR 7.4. GMP never had the opportunity to respond to these materials or argument, and the fact that the same were taken out of context. As such, the same should not have been considered by the Special Master.

Specifically, page 16 of Synagro's Reply states:

> … according to GMP's Rule 30(b)(6) Representative, the $2,683,422.00 figure for engineering design and the $846,000.000

9

[sic.] figure for construction management in the Counterclaim in reference to the "said contract" pertained to the "implied contract". Exh. "M", Guirguis Depo. at 147. GMP's Rule 30(b)(6) Representative also testified that the figures in the Counterclaim reflected the value of the engineering design and construction management work to be performed by GMP as derived from proposals submitted by GMP to Synagro, Andritz, and CBI. Exh. "N", Melnyk Depo. at 175, 176-180.

* * *

Even if the Court adopts GMP's position that it only sought "profits", GMP's 30(b)(6) Representative explained that the profits sought in the Counterclaim were $2,683,422.00 for engineering design and $846,000.000 [sic.] for construction management. Exh. "M", Guirguis Depo. at 154.

These statements are demonstrably erroneous. The transcripts of the depositions of Guirguis and Melnyk do not reflect that the $2,683,422.00 and $846,000.00 figures were to be GMP's share of profits from the contracts, just that those were the amounts of the Synagro-City contracts for which GMP was to have pieces. The erroneous construction of their statements is in part due to the cited deposition statements having been taken out of context by Synagro in its Reply. Synagro also appended only limited portions of the transcripts of these two depositions which do not reveal the full meaning of that testimony.

A brief review of the depositions, in larger excerpt, reveals that GMP's representatives never stated how much of the Synagro-City contracts were to be given to GMP, nor what GMP's profit therefrom would amount to. *See* Transcript of Deposition of Wagdy A. Guirguis at 145-154 ("Guirguis Depo."), Exhibit "3" to

10

the Melnyk Depo. (referenced in the Guirguis Depo.) at pages 3-4 of the Counterclaim, and GMP document #0186 (referenced in the Guirguis Depo.), true and correct copies of which are collectively attached hereto as Exhibit "3" and made part hereof.  On lines 15-25 of page 148 of the Guirguis Depo., Guirguis states the opposite: that the figure for the Andritz and GMP contract was "*not* $2,683,422." (emphasis added).  Exhibit "3" at 148.  At the very least, the transcript reveals that Guirguis, whose first language is Egyptian Arabic, and Ms. Kuo are talking past each other, without really being clear as to what was actually meant.  *See generally*, Exhibit "3."

Similarly, the Transcript of the Deposition of Peter Melnyk ("Melnyk Depo."), in larger excerpt, reveals that the $2,683,422.00 figure, stated in GMP's Counterclaim, is the "total design expenses for the *project*."  *See* Melnyk Depo. at 176 (emphasis added).  A copy of the Melnyk Depo. at 174-183, and Exhibit "3" thereto at pages 3-4 of the Counterclaim, are collectively attached hereto as Exhibit "4" and made a part hereof.  Melnyk repeatedly stated that this was the figure Synagro submitted to the City (*see* Exhibit "4" at 179, 181, and 183) with the aid of GMP's input.  Nowhere does it say that this "reflected the value of the engineering design and construction management work to be performed by GMP" as Synagro misrepresented in its Reply, quoted above.  The amounts referenced in GMP's Counterclaim were the amounts stated in Synagro's proposal to the City,

11

and have no relation to the amounts of the respective contracts which GMP was to perform as part of the project team. *See* Exhibit "1" at ¶¶ 12-14.

The amounts of the implied contracts GMP sought to enforce by way of the Counterclaim are set forth in a July 26, 2002 email from GMP to Synagro that was attached as Exhibit "R" to Synagro's Renewed and Supplemented Motion for Summary Judgment, filed herein on September 15, 2005, and is attached hereto as Exhibit "5" and made a part hereof. *See also* Exhibit "1" at ¶¶ 6-13. The amounts stated in GMP's email to Synagro, which email addressed the design and construction management services which Synagro had orally agreed GMP would perform but for which GMP had not received contracts (*id.*) total $254,469.00 for engineering services, and $696,231.00 for construction management services. As such, GMP's Counterclaim was for loss of profits from these (implied or alleged) contracts totaling **$950,700.00** (*id.* at ¶ 13).

In addition, GMP never sought nor claimed that it was entitled to award of the full value of the implied contracts themselves. Rather, GMP sought damages, including lost profits, for breach of these implied contracts. Profits from engineering and construction management contracts would be approximately 10% of the total value of said contracts. *See* Exhibit "1" at ¶¶ 14-16. This is the industry standard for governmental contracts of this nature. *Id.* Ten percent of $950,700.00 is **$95,070.00,** which is the amount that GMP could have recovered as

damages pursuant to its Counterclaim for breach of its implied contract with Synagro. *Id.* The Special Master used 10% to calculate lost profits but applied it to the wrong figure, $3,529,422.00, instead of $950,700.00. *See* p. 31 of the Report of Special Master.

Because HRS § 607-14 caps awardable fees at 25% of the amount sued for in a counterclaim in the nature of assumpsit, *see Rodrigues v. Chan*, 5 Haw. App. 603, 608, 705 P.2d 67, 71 (1985), the maximum attorneys' fees that can be awarded to Synagro for prevailing on Count I of the Counterclaim is **$23,767.50**. As such, this Court should reject the Special Master's award of $53,214.82 and modify the award so that it does not exceed 25% of lost profits from $950,700.00 or **$23,767.50.** In all other respects, the Report should be adopted.

## IV.   CONCLUSION

For the foregoing reasons, Defendant GMP respectfully requests that this Court modify the Report of the Special Master on Synagro's Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses. The Court should adopt the recommended reductions in attorneys' fees and not award any which exceed **$23,767.50**, which constitutes the 25% cap on fees pursuant to HRS § 607-14.

DATED:  Honolulu, Hawaii,  FEB 0 2 2007            .

_____
MICHAEL M. MARSH
TED N. PETTIT
JOHN D. ZALEWSKI
MALIA S. LEE
Co-Counsel for Defendant
**GMP HAWAIʻI, INC.**

14