Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON               1126-0
MEI-FEI KUO               7377-0
SHELLIE K. PARK-HOAPILI  7885-0
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai'i  96813
Telephone:  (808) 524-1800
E-Mail: palston@ahfi.com

Attorneys for Plaintiff
  SYNAGRO TECHNOLOGIES, INC.

                IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAI'I

SYNAGRO TECHNOLOGIES, INC.,        )  CIVIL NO. CV04-00509 SPK LEK
                                   )
          Plaintiff,               )  **PLAINTIFF SYNAGRO**
                                   )  **TECHNOLOGIES, INC.'S**
     vs.                           )  **MEMORANDUM IN OPPOSITION TO**
                                   )  **DEFENDANT GMP HAWAI'I, INC.'S**
GMP HAWAI'I, INC.,                 )  **MOTION TO MODIFY REPORT OF**
                                   )  **SPECIAL MASTER ON PLAINTIFF'S**
          Defendant.               )  **AMENDED MOTION FOR ATTORNEYS'**
                                   )  **FEES AND RELATED NON-TAXABLE**
                                   )  **EXPENSES, FILED FEBRUARY 2,**
                                   )  **2007; DECLARATION OF MEI-FEI**
                                   )  **KUO; EXHIBITS "1"-"9";**
                                   )  **CERTIFICATE OF SERVICE**
                                   )
                                   )
                                   )  **NON-HEARING MOTION**
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )
_____)

637552 v 2 / 7392-3

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . 4

     A.   Factual Background on Case . . . . . . . . . . . . 4

     B.   Procedural Background . . . . . . . . . . . . . . 5

          1.   Synagro's Complaint . . . . . . . . . . . . . 5

          2.   GMP's Counterclaim . . . . . . . . . . . . . . 5

          3.   Synagro's Motions for Summary Judgment  . . . . 7

     C.   Proceedings on the Motion for Attorneys' Fees and
          Costs . . . . . . . . . . . . . . . . . . . . . . 8

          1.   Synagro's Motion for Fees and Bill of Costs  . . 8

          2.   GMP's Objections to the Amended Bill of Costs and
               Opposition to the Amended Motion for Fees  . . 10

          3.   Synagro's Reply in Support of its Amended Motion
               for Fees . . . . . . . . . . . . . . . . . . . 11

          4.   GMP's Representations in Prior Pleadings  . . 11

          5.   Relevant Deposition Testimony of GMP's Rule
               30(b)(6) Representatives . . . . . . . . . . . 13

               a.   Deposition of Wagdy Guirguis . . . . . . 13

               b.   Deposition of Peter Melnyk . . . . . . . 17

     D.   Report of Special Master on the Amended Motion for Fees
          and Amended Bill of Costs . . . . . . . . . . . . 19

III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . 21

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 21

     A.   The Recommended Award of Attorney's Fees in the Special
          Report Does Not Exceed 25% of the Amount Prayed for in
          the Counterclaim . . . . . . . . . . . . . . . . . 21

          1.   The Amount Sue for by GMP in the Counterclaim on
               the Implied Contract Claim was $3,529,422.00 . 23

2.    GMP Did Not Seek Merely 10% of the Profits in its
Counterclaim . . . . . . . . . . . . . . . . 26

B.    Synagro is Entitled to Recover its Attorney's Fees
Incurred in Opposing GMP's Meritless Objection to the
Special Report . . . . . . . . . . . . . . . 28

V.    CONCLUSION . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Doe ex rel. Doe v. Keala*,
    361 F.Supp.2d 1171 (D. Haw. 2005) . . . . . . . . . . . 21

*Environmental Defense Fund, Inc. v. Environmental*
    *Protection Agency*,
    672 F.2d 42 (D.D.C. 1982) . . . . . . . . . . . . . . . 28

*Rosenfeld v. S. Pac. Co.*,
    519 F.2d 527 (9th Cir. 1975) . . . . . . . . . . . . . 28


**STATE CASES**

*Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai'i*,
    92 Haw. 432, 922 P.2d 127 . . . . . . . . . . . . . . . 20

*Rodrigues v. Chan*,
    5 Haw. App. 603, 705 P.2d 67 (1985) . . . . . . . . . . 23

*Smothers v. Renander*,
    2 Haw. App. 400, 633 P.2d 556 (1981) . . . . . . . . . 23


**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 53(g)(1) . . . . . . . . . . . . . . . . . . . . . . 21

Rule 53(g)(3) . . . . . . . . . . . . . . . . . . . . . . 21

Rule 53(g)(4) . . . . . . . . . . . . . . . . . . . . . . 21


**HAWAI`I RULES OF CIVIL PROCEDURE**

Rule 30(b)(6) . . . . . . . . . . . . . . 3, 11, 13, 17, 22, 27


**LOCAL RULES**

Rule 53.2 . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 54.2 . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 74.1 . . . . . . . . . . . . . . . . . . . . . . . . . 1


**HAWAI`I REVISED STATUTES**

§ 607-14 . . . . . . . . . . . . . . . . . . . . 1-3, 19, 20, 22

**PLAINTIFF SYNAGRO TECHNOLOGIES, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT GMP HAWAIʻI, INC.'S MOTION TO MODIFY REPORT OF SPECIAL MASTER ON PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES, FILED FEBRUARY 2, 2007**

## I.    INTRODUCTION

Plaintiff SYNAGRO TECHNOLOGIES, INC. ("Synagro"), by and through its attorneys, Alston Hunt Floyd & Ing, hereby opposes the Motion to Modify Report of Special Master on Plaintiffs' Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses, filed by Defendant GMP Hawaiʻi, Inc. ("GMP") on February 2, 2007 ("Objection")[1].

