Of Counsel:
SAKAI IWANAGA SUTTON
LAW GROUP, AAL, LLLC

RICHARD C. SUTTON JR. 1010-0
City Financial Tower, Suite 2307
201 Merchant Street
Honolulu, Hawaii 96813
Tel. No. (808) 792-3888
Fax No. (808) 521-5262
Email: rsutton@silawgroup.com

Attorneys for Defendant
GMP HAWAII, INC.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GMP HAWAII, INC.,<br><br>Defendants. | CIVIL NO. CV044-00509<br>(SPK /LEK)<br><br>DECLARATION OF PETER B. MELNYK |

**DECLARATION OF PETER B. MELNYK**

1.   I, PETER B. MELYNK, declare that this Declaration is provided upon personal information and belief and is true to the best of my knowledge.

**EXHIBIT 4**

2. I am the Vice President of GMP HAWAII, INC. ("GMP"), a Hawaii Corporation.

3. I am a licensed professional engineer.

4. I have personal knowledge regarding the facts stated herein, and am competent to testify regarding the same.

5. In May 2001, at the request of Synagro Technologies, Inc. ("Synagro"), GMP Hawaii, Inc. ("GMP") prepared a portion of a Power Point qualifying presentation for a bioconversion wastewater treatment plant (the "Project") for the City and County of Honolulu ("City"). Synagro asked GMP to be part of the Project Delivery Team and to act as the locally licensed consulting engineers to provide services in environmental assessment & permitting, engineering design, and construction management. Synagro was not licensed in Hawaii and had not done any prior jobs with the City, and therefore asked GMP to be their locally licensed consulting engineers. I participated in preparing the slides for the GMP portion of the presentation, a true and correct copy of which are attached as GMP Exhibit "1".

6. On May 10, 2001, I participated in the qualifying presentation made by Synagro and others to the City which

identified GMP as part of the "Project Delivery Team." The GMP slides included examples of GMP's extensive experience in waste water treatment plants including several plants previously constructed for the City. The GMP slides indicated that the GMP Project Scope of Work ("Scope of Work") had three areas: (1) Environmental Assessment & Permitting; (2) Engineering Design including architectural, civil, electrical, mechanical, and structural; (3) Construction Management. GMP was the only project delivery team member providing this scope of work. Additional slides detailed GMP's Project Approach and detailed the permits that GMP would assist in obtaining from the State of Hawaii, the United States Environmental Protection Agency, and the City. A final slide entitled "Benefits to the City" listed GMP's background with the Project site stating: "Extensive experience with Sand Island treatment operations (1980-1995)," "Intimate knowledge of needs & requirements of Environmental Services, and Design & Construction departments," and "Well versed in Federal and State regulatory requirements (25 years of operation in Hawaii). See Exhibit "1".

7. GMP incurred significant labor costs, overhead, and expenses for the preparation of the presentation to the City and has not been paid for this work.

8. GMP used its valuable reputation, experience, and goodwill on behalf of Synagro in the presentation to the City and has not been paid for this work.

9. GMP was told by James Hecht of Synagro, and other representatives from Synagro, that GMP would perform the entire GMP Project Scope of Work. GMP has only been given a small portion of that work. Further discovery may indicate that Synagro representatives made other oral and written statements that GMP would perform the entire GMP Project Scope of Work. This discovery is necessary to oppose the summary judgment.

10. In November 2001, Synagro entered into a contract with Andritz-Ruthner, Inc. ("Andritz") to construct a dryer facility for the Sand Island Bio-solids Conversion Facility and the Synagro-Andritz Contract Price was $20,300,000. See Synagro Exhibit "D" The Synagro-Andritz Contract did not name any engineers or any subcontractors. Further discovery may indicate that this contract was entered into before the Synagro-City contract to foreclose a

contract between Synagro and GMP. This discovery is necessary to oppose the summary judgment.

11. In March 2002, Synagro entered into a contract with CBI Services, Inc. ("CBI") to construct a biosolids digester portion of the Sand Island Bio-solids Conversion Facility and the Synagro-CBI Contract Price was $ 10,415,000. See Synagro Exhibit "E". The Synagro-CBI Contract did not name any engineers or any subcontractors. Further discovery may indicate that this contract was entered into before the Synagro-City contract to foreclose a contract between Synagro and GMP. This discovery is necessary to oppose the summary judgment.

12. In May 2002, Synagro entered into two contracts with the City; one to construct and one to operate a Bio-conversion Facility at the Sand Island Waste Water Treatment Plant. A true and correct copy of the Operation Contract is attached as GMP Exhibit "2". The Operation Contract is for Synagro to operate the Bio-conversion Facility at the Sand Island Waste Water Treatment Plant for thirteen years with an option to renew. The Contract Price for the construction contract with the City is $33,755,000 ("Contract"). See Synagro Exhibit "C". The Contract provided a

"Drawdown Schedule" as Exhibit J to the Contract and the amount for Phase I for "Initial Design, Permit Preparation and Regulatory Liason" is $800,000, the amount for Phase II Task 1 "Design Engineering" is $2,575,000, the amount for Phase II Task 2 "Construction and Installation" is $28,016,850, and the amount for Task 3 "Start-Up and Acceptance" is $2,362,850. The Contract did not name any engineers or any subcontractors. The Contract makes reference to documents which have not been provided to GMP and are necessary to oppose the summary judgment as follows: Pricing Proposal submitted by Synagro to the City as referred to on the definition "Contract Price" in page I-2. Further discovery may indicate that this Pricing Proposal and other documents used to prepare the Pricing Proposal may list GMP as the designated entity to perform the engineering, permitting, and construction management work. Further discovery may indicate that the $3,040,000 difference between the Synagro-City Contract and the sum of the Synagro-Andritz and Synagro-CBI contracts was to pay GMP for its services. ($33,755,000-[$20,300,000 + $10,415,000]=$3,040,000). All this discovery is necessary to oppose the summary judgment.

