154

1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3

4    SYNAGRO TECHNOLOGIES,      ) CIVIL NO. CV04-00509SPK LEK
     INC.,                      )
5                               )
                    Plaintiff,  )
6                               )
          vs.                   )
7                               )
     GMP HAWAII, INC.,          )
8                               )
                    Defendant.  )
9    _____)

10

11       CONTINUED DEPOSITION OF PETER MELNYK, Ph.D., P.E.

12

13   Taken on behalf of the Plaintiff SYNAGRO TECHNOLOGIES,

14   INC., at the law offices of Alston, Hunt, Floyd & Ing,

15   1001 Bishop Street, Suite 1800, American Savings Bank

16   Tower, Honolulu, Hawaii 96813, commencing at 11:10 a.m.,

17   on Wednesday, October 5, 2005 pursuant to Notice.

18

19         BEFORE:  MYRLA R. SEGAWA, CSR No. 397

20            Notary Public, State of Hawaii

21

22

23

24

25                 **EXHIBIT 8**

155

1    APPEARANCES:

2         For Plaintiff SYNAGRO TECHNOLOGIES, INC.:

3              MEI-FEI KUO, ESQ.
               Alston, Hunt, Floyd & Ing
4              American Savings Bank, Suite 1800
               1001 Bishop Street
5              Honolulu, Hawaii  96813

6

7

         For Defendant GMP HAWAII, INC.:
8
               RICHARD C. SUTTON, JR., ESQ.
9              Sakai, Iwanaga, Sutton Law Group
               City Financial Tower, Suite 2307
10             201 Merchant Street
               Honolulu, Hawaii 96813
11

12

13       Also present:  DANIEL HABIB

14

15

16

17

18

19

20

21

22

23

24

25

175

1  counterclaim is attached to your formal deposition

2  exhibit.    It's Exhibit 3.

3                    MR. SUTTON:  I have a copy here.

4                    MS. KUO:  You have a copy, okay.

5  BY MS. KUO:

6      Q    I discussed this very brief with

7  Mr. Guirguis, but I wanted to ask you the same thing

8  because he had said you had more information on

9  engineering design work.  And specifically my

10 question related to paragraph -- let me see if I can

11 find it.   Paragraph 12 on page 4.

12                   MR. SUTTON:  I want him to get

13 familiar with the whole thing.

14 BY MS. KUO:

15     Q    Just take your time and review it, if you

16 want.

17     A    I read paragraph 12.

18     Q    My question is right here on paragraph 12

19 it says quote, "The total of the design expenses is

20 approximately $2,683,422 for the said contract."  Do

21 you see that?

22     A    Uh-huh.

23     Q    Said contract you're talking about the

24 implied contract?

25                   MR. SUTTON:  Well, let me object to

176

1    the form of the question.  But see, what this section

2    is called breach of implied contract, and so that's

3    the reference you're making is that this is -- do you

4    understand what she's asking at this point?  Perhaps

5    you might clarify again.

6    BY MS. KUO:

7        Q    My question is this $2 million figure, is

8    this what GMP's claiming is the design expenses

9    damages and pursuant to their implied contract?

10       A    Well, I think my interpretation -- and I

11   didn't write this -- my interpretation refers to the

12   total design expenses for the project.

13       Q    And Mr. Guirguis testified previously that

14   this -- do you know where this figure is based upon

15   before I --

16       A    Which figure?

17       Q    The $2 million figure.

18             MR. SUTTON:  I think it may be helpful

19   to make reference to the contract, the cost breakdown

20   to see if that's what it says.

21             THE WITNESS:  Repeat the question.

22   BY MS. KUO:

23       Q    Do you have an understanding of where this

24   figure comes from, the $2 million?

25       A    Not really.  I mean, I didn't prepare this.

177

1  So I can't testify where it came from.

2       Q    Okay.  However, you did previously testify

3  that your understanding that this is based upon the

4  engineering design expenses for the whole project,

5  correct?

6       A    Correct.

7       Q    That would include work that Andritz and

8  CBI, the engineering design work that Andritz and CBI

9  would be doing on the project as well?

10      A    In our understanding as the consulting

11  engineering firm, no.

12      Q    No?

13      A    No.

14      Q    And why is that?

15      A    Because typically the engineering expenses

16  from the equipment manufacturer are included in the

17  cost of the equipment.

18      Q    I don't think I quite understand.  Can you

19  explain what that means, the equipment?

20      A    Well, Andritz essentially is the

21  manufacturer and they provide a sludge drier which is

22  actually very complicated.  It's actually a system.

23  It's more than one piece of equipment.  Typically

24  their design expenses are included in the equipment

25  cost, the price of the equipment.

178

1    Q    So you're saying or your understanding

2  would be their design cost would be under equipment

3  cost references the engineering design cost?

4    A    Yes.

5    Q    And what is that understanding based upon,

6  just general practice?

7    A    Yes.

8    Q    What about with respect to CBI's work on

9  the project, is their engineering design cost

10  encompassed in this $2 million figure?

11    A    I do not believe so, no.

12    Q    And why is that your understanding as well?

13    A    For the same explanation that I gave for

14  Andritz that the cost for the digester included their

15  design expenses.

16    Q    I do want to show you this document here.

17    A    And also --

18    Q    I'm sorry.  Go ahead.

19    A    I'd also like to add that they're selling

20  the same equipment to a number of different clients

21  so that a lot of their design costs are prorated, you

22  know, over various clients.