Notably, GMP does not dispute the Court's primary rulings in the Special Report, which were that (1) Synagro will be the prevailing party on the Counterclaim once the Court enters a final judgment in accordance with its Order Granting Synagro's Renewed and Supplemented Motion for Summary Judgment ("Order on Renewed Motion"); (2) the implied contract claim in the Counterclaim is in the nature of assumpsit, and; as such, (3) Synagro is entitled to an award of attorneys' fees incurred in defending against the Counterclaim pursuant to HRS § 607-14.  GMP also does not contest the Court's award to Synagro of its requested costs in the amount of $242.94 for non-taxable expenses and $5,088.96 for taxable costs.

---

[1]     Although GMP refers to its pleading as a "Motion to Modify", it is an objection to the Special Report and it should be treated as an appeal of the Court's ruling on Synagro's Motion for Fees to promptly resolve this action. *See* Local Rules 53.2 and 74.1 of the Rules of the United States District Court for the District of Hawaiʻi.

Rather, GMP raises only one objection to the findings and recommendations in the Special Report, which is that the recommended award of attorneys' fees in the amount of $53,214.82 exceeds the "25% cap on attorneys' fees pursuant to HRS § 607-14." This argument is not only completely groundless, but it is part of a continuing pattern of vexatious and harassing conduct by GMP to prolong and delay resolving the action, thereby, resulting in Synagro incurring a substantial amount of attorneys' fees and costs defending against the meritless Counterclaim and now this Objection.[2]

GMP is merely reviving arguments already raised in its Opposition to the Amended Motion for Fees and properly rejected by the Court. GMP misrepresents that it was only seeking profits

---

[2]    Throughout litigation, Synagro has attempted on numerous occasions to settle this dispute with GMP both before and after conducting extensive discovery, proceeding with the summary judgment motions, and discussing the dispute on attorneys' fees. Declaration of Mei-Fei Kuo ("Kuo Dec.") at ¶ 4. However, GMP, without explanation, has consistently refused to settle the action and, instead, insisted on pursuing its meritless Counterclaim and prolonging this case unnecessarily, thereby causing Synagro to incur substantial attorneys' fees and costs in defending against the Counterclaim and pursuing its overlapping claim for declaratory judgment in the Complaint. *Id.* at ¶¶ 4-5. Moreover, GMP has compounded these proceedings by filing frivolous motions, including (1) a Motion to Continue Synagro's initial Motion for Summary Judgment in order to conduct discovery on its Counterclaim (after which GMP only issued a request for production of documents and it conducted no other discovery); and (2) an untimely Motion to Amend its Counterclaim filed on the eve of the hearing on Synagro's Renewed Summary Judgment Motion. *Id.* at ¶¶ 6-7. GMP's vexatious and harassing conduct has been detrimental to Synagro, which expended extensive efforts and substantial attorney's fees to respond to these tactics.

-or $95,070 in damages - in the Counterclaim on its implied contract claim.  Obviously, GMP is taking this feeble and limited position to minimize its liability for attorneys' fees, which the Court has rightfully awarded to Synagro in the Special Report. Such wavering on one's legal position for the sake of convenience should not be tolerated by the Court and GMP's Objection should be denied in its entirety.

Under HRS § 607-14, as the prevailing party on the Counterclaim, the statutory limit of attorneys' fees recoverable by Synagro is dependent upon the amount sued for by GMP in the Counterclaim.  The allegations in the Counterclaim expressly state that GMP was requesting damages on its implied contract claim in the total amount of $3,529,422.00, which included $2,683,422.00 for engineering design and $846,000.00 for construction management. The value of the alleged implied contract is further supported by GMP's representations in its prior pleadings and the deposition testimony of its Rule 30(b)(6) Representatives.

Furthermore, GMP is wrong that Synagro misrepresented the relevant deposition testimony.  To the contrary, the depositions of GMP's 30(b)(6) representatives reflect that GMP was seeking damages in the amount of $3,529,422.00 in the Counterclaim.  GMP's references to isolated sentences in the depositions should be ignored because these sentences are taken out of context and fail to demonstrate that the value of the

alleged implied contract was only $950,700 <u>or</u> that GMP was only seeking 10% of the profits and nothing more in its Counterclaim.

Therefore, Synagro requests the Court to adopt the findings and recommendations in the Special Report and further award Synagro an additional $3,701.00[3] in attorneys' fees, which are recoverable (*see infra* 19 and 28-29) and were necessarily incurred in responding to GMP's meritless and disingenuous arguments in the Objection.

## II.  STATEMENT OF FACTS

### A.    Factual Background on Case

This action concerns a $33 million wastewater treatment bioconversion facility ("the Project") that Synagro contracted to design, construct, and operate for the City and County of Honolulu ("the City").  In November of 2001, Synagro entered into a contract with Andritz-Ruthner, Inc. ("ARI") for over $20 million worth of engineering and construction services related to the Project.  *See* Exh. "D" to Renewed Motion for Summary Judgment.  In March of 2002, Synagro entered into a contract with Chicago Bridge & Iron Services, Inc. ("CBI") for over $10 million worth of work related to the "design, procurement, construction

---

[3]  Synagro has incurred $3,778.00 to date in attorneys' fees for work related to opposing GMP's instant motion.  The attorneys' fees were adjusted according to the modified hourly rates in the Special Report (*see* Special Report at 20-22 and 30) for an adjusted total of $3,701.00, which is the amount of the additional attorneys' fees being requested by Synagro in its Opposition to GMP's Motion to Modify/Objection.  *See* Kuo Dec. at 17 (referring to Exh. "9", attached).

permitting, construction, start-up and performance testing of the biosolids digester portion of the [P]roject" ("Synagro-CBI Contract"). *See* Exh. "E" to Renewed Motion for Summary Judgment. GMP, in turn, entered into separate sub-contracts with both ARI and CBI to perform design engineering work on the Project. *See* Exhs. "F" and "G" to Renenwed Motion for Summary Judgment.