6

13. On May 9, 2002, the Houston Business Journal (Houston is the headquarters of Synagro) published an article on the award of the Contract stating, "**Synagro has teamed up with GMP & (sic) Associates,** Hawaiian Dredging Construction Co., Andritz-Ruthner Inc. and Chicago Bridge & Iron Co. for the design and construction of the facility at Honolulu's Sand Island Wastewater Treatment Plant." (emphasis added). Attached as GMP Exhibit "3" is a true and correct copy of the internet article from the May 9, 2002 Houston Business Journal. Further discovery may disclose Synagro as the source of this article. This discovery is necessary to oppose the summary judgment.

14. At the request of Synagro, GMP submitted engineering fee proposals and construction management proposals to Synagro for work to be performed by GMP. Exhibit "4" is a true a correct copy of a July 26, 2002 e-mail from GMP sent at my request to James Hecht of Synagro quoting prices for engineering fees for the sludge drying building in the amount of $254,469 and for construction management services in the total amount of $696,231. Further discovery may indicate that these estimates and other estimates supplied by GMP were used by Synagro to prepare the

7

Pricing Proposal submitted to the City and that Synagro represented to the City that this work would be done by GMP. This discovery is necessary to oppose the summary judgment.

15. In January 2003, GMP submitted the 30% Progress Set of drawings to the City. Exhibit "5" is a true a correct copy of sheets 1, 2, and 3 of the 30% Progress Set of Drawings prepared by GMP and listing the Index of Drawings submitted to the City. (The rest of the drawings are not attached.) These drawings have the block of GMP Hawaii, Inc in the lower right corner. Further discovery may indicate that these drawings and other drawings supplied by GMP were used by Synagro to represent to the City that GMP was the engineer for the Project. This discovery is necessary to oppose the summary judgment.

16. Synagro submitted to the City a pricing schedule for Change Order #1 based on these GMP 30% drawings as referenced in the attached GMP Exhibit "6" which is a true and correct copy of a letter dated January 27, 2003 from James Hecht of Synagro to Frank Doyle of the City and County of Honolulu. On the fifth page of the letter entitled "Capital Cost Additions" under "Construction Management" the letter states **"Additional construction**

**management services by GMP - $200,000."** (emphasis added) On the seventh page of the letter, entitled Change Order #1 Restatement-Capital Changes, under subsection A, SYSTEM, item 3 "Construction Management" the Contract Price is indicated as $646,000 which is same as the amount quoted by GMP to Synagro in GMP Exhibit 3; and the amount for "Scope Additions" for Construction Management is $200,000 which is the same amount indicated on the fifth page. Further discovery may indicate that these representations were used by Synagro to represent to the City that GMP was the construction manager for the Project and would be paid the amount of $846,000. Construction has not begun and GMP expects to be the construction manager and to be paid the amount Synagro represented to the City. This discovery is necessary to oppose the summary judgment.

    17.  Based on the submittal of the 30% Progress Set of drawings to the City, under the Synagro-City Contract (Synagro Exhibit "B"), Synagro would be entitled under the "Drawdown Schedule" for the payment of $875,000. GMP was not paid this amount. Further discovery may indicate that Synagro represented

to the City the payment was to be made to GMP. This discovery is necessary to oppose the summary judgment.

18. The Synagro letter of January 27, 2003, (GMP Exhibit "6") makes reference to documents which have not been provided to GMP and are necessary to oppose the summary judgment as follows: 1. Prior scope discussions between the City and Synagro on Change Order #1 from July 1, 2002 to January 10, 2003;

2. Detailed Construction Management schedule and plan for the project; and

3. Details supporting prices in the 30% engineering drawings submitted.

19. At the request of Synagro, GMP later submitted the 60% Progress Set of Drawings and the Final Engineering Set of Drawings prepared by GMP to the City. The Final Engineering Set Drawings have the engineering stamp of GMP applied. Based on the submittal of the 60% Progress Set of Drawings and the Final Engineering Set of Drawings, under the Synagro-City Contract (Synagro Exhibit "B"), Synagro would be entitled under the

"Drawdown Schedule" for the payment of $1,025,300. GMP was not paid this amount.

20. As part of the Environmental Assessment & Permitting under GMP's Scope of Work, on February 27, 2004, Synagro requested GMP to take samples of sludge from the Sand Island treatment plant. Attached as GMP Exhibit "7" is a true and correct copy of the e-mail I received from Synagro on February 27, 2004.

21. GMP performed the services requested by Synagro in GMP Exhibit "6" and billed Synagro for the services but has not been paid. Attached as GMP Exhibit "8" is a true and correct copy of the billing dated April 9, 2004. Further discovery may indicate that Environmental Assessment & Permitting work contracted to GMP and represented by Synagro to the City that GMP would do the work was done by others and paid to other. This discovery is necessary to oppose the summary judgment.

Dated: Honolulu, Hawaii, *February 28, 2005*.

_____
PETER B. MELNYK