23    Q    What about the engineer and design work

24  that GMP was contracted to perform for Andritz and

25  CBI, is that engineering design work cost encompassed

179

1    in the $2 million figure?

2        A    Yes.

3        Q    Okay.  And I want to show you next what's

4    marked as Exhibit 15 to your prior deposition.

5        A    Uh-huh.

6        Q    Mr. Wagdy Guirguis -- and I'm going to say

7    the full name so that we can get it clarified for the

8    record -- had testified that the $2 million figure

9    was based on Exhibit 1.

10        A    Exhibit?

11        Q    One.

12               MR. SUTTON:  You mean attached to the

13    letter?

14               MS. KUO:  Yes.

15               MR. SUTTON:  Okay.

16    BY MS. KUO:

17        Q    Now, Mr. Wagdy Guirguis believed that -- he

18    believed the $2 million figure came from the design

19    expenses adjusted price.  Do you see that figure?

20        A    Yes.

21        Q    Do you know who created this document?

22        A    Synagro created this document.

23        Q    This $2 million figure is that Synagro's

24    figure?

25        A    That is correct.

180

1       Q       Did GMP have any involvement in providing

2    this figure to Synagro?

3       A       Yes.

4       Q       And what involvement was that?

5       A       This would have been the price proposal

6    that I gave to Steve Huff in June of 2001, and then

7    of course then subsequent proposals that I would have

8    given to both Andritz and CBI.

9       Q       Okay.  Now, when you talk about the

10   proposals, is this a proposal you're talking about?

11   And I'm referencing Exhibit 7 of Wagdy Guirguis's

12   deposition.  It's a June 1, 2001 letter.

13      A       What is the question?

14      Q       You previously stated that Synagro obtained

15   this figure -- I'm sorry.  You previously testified

16   that this figure had arose from GMP was involved in

17   coming up with this figure in helping Synagro come up

18   with this figure; is that correct?

19      A       Correct.

20      Q       And then you mentioned -- I asked you what

21   was that based upon and you said a proposal that you

22   submitted to Steve Huff.  So is this exhibit proposal

23   the one you're referring to?

24      A       Yes.  Well, I would like to clarify is that

25   if you look at the exhibit, there are three -- four

260

1    A    Let me think about that.  I can't recall

2  any involvement.

3    Q    I'm sorry?

4    A    I cannot recall any involvement.

5    Q    Other than as you said earlier directing

6  you to contract with them, correct?

7    A    Right.

8    Q    Okay.  Now, my next question is how does

9  the engineering scope of the engineering design scope

10 of work under the Andritz and GMP contract vary from

11 the engineering scope of work that you're claiming is

12 covered under the implied contract?

13   A    Okay.  Just repeat that entire thing.

14   Q    There's engineering design work in the

15 Andritz/GMP contract, correct?

16   A    Uh-huh.

17   Q    What is GMP claiming is the difference in

18 the scope of work that's covered under the

19 Andritz/GMP contract and that's covered in the

20 implied contract?

21   A    Okay.  The difference -- okay.  The

22 difference would be the construction management and

23 the design -- the Andritz contract only covers the

24 scope of work as it applies to the sludge drying

25 process.  It does not cover the work that applies to

261

1    the digestion process.  So that would also be

2    missing.

3        Q    And the work that's covered under the

4    digestion process, that is encompassed in the

5    contract that GMP has with CBI, correct?

6        A    No.

7        Q    It's not covered in there?

8        A    Only part of it is covered in there.

9        Q    Okay.  Now, I'm going to show you what is

10   Exhibit 9 to Mr. Guirguis's deposition, and that is

11   the CBI/GMP contract, but I also wanted to replace

12   this with an unredacted version which was previously

13   produced.  This will be marked as Exhibit 30.

14                    (Exhibit No. 30 was marked for

15                        identification.)

16   BY MS. KUO:

17       Q    Now, is 30 a true and accurate copy of the

18   contract that's executed between CBI and GMP?

19       A    Well, this looks --

20                MR. SUTTON:  The other one.

21                MS. KUO:  He has one in front of him.

22                MR. SUTTON:  Oh, okay.

23                THE WITNESS:  Okay.  This is okay.

24   This is the initial contract.  Well, that's not it.

25   This is the first, the first payment we received from

293

C E R T I F I C A T E

STATE OF HAWAII                )
                              )  SS:
CITY AND COUNTY OF HONOLULU )

I, MYRLA R. SEGAWA, Notary Public, State of
Hawaii, do hereby certify:

That on Wednesday, October 5, 2005, 2005,
at 11:10 a.m., appeared before me PETER MELNYK, the
witness whose deposition is contained herein; that
prior to being examined he was by me duly sworn;

That the deposition was taken down by me in
machine shorthand and was thereafter reduced to
typewriting under my supervision; that the foregoing
represents, to the best of my ability, a true and
correct transcript of the proceedings had in the
foregoing matter.

I further certify that I am not an attorney
for any of the parties hereto, nor in any way
concerned with the cause.

DATED this 12th day of October, 2005, in
Honolulu, Hawaii.


                    _____
                    MYRLA R. SEGAWA, CSR NO. 397
                    Notary Public, State of Hawaii
                    My Commission Exp:  1-27-2009