Contrary to GMP's allegations, Synagro did not have a contract, expressed or implied, with GMP to provide engineering design and/or construction management work on the Project. *See* Exh. "B" to Amended Motion for Fees, Supplemental Declaration of James P. Carmichael in Support of Synagro's Reply for the Renewed Motion for Summary Judgment, dated December 1, 2005, at ¶¶ 4 and 12.

**B.    Procedural Background**

**1.    Synagro's Complaint**

On August 18, 2004, Synagro filed a Complaint against GMP due to its refusal to deliver engineering plans and drawings required under its sub-contract with ARI unless it received an unspecified amount of money and/or work from Synagro. *See* Complaint at ¶¶ 32-47. In the Complaint, Synagro pleaded a claim for declaratory judgment and tortious interference with economic advantage.

**2.    GMP's Counterclaim**

On September 2, 2004, GMP filed a Counterclaim against Synagro alleging it had an implied contract with Synagro for

637552 v 2 / 7392-3                    5

substantial work related to the Project.  Exh. "1", attached,
Counterclaim at ¶ 8.  There, GMP sought contract damages of
$2,683,422 for design expenses and $846,000 for construction
management work on the "overall" Project:

> 5.    It was the representation of [Synagro]
>        that [GMP] would be involved in
>        **providing engineering design and
>        construction management for the overall
>        project.**
>
> 6.    [Synagro] was awarded the contract from
>        the City and County of Honolulu based
>        partly on the past work performed by
>        [GMP], and **the understanding that [GMP]
>        would be providing engineering design
>        and construction management for the
>        [Project].**
>
>                    . . .
>
> 10.   However, [Synagro] has failed to provide
>        work to [GMP], and has **sought to use
>        other contractors to perform the work it
>        had promised [GMP].**
>
> 11.   [Synagro's] actions represent a breach
>        of its implied contract with [GMP].
>
> 12.   **The total of the design expense is
>        approximately $2,683,422.00 for the said
>        contract.**
>
> 13.   **The total of the construction management
>        is approximately $846,000.00 for the
>        said contract.**
>
> 14.   As a result, [GMP] **is entitled to damages
>        including profits from the contract plus any costs
>        incurred.**

*Id.* at ¶¶ 5-14 (emphasis added).  GMP further sought punitive
damages in the Counterclaim and, in its prayer for relief, GMP
requested an award of general damages, special damages, punitive

damages, attorneys' fees and costs, prejudgment and post-judgment interest, and other equitable relief.  *Id.* at 15-19 and Prayer for Relief.

### 3.    Synagro's Motions for Summary Judgment

On January 3, 2005, Synagro filed a Motion for Summary Judgment ("Motion for Summary Judgment") on the Counterclaim. There, Synagro argued that GMP's claims for breach of implied contract and punitive damages were meritless and barred by the Statute of Frauds.  On March 1, 2005, GMP asked the Court to postpone the hearing on the Motion for Summary Judgment claiming that it needed additional time to conduct discovery in support of its claims.  The Court granted GMP's motion and denied Synagro's Motion for Summary Judgment "without prejudice to re-filing after an appropriate period for discovery."  *See* Exh. "D" to Amended Motion for Fees, Order, dated March 14, 2005, at 2.

On September 14, 2005, Synagro filed a Renewed and Supplemented Summary Judgment Motion (the "Renewed Motion").  GMP opposed this Renewed Motion arguing, for the first time, claims for breach of an oral joint venture agreement, implied-in-law agreement under the doctrine of promissory estoppel, and breach of the implied covenant of good faith and fair dealing.

On January 11, 2006, the Court granted Synagro's Renewed Motion.  *See* Exh. "E" to Amended Motion for Fees, Order Granting Plaintiff's Renewed Motion and Denying Defendant's Motion to Amend the Counterclaim, filed January 11, 2006

(hereinafter "Summary Judgment Order").  The Summary Judgment
Order effectively disposed of the Counterclaim in its entirety.
*Id.* at 4-8 and 10.

**C.  Proceedings on the Motion for Attorneys' Fees and Costs**

After the Court issued the Summary Judgment Order, the
Parties stipulated to vacate the trial date and trial related
deadlines, and to have the Court determine the disputed issue of
attorneys' fees and costs.  Exh. "2", attached, Stipulation and
Order to (1) Vacate Trial Date, Trial-Related Deadlines, (2) Set
Briefing on Plaintiffs' Motion for Attorneys' Fees and Costs, and
(3) Dismiss Claims, dated March 30, 2006 ("Stipulation"), at 1-2.
Moreover, the Parties agreed to "dismiss the remaining claims in
this action with prejudice" after the Court "rendered its final
decision and order" on Plaintiffs' motion for attorneys' fees and
costs.  *Id.* at 2.

**1.  Synagro's Motion for Fees and Bill of Costs**

On April 21, 2006, Synagro filed its Motion for
Attorneys' Fees and Related Non-Taxable Expenses ("Motion for
Fees").[4]  Synagro also concurrently filed a Bill of Costs

---

[4]  GMP is wrong that the "set of billings" attached to the
Motion for Fees was "substantively different" than the invoices
previously provided to GMP for settlement discussions.  Objection
at 6.  As required by LR 54.2, Synagro supported its Motion for
Fees with an "Itemization of Work Performed", which organized the
billing entries according to litigation phases, however, these
entries contained the same information and descriptions as the
entries on the invoices provided to GMP.  Kuo Dec. at ¶ 8.

requesting the clerk of this Court to tax allowable cost pursuant
to LR 54.2.

On May 26, 2006, Synagro filed an Amended Motion for
Fees and an Amended Bill of Costs requesting an award of
attorneys' fees in the amount of $93,214.87, non-taxable expenses
in the amount of $242.94, and taxable costs in the amount of
$5,088.90.  In the Amended Motion for Fees, Synagro modified its
request to include (1) the fees and expenses related to Synagro's
claim for declaratory judgment in the Complaint, which overlapped
with GMP's assumpsit claim in the Counterclaim, and (2) the fees
incurred in the drafting and filing of the Motion for Fees and
the Bill of Costs.  The Amended Motion for Fees included a
revised "Itemization of Work Performed", which apportioned the
fees and expenses related to the assumpsit claims from the work
related to the non-assumpsit claims and identified courtesy
discounts to the client, which were excluded from the calculation
of fees.  *See* Exh. "F" to Amended Motion for Fees.

On September 14, 2006, after being informed by the
Court that it intended to substantially deduct Synagro's
requested fees due to redactions made to protect attorney-client
privilege and attorney work product information, Synagro filed an
*ex parte* motion to submit an unredacted version of the
"Itemization of Work Performed".  However, this motion was denied
by the Court in an Order filed on October 2, 2006.

   2.   **GMP's Objections to the Amended Bill of Costs and
        Opposition to the Amended Motion for Fees**

On June 6, 2006, GMP filed its Objections to Synagro's
Amended Bill of Costs.  On June 23, 2006, GMP filed an Opposition
to the Amended Motion for Fees ("Opposition").

In its Opposition, GMP specifically argued *inter alia*
that "the maximum award that Synagro could recover is 25% of the
damages GMP sought in Court I of its Counterclaim".[5]  Opposition
at 27-28.  Furthermore, GMP disingenuously stated that (1)it
"never contended that its implied contract with Synagro included
all the design and construction management contracts Synagro has
with the City" and (2) "it never sought nor claimed that it was
entitled to award of the full value of the implied contracts".
*Id.* at 28-29.  Instead, GMP argued the amount sued for in the
Counterclaim "was the lost profits from the alleged implied
contract GMP had with Synagro", which would have been only
$95,070 or 10% of $950,700--the purported value of the implied
contract totaled from $254,469 for engineering services and
$696,231 for construction management. *Id.* at 29.

---

[5]   In its Objection, GMP misrepresents that it did not have
an opportunity to respond to Synagro's arguments on the amount of
damages sought in the Counterclaim and that Synagro's arguments
on this issue exceeded the arguments raised by GMP in its
Opposition.  Objection at 9.  To the contrary, GMP specifically
raised this issue in its Opposition and, therefore, the evidence
and arguments raised by Synagro in its Reply was to directly
refute GMP's argument that it was only seeking $95,070 or 10% of
$950,700 as damages in its Counterclaim.  *See supra* 5-7 and
Opposition at 27-30.

637552 v 2 / 7392-3                    10

### 3.   Synagro's Reply in Support of its Amended Motion for Fees

On July 7, 2006, Synagro filed its Reply in Support of the Amended Motion for Fees ("Reply").  There, Synagro argued that the requested attorneys' fees did not exceed 25% of the amount prayed for by GMP in its Counterclaim.  *See* Reply at 15-17.  In the Reply, Synagro supplemented its facts to demonstrate that "the representations and arguments of GMP in its prior pleadings and the deposition testimonies of GMP's Rule 30(b)(6) Representatives confirm that GMP was seeking either enforcement of the purported implied contract and/or monetary damages in the amount of at least $950,700.00 and as much as $3,529,422.00 as is prayed for in the Counterclaim."  *Id.* at 3 and 5-8.

### 4.   GMP's Representations in Prior Pleadings

On February 28, 2005, GMP filed a Motion to Continue the Hearing on the Summary Judgment Motion attaching declarations of its counsel and principals, namely Wagdy Guirguis and Peter Melnyk.  In these declarations, GMP stated that additional discovery was necessary to support GMP's position that (1) "GMP was the engineer and construction manager for the [P]roject"; (2) Synagro made oral and written statements to the County that "GMP would perform the **entire GMP Project Scope of Work**"; and (3) Synagro represented to the County that GMP would be the engineer and construction manager for the Project and would be paid

respectively $254,469 and $846,000 for these services.  *See* Reply at 5-7.[6]

Additionally, Peter Melnyk recognized in this declaration that the value of the Synagro-ARI Sub-Contract was approximately $20 million and the value of the Synagro-CBI Sub-Contract was approximately $10 million.  Exh. "4", Melnyk Dec. at ¶¶ 10 and 11.  Thereafter, Mr. Melynk stated that "**the $3,040,000 difference** between the Synagro-City Contract and the sum of the Synagro-Andritz and Synagro-CBI contracts was to **pay GMP for its services** ($33,755,000-[$20,300,000 + $10,415,000] = $3,040,000)." (emphasis added) *Id.* at ¶ 12.

In its Opposition to the Renewed Motion, GMP argued that (1) GMP's role "as a member of the Project Delivery Team included both preparation of the engineering design for the entire Project and construction management" and (2) "GMP was to share in profits by way of being **the party to perform all the engineering and construction management work required to complete design and construction of the [Project]**".  (emphasis added) *See* GMP's Opposition to Renewed Motion at 5 and 22.

---

[6]  *See* Exhibits "I"-"K" attached to Synagro's Amended Motion for Fees, which are re-attached hereto as Exh. "3", Declaration of Richard Sutton to GMP's Motion to Continue at ¶¶ 10 and 13; Exh. "4", Declaration of Peter Melnyk to GMP's Motion to Continue at ¶¶ 9, 12, and 14-16; Exh. "5", Declaration of Wagdy Guirguis to GMP's Motion to Continue at ¶¶ 9-11.

Furthermore, there, GMP clarified that the relief it sought in this action was either enforcement of the purported implied contract or an award of its reliance and expectancy damages:

> The only way injustice can be avoided in this case is to **enforce the oral agreement or to award GMP both reliance and expectancy damages.** GMP has already expended substantial amounts of time, effort, and other resources . . . in detrimental reliance on Synagro's promise of being engineer of record and construction manager of the entire Project. **The engineering and construction management contracts were to be GMP's only compensation** for their contributions to the Project. . . . **To deprive GMP of this benefit of the promise** upon which it detrimentally relied on would constitute an injustice.

(Emphasis added) *Id.* at 24.

GMP also attached to its Opposition a July 26, 2002 e-mail from Peter Melnyk of GMP to James Hecht of Synagro to support its arguments that the implied contract included proposed engineering services for $245,469 and construction management services for $696,231. *Id.* at 9 and Exh. "6", attached, July 26, 2002 E-mail.

### 5.    Relevant Deposition Testimony of GMP's Rule 30(b)(6) Representatives

#### a.    Deposition of Wagdy Guirguis

On September 19, 2005, Wagdy Guirguis, the President and Chairman of the Board of GMP, was deposed as a Rule 30(b)(6) representative for GMP. At the deposition, Mr. Guirguis claimed

that Synagro informed him that GMP would perform the engineering
design work for the "entire project" and that Synagro
subsequently provided the purported "promised" work to other sub-
contractors, specifically ARI and CBI:

> Q:   [W]ere there any statements made by
>      [Synagro] on GMP's involvement in this
>      project?
>
> A:   Yes. **[Synagro] would like to have
>      us as the engineer design and the
>      construction management.**
>
> Q:   And did you have **any specific
>      discussions with [Synagro] on what
>      the engineering work would be?**
>
> A:   **Of the project?**
>
> Q:   **Yes.**
>
> A:   **The entire project.**
>
> Q:   The entire project?
>
> A:   Entire project.
>
> Q:   Anything specific said, though, in terms
>      of this is the engineering work that
>      [GMP is] going to be doing?
>
>                          . . .
>
>      Did [Synagro] ever say anything
>      specific about this is the type of
>      engineering work that GMP is going
>      to perform?
>
> A:   That what the engineering did [sic],
>      that **the presentation implied** that we
>      take that black boxes, we connect them
>      together.
>
>                          . . .

> Q:    Can you show me in the slides what
>        you're referring to, **when you say that
>        it's implied in there, that the work
>        encompasses all engineering design work**?
>
> A:    **Project Team** (indicating).
>
>                    . . .
>
>        [A]ll of a sudden Synagro washing
>        their hands from earlier
>        commitment.
>                    . . .
>
> Q:    What do you mean by earlier commitment?
>                    . . .
>
> A:    The **earlier commitment that we're going
>        to be doing the [engineering] design and
>        the CM [construction management] for the
>        entire project.**

(Emphasis added) Exh. "7", attached, Deposition of Wagdy A.

Guirguis, taken Sept. 19, 2005 ("Guirguis Depo.") at 44-45 and

64-65.

Furthermore, Mr. Guirguis confirmed that the references

to "said contract" in the Counterclaim in discussing the value of

the design and construction management work related to the

"implied contract".  *Id.* at 147.  When asked about GMP's claim

for "profits" in the Counterclaim, Mr. Guirguis explained that

the "profits" sought by GMP were the figures in the Counterclaim,

which stated $2,683,422 for design expenses and $846,000 for

construction management:

> Q:    You have in here, on **Paragraph 14,** that:
>        As a result, Defendant is entitled to
>        damages including profits from the
>        contract plus costs.
>
>        **What are you talking about profits?**

> A:    **Profits of the engineering and the construction management.**
>
> Q:    **So it's basically these figures here?**
>
> A:    **That is correct.**
>
> Q:    Not an additional profit, right?
>
> A:    **That's the profit for this project.**

(emphasis added) *Id.* at 154.

Moreover, in discussing that GMP was provided engineering design work on the Project under its sub-contracts with Andritz and CBI, Mr. Guirguis complained that the limited work provided under these sub-contracts did not total the $2,683,422 figure for design engineering work on the entire project:

> Q:    And this engineering design work value, the total of it, does that include work that GMP provided under the Andritz and CBI contracts?
>
> A:    Yes.
>
> Q:    **[W]hat is the contract value of the . . . Andritz and GMP contract**?
>
> A:    I don't recall the facts.
>
> Q:    Okay. . . . **Same thing with the CBI** and Peter Melnyk would be the best person for that?
>
> A:    That's correct. **But I can tell you, it was not $2,683,422.**

(Emphasis added) *Id.* at 148.

Lastly, Mr. Guirguis clarified that the value of the construction management work totaled $846,000 because it increased an additional $200,000.00 from $646,000 with the change orders. *Id.* at 92-94 and 149-150.

### b.    Deposition of Peter Melnyk

On October 5, 2005, Peter Melnyk, who was also identified as a Rule 30(b)(6) Representative of GMP, explained that the $2,683,422 "design expenses" in the Counterclaim reflected the engineering and design work that GMP was to perform on the Project and it did not include the engineering design work by ARI or CBI:

> Q:    My question is right here on paragraph 12 it says quote, "The total of the design expenses is approximately $2,683,422 for the said contract."
>
>             . . .
>
> Do you have an understanding of where this figure comes from, the $2 million?
>
>             . . .
>
> [y]ou did previously testify that your understanding that this is based upon the engineering design expenses for the whole project, correct?
>
> A:    Correct.
>
> Q:    That would include work that Andritz and CBI, the engineering design work that Andritz and CBI would be doing on the project as well?
>
> A:    In our understanding as the consulting engineering firm, no.
>
>             . . .

> Q:   No? . . .  And why is that?
>
> A:   Because typically the engineering
>      expenses from the equipment manufacturer
>      are included in the cost of the
>      equipment.
>
> Q:   So you're saying or your understanding
>      would be their design cost would be
>      under equipment cost references the
>      engineering design cost?
>
> A:   Yes.
>
>                   . . .
>
> Q:   What about with respect to CBI's work on the
>      project, is their engineering design cost
>      encompassed in this $2 million figure?
>
> A:   I do not believe so, no.

Exh. "8", attached, Deposition of Peter Melnyk, taken on Oct. 5,

2005 ("Melnyk Depo."), at 175-180, specifically 175-178.

Mr. Melnyk further testified that the work provided

under its sub-contracts with ARI and CBI did not include the full

scope of engineering design work under the alleged implied

contract:

> Q:   [H]ow does the engineering scope of the
>      engineering design scope of work under
>      the Andritz and GMP contract vary from
>      the engineering scope of work that
>      you're claiming is covered under the
>      implied contract?
>
>                   . . .
>
> A:   The difference would be the construction
>      management and the design -- **the Andritz
>      contract only covers the scope of work
>      as it applies to the sludge drying
>      process.  It does not cover the work**

> **that applies to the digestion process.**
> So that would also be missing.
>
> Q:   And the work that's covered under the digestion
>      process, that is encompassed in the contract that
>      GMP has with CBI, correct?
>
> A:   No.

(emphasis added) *Id.* at 260-61.

### D.   Report of Special Master on the Amended Motion for Fees and Amended Bill of Costs

On January 23, 2007, the Court issued a "Report of Special Master on Plaintiff's Amended Motion for Attorneys' Fees and Related Non-Taxable Expenses", which (1) granted in part and denied in part Synagro's Amended Motion for Fees and (2) awarded Synagro its costs by denying GMP's Objections to the Amended Bill of Costs.  *See* Special Report at 1-2 and 43.

In the Special Report, the Court held *inter alia* that once final judgment is entered according to the Summary Judgment Order, Synagro will be the prevailing party on the Counterclaim. Special Report at 11-12.  The Court also held that, pursuant to HRS § 607-14, Synagro was entitled to attorneys' fees incurred in connection with the defense of the Counterclaim because "the entire Counterclaim was in the nature of assumpsit".  *Id.* at 13-14.  Furthermore, the Court recognized that Synagro was entitled to recover the fees related drafting the initial motion for attorneys' fees and bill of costs by including those fees into the calculation of the award.  *Id.* at 26.

The Court, however, adjusted Synagro's requested attorneys' fees of $93,214.87 according to the factors set forth in *Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai‘i,* 92 Haw. 432, 442, 922 P.2d 127, 137 and, thereafter, determined that Synagro was entitled to an award of attorneys' fees in the amount of $53,214.82. *Id.* at 1 and 30. The Court recognized in the Special Report that HRS § 607-14 "limits the award of attorneys' fees to twenty-five percent of the judgment". It then corrected ruled that the recommended award of attorneys' fees in the amount of $53,214.82 was within this statutory limit:

> [**t]he Counterclaim states** that the **design portion of the contract was worth approximately $2,683,422.00 and the construction management portion was worth approximately $846,000.00.** It asserted that GMP was entitled to damages, including lost profits from the implied contract. . . .
>
> **Thus, the total claim value of the alleged contract was $3,529,422.00.** The parties despite whether GMP sought this entire amount as lost profits. **Even if this Court accepts GMP's assertion that it only sought ten percent of the value of the contract as lost profits, that amount is $352,942.20 and twenty-five percent of that is $88,235.55.** The recommended award of attorney's fees is therefore within the twenty-five percent limit imposed by § 607-14.

(emphasis added) *Id.* at 31.

With respect to Synagro's request for an award of its expenses and costs, the Court awarded Synagro its fully requested non-taxable expenses in the amount of $242.94 and its taxable costs in the amount of $5,088.96. *Id.* at 2 and 31-42.

Therefore, in the Special Report, the Court recommended that $53,214.82 in attorney's fees, $242.94 in non-taxable expenses, and $5,088.96 in taxable costs be awarded to Synagro and against GMP "upon the entry of final judgment in accordance with the Summary Judgment Order and the Stipulation." *Id.* at 43.

## III. STANDARD OF REVIEW

"In acting on a special master's order, report, or recommendation, the district court must afford an opportunity to be heard and may receive evidence." *Doe ex rel. Doe v. Keala*, 361 F.Supp.2d 1171, 1176 (D. Haw. 2005)(citing FRCP Rule 53(g)(1)). The district court may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions. *Id.* "The district court must decide de novo all objections to findings of fact and/or conclusions of law made or recommended by the special master." *Id.* (citing FRCP Rule 53(g)(3) and (4) and noting that the rule was amended in 2003 to change the standard of review for findings of fact made or recommended by a master to de novo)).

## IV.  ARGUMENT

### A.    The Recommended Award of Attorney's Fees in the Special Report Does Not Exceed 25% of the Amount Prayed for in the Counterclaim

The Court should reject GMP's meritless and disingenuous arguments that (1) the amounts stated in the Counterclaim, which are $2,683,422 for engineering design and $846,000 for construction management, are not the damages prayed

for in the Counterclaim and (2) GMP never claimed that it was entitled to an award of the full value of the alleged implied contract, but rather only the profits, which was 10% of the value of the alleged implied contract. *See* Objections at 8-13. *See also* Opposition at 28-29. These contentions completely misrepresent GMP's allegations in the Counterclaim and conflict with GMP's statements and representations in its prior pleadings and the depositions of its 30(b)(6) representatives.

HRS § 607-14 states in relevant part as follows:

> **Attorneys' fees in actions in the nature of assumpsit, etc**. In all the courts, **in all actions in the nature of assumpsit** and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, **there shall be taxed as attorneys' fees, to be paid by the losing party** and to be included in the sum for which execution may issue, **a fee that the court determines to be reasonable**;. . . .

> The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; **provided that this amount shall not exceed twenty-five per cent of the judgment . . . [or] the amount sued for if the defendant obtains judgment.**

(emphasis added).

Under this statute, Synagro, as the prevailing party on the Counterclaim, is entitled an award of attorneys' fees not to exceed twenty-five percent of the amount of damages prayed for by GMP in its Counterclaim:

> [HRS §] 607-14 taxes attorney's fees on the
> losing party in all actions in the nature of
> assumpsit. **The amount on which the fees are
> to be assessed is dependent on who obtains
> the judgment**--the judgment amount (exclusive
> of costs) if plaintiff or counterclaimant
> prevails, and **the amount sued for if the
> defendant or counterclaimee wins**.

*Rodrigues v. Chan*, 5 Haw. App. 603, 608, 705 P.2d 67, 71 (1985)

(internal quotation marks and citation omitted) (emphasis added).

*See also Smothers v. Renander*, 2 Haw. App. 400, 405, 633 P.2d

556, 561 (1981) (awarding a prevailing counterclaim defendant

reasonable attorneys' fees not to exceed statutory limitations

with respect to the amount sued for by plaintiff in his

counterclaim).

>           1.    **The Amount Sue for by GMP in the Counterclaim on
>                 the Implied Contract Claim was $3,529,422.00**

GMP argues that the figures stated in the Counterclaim

for design engineering and construction management, which totaled

$3,529,422, were not the damages sought under the implied

contract claim, and that the engineering design figure included

all of the design and construction management contracts between

Synagro and the City. *See* Objection at 8-9. However, the

allegations in the Counterclaim reflect otherwise.

There, GMP specifically stated that Synagro represented

GMP would be "providing engineering design and construction

management for the overall project". Exh. "1", Counterclaim at

¶¶ 5-6. The subsequent paragraphs alleged that Synagro breached

its implied contract with GMP and that the "total of the design

expenses is approximately $2,683,422.00" and the "total of the construction management is approximately $846,000.00 for the said contract." *Id.* at ¶¶ 12-13. Clearly, as correctly noted in the Special Report, the total value of the purported implied contract sued for by GMP in the Counterclaim was $3,529,422.

This conclusion is further supported by other representations made by GMP throughout the litigation. First, a declaration submitted by Mr. Melnyk recognized that there was a "$3,040,000.00 difference" between the Synagro-City Contract and the sub-contracts between Synagro and ARI and CBI and he further stated that this difference "was to pay GMP for its services" on the Project. Exh. "4", Melnyk Dec. at ¶ 12. Coincidently, the value of the purported implied contract alleged by GMP in the Counterclaim is also $3 million. Exh. "1", Counterclaim at ¶¶ 12-13.

Second, Wagdy Guirguis testified that the $2,683,422 figure for engineering design and the $846,000 figure for construction management in the Counterclaim pertained to the "implied contract". Exh. "7", Guirguis Depo. at 147. In its Objection, GMP wrongly states that Synagro mis-cited the deposition testimony of Mr. Guirguis and that this statement was the result of a language barrier. *See* Objection at 10-11. To the contrary, the deposition reflects that Mr. Guirguis clearly understood the questions asked and responded that the profits sought by GMP under the alleged implied contract were the figures

set forth in the Counterclaim for the design engineering and
construction management work.  *See supra*  at 13-17 and Exh. "7",
Guirguis Depo. at 11-12 and 154.  There was no cross-
communication between the parties due to any language barrier or
any misrepresentation of the testimony by Synagro.

Furthermore, GMP argues that Mr. Guirguis' statement to
the effect that the values of the GMP-ARI and GMP-CBI sub-
contracts were "not $2,683,422" somehow supports that the value
of the design engineering work under the implied contract was
less than the figure in the Counterclaim because GMP only
expected a portion of the work.  Objection at 14.  GMP
misrepresents the context surrounding the statement.  This
statement arose because Mr. Guirguis was complaining that GMP did
not receive the full scope and value of the design engineering
work purportedly promised by Synagro through its sub-contracts
with ARI and CBI on the Project, thereby, confirming that
$2,683,422 was the "full" value of the alleged design engineering
work GMP was seeking in the Counterclaim.  Exh. "7", Guirguis
Depo. at 148.

Third, Mr. Melnyk testified in his deposition that the
figures in the Counterclaim reflected the value of the
engineering design and construction management work to be
performed by GMP as derived from proposals submitted by GMP to
Synagro, Andritz, and CBI.  Exh. "8", Melnyk Depo. at 175, 178-
180.  In its Objection, GMP argues that Mr. Melnyk's deposition

testimony "reveals that the $2,683,422 figure, stated in GMP's Counterclaim, is the 'total design expenses for the project'" and that it was not the value of the engineering work to be performed by GMP.  Objection at 11.  This is completely illogical in light of GMP's prior consistent position throughout the litigation that it expected to perform the design engineering for the "entire" Project, not merely only a limited portion of the work as GMP is now claiming.  *See supra* at 11-14.

Again, GMP has misrepresented the surround context of Mr. Melnky's deposition testimony.  There, Mr. Melnyk recognized that the design engineering work to be performed by ARI and CBI on the project was <u>not</u> encompassed in the $2 million figure, therefore, GMP is wrong that the $2,683,422 figure in the Counterclaim is for "the total design expenses for the project." Exh. "8", Melnyk Depo. at 175-178.

Therefore, the Court correctly held that the damages sought by GMP in the Counterclaim on the alleged implied contract was $3,529,422, *see* Special Report at 31, and GMP's arguments refuting otherwise are unpersuasive and must be rejected by the Court.

### 2.    GMP Did Not Seek Merely 10% of the Profits in its Counterclaim

GMP argues that it merely sought as damages the profits related to the value of the implied contract, which was only $95,070 or 10% of $950,700.  Objection at 8.  This argument fails for numerous reasons.

First, no where in the Counterclaim, its pleadings prior to the proceedings on Motion for Fees, or the depositions of its Rule 30(b)(6) representatives, did GMP ever claim it was only seeking 10% of its "profits" and nothing more. To the contrary, the Counterclaim states that "profits" were only one category of the damages sought by GMP, not the sole damages. *See* Counterclaim at ¶ 14 ("[GMP] is entitled to **damages including profits** from the contract").

In fact, in GMP's Opposition to the Renewed Motion, GMP sought either enforcement of the purported implied contract or an award of its reliance and expectancy damages, which at the very minimum totaled $950,700 and at the maximum totaled $3,529,422 as set forth in the Counterclaim. *See* Opposition to Renewed Motion at 9. *See also supra* 5-6; Exh. "1", Counterclaim at ¶¶ 12-14; Exh. "6", July 26, 2002 E-mail (stating GMP's proposed fee for design engineering was of $245,469 and for construction management was $696,231 which total $950,700)[7].

---

[7]  In its Objection, GMP heavily relies upon the July 26, 2002 e-mail to argue that amount of the alleged implied contract sought in the Counterclaim was $950,700. Objection at 12-13. GMP argues that the email reflects it was only seeking $254,469 for engineering services on the Project. Notably, the $254,469 figure was only for engineering services related to the sludge drying building. Exh. "6", July 26, 2002 E-mail. However, in his deposition, Mr. Melynk stated that the alleged implied contract was not limited to the sludge drying engineering work, but even included design engineering work related to the digestion process. Exh. "8", Melnyk Depo. at 260-61. Therefore, GMP's reliance on the July 26, 2002 e-mail to limit its liability for attorney's fees is a fabrication on the nature and extent of damages sought under the Counterclaim.

Second, even if the Court adopts GMP's position that it only sought "profits", GMP's 30(b)(6) representative explained that the profits sought in the Counterclaim were $2,683,422 for engineering design and $846,000 for construction management. Exh. "7", Guirguis Depo. at 154.  The attorney's fees awarded to Synagro in the Special Report in the amount of $53,214.82 is easily less than 25% of the total damages prayed for in the Counterclaim, which was $3,529,422.[8]

**B.    Synagro is Entitled to Recover its Attorney's Fees Incurred in Opposing GMP's Meritless Objection to the Special Report**

It is well established that the attorneys' fees and costs related to the preparation, drafting, and filing of the Motion for Fees and Expenses and Bill of Costs are recoverable. *See Rosenfeld v. S. Pac. Co.*, 519 F.2d 527, 530-31 (9th Cir. 1975) (ordering that fee award include an amount in remuneration for time spent on fee claim); *Environmental Defense Fund, Inc. v. Environmental Protection Agency*, 672 F.2d 42, 62 (D.D.C. 1982) (awarding fees for time spent preparing the fee application).

Here, the Court in the Special Report affirmed this general rule by recognizing that Synagro was entitled to recover the fees incurred in the drafting of the initial motion for attorney's fees and the bill of costs by including those fees into the calculation of the award.  This Opposition is related to

---

[8]    Twenty-five percent of $3,529,422 is $882,355.50.

resolving the disputed issue of attorney's fees and, therefore, Synagro is entitled to recovery the attorney's fees necessarily incurred in responding to the groundless arguments in GMP's Objection to the Special Report.  To date, Synagro has incurred an additional $3,701.00 (as adjusted, *see supra* fn. 2) in attorney's fees related to reviewing GMP's Objection and drafting an opposition to the Objection.  Exh. "9".

**V.    CONCLUSION**

For the foregoing reasons, Synagro respectfully requests the Court to (1) reject the arguments in GMP's Motion to Modify the Special Report/Objection, (2) adopt the finding and recommendations in the Special Report by entering a final judgment in this action in accordance with the Summary Judgment Order and Stipulation, and (3) award Synagro attorney's fees in the amount of $53,214.82, non-taxable costs in the amount of $242.94, and taxable costs in the amount of $5,088.96 for a total award of $58,546.72.  Furthermore, Synagro respectfully requests the Court to award Synagro an additional $3,701.00 for the attorney's fees necessarily incurred in responding to GMP's groundless Objection to the Special Report.

DATED:  Honolulu, Hawai`i, February 13, 2007

/s/ MEI-FEI KUO
PAUL ALSTON
MEI-FEI KUO
SHELLIE K. PARK-HOAPILI
Attorneys for Plaintiff
  SYNAGRO TECHNOLOGIES, INC.