**SAKAI IWANAGA SUTTON**
A Law Group, AAL, LLLC
RICHARD C. SUTTON, JR.    1010-0
Email:  dsutton@lava.net
City Financial Tower
201 Merchant Street, Suite 2307
Honolulu, Hawaii 96813
Telephone:  (808) 792-3888
Facsimile:    (808) 521-5262

**CASE LOMBARDI & PETTIT**
A Law Corporation
MICHAEL R. MARSH          1327-0
Email:  mmarsh@caselombardi.com
TED N. PETTIT                      4287-0
Email:  tpettit@caselombardi.com
JOHN D. ZALEWSKI            4718-0
Email:  jzalewski@caselombardi.com
MALIA S. LEE                       8159-0
Email:  mlee@caselombardi.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone    (808) 547-5400
Facsimile:    (808) 523-1888

Co-Counsel for Defendant
**GMP HAWAIʻI, INC.**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC.,<br><br>              Plaintiff,<br><br>          vs. | CIVIL NO. CV04-00509 SPK LEK<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO MODIFY** |

GMP HAWAI`I, INC.,

Defendant.

**[caption continued on next page]**
**REPORT OF SPECIAL**
**MASTER ON PLAINTIFF'S**
***AMENDED* MOTION FOR**
**ATTORNEYS' FEES AND**
**RELATED NON-TAXABLE**
**EXPENSES**

Non-Hearing Motion

**DEFENDANT GMP HAWAII, INC.'S REPLY MEMORANDUM IN**
**SUPPORT OF MOTION TO MODIFY REPORT OF SPECIAL**
**MASTER ON PLAINTIFF'S *AMENDED* MOTION FOR**
**ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES**

## I.    Introduction

GMP Hawaii, Inc. submits its Reply Memorandum in support of its
Motion to Modify Report of the Special Master on Plaintiff's Amended
Motion for Attorneys' Fees and Related Non-Taxable Expenses.  Synagro is
only entitled to 25% of the damages sought by GMP in its Counterclaim,
which were for lost profits from contracts totaling $950,700.00, the amount
of the implied contracts – not $3,529,422.00, which was the total amount of
the Synagro-City Contract.  Synagro's Opposition ["Opposition"] to GMP's
Motion to Modify Report of Special Master ["Motion to Modify"] is
scattered with assertions that are presented out of context and do not appeal
to common sense.

## II.    Argument

### A.    The Counterclaim Does Not Represent that the Implied Contract Was For $3,529,422

Plaintiff cites the Counterclaim completely out of context.  Looking in sequential order at the paragraphs of the Counterclaim, no where does it state that the amount of the implied contract or the amount sought totals $3,529,422.  In Paragraph 2 of the Counterclaim, it states that "Plaintiff was awarded *a contract* with the City and County of Honolulu, Hawaii to design, engineer, construct, and test an In-vessel Bioconversion facility . . . ." (emphasis added).  *See* Counterclaim at ¶ 2, attached as Exh. 2 to Motion to Modify.  Paragraph 6 of the Counterclaim states: "Plaintiff was awarded *the contract* from the City and County of Honolulu . . . ." (emphasis added).  *See* Counterclaim at ¶ 6, attached as Exh. 2 to Motion to Modify.  In Paragraph 7 of the Counterclaim, it states that "Plaintiff utilized the reputation and goodwill of Defendant in order to obtain *the … contract* with the City and County of Honolulu.  (emphasis added).  *See* Counterclaim at ¶ 7, attached as Exh. 2 to Motion to Modify.  In Paragraph 9 of the Counterclaim, it states that "Said representation created an *implied contract* between Defendant and Plaintiff."  (emphasis added).  *See* Counterclaim at ¶ 9, attached as Exh. 2 to Motion to Modify.   In Paragraph 11 of the Counterclaim, it states that "Plaintiff's actions represent

a breach of its *implied contract* with Defendant." (emphasis added). *See* Counterclaim at ¶ 11, attached as Exh. 2 to Motion to Modify.

Paragraph 12 of the Counterclaim states that "[t]he total of the design expenses is approximately $2,683,422.00 for the *said contract*." (emphasis added). *See* Counterclaim at ¶ 12, attached as Exh. 2 to Motion to Modify. In Paragraph 13 of the Counterclaim, it states that "[t]he total of the construction management is approximately $846,000.00 for the *said contract*." (emphasis added). *See* Counterclaim at ¶ 13, attached as Exh. 2 to Motion to Modify.

The phrase "said contract," as used in the Counterclaim, is at best ambiguous because there are several references to "contract" and "implied contract" preceding "said contract." Although at first glance the term "said contract" may be ambiguous as to which "contract" it is referring, common sense and a factual analysis of the case would direct any reasonable person to the conclusion that "said contract" refers to the entire contract with the City and not the implied contract claimed by GMP. The exact amount of damages sued for is not specified in the Counterclaim as evidenced by Paragraph 19 of the Counterclaim, in which it states that "GMP Hawaii, Inc., prays as follows: A. For general damages *in amounts to be shown at trial*;

B. For special damages i*n amounts to be shown at trial* . . . ." (emphasis added).  *See* Counterclaim at ¶ 19, attached as Exh. 2 to Motion to Modify.

### B. The Deposition Testimony Does Not Support The Erroneous Assertion That The Implied Contract Was For The Same Amount As Synagro's Contract With The City

Looking at the larger context of the deposition testimony, GMP's representatives never said that the profits and/or damages sought were the same amount as the City contract or how much of the Synagro-City contract was to be given to GMP.  The excerpt of the deposition of Wagdy Guirguis at pages 145 through 154, read in its entirety, shows the lack of clarity and support for the assertion that the implied contract was the same amount as the City's contract with Synagro.   On page 147, Mr. Guirguis is asked about what "said contract" is he referring and he says it "appears" to be the implied contract.  *See* Guirguis Depo, p. 147, attached as Exh. 3 to Motion to Modify.  Then reading further, it is clear that Mr. Guirguis is unsure what the $2,683,422 figure is based upon or what any of the figures are.  *See* Guirguis Depo, p. 147-148, attached as Exh. 3 to Motion to Modify.  Because GMP's representatives were unsure as to what the $2.6 million figure was for, it makes no sense that it would be included in GMP's implied contract claim.

At the end of page 148, Mr. Guirguis states "[b]ut I can tell you, it was **not $2,683,422**," referring to the Andritz and GMP contract. (emphasis added). *See* Guirguis Depo, p. 148, attached as Exh. 3 to Motion to Modify. Later, on page 149, when asked about where the numbers come from, Mr. Guirguis states "I'm not sure because it appeared to me that this is adjusted value, it appeared to me – I have to the [sic] look at the contract. It's 3, 3-9-7-8, then that one is it. Sometimes they denied, sometimes they included, so we would have to look at the figure, find the figure of the contract." *See* Guirguis Depo, p. 149, attached as Exh. 3 to Motion to Modify. All of page 150 shows that nothing was accomplished as to figuring out final numbers and figures.

The deposition of Dr. Melnyk bolsters the notion that GMP was not exactly sure from where this $2.6 million figure was derived and thus, it could not have been part of the damages sought in the counterclaim. Dr. Melnyk testified as follows:

> Q:    My question is this $2 million figure, is this what GMP's claiming is the design expenses damages and pursuant to their implied contract?

> A:    Well, I think my interpretation – and I didn't write this – my            interpretation refers to the total design expenses for the project.

*    *    *

Q:    Do you have an understanding of where this figure comes from, the $2 million?

A:    Not really.  I mean, I didn't prepare this.  So I can't testify where it came from.

*See* Melnyk Depo, pp. 176-177, attached as Exh. 4 to Motion to Modify.

Just because statements were made that the $2.6 million figure refers to total design expenses for the project by no means signifies that GMP meant that this figure was the damages that it sought in its Counterclaim.  In the excerpt above, Dr. Melnyk said that this number was for expenses and left out damages.  After a full reading of the depositions and the context of the quoted language, the only thing that is clear from the deposition testimony of both GMP representatives is that neither one knew exactly what this $2.6 million figure encompassed.  As such, it is illogical to impose upon GMP that it sought this amount in damages.

**C.    Even Before Entry Of Summary Judgment In Synagro's Favor GMP Asserted That The Proposals For Its Services Amounted to $950,700.00**

GMP believed that the $950,700.00, or the amount of the two proposals to Synagro, constituted the agreement between Synagro and itself in the form of an implied contract.  GMP did not just decide conveniently in the face of a motion for award of attorneys' fees that this would be the number to base an award of fees.  In fact, GMP expressed this amount in its

Opposition to Synagro's Renewed Motion for Summary Judgment.  *See* Opposition to Renewed Motion at p. 9.  It clarifies that the $950,700 came from the sum of the $254,469 in engineering fees proposed and the $696,231 for construction management services proposed.  This belief is further supported by the email explained in the Motion to Modify that spells out the amounts that were orally agreed to between Synagro and GMP.  *See* p. 12 of the Motion to Modify and Exh. 5 thereto.  It is significant that the Opposition to the Renewed Motion for Summary Judgment and this email were created before the dispute arose over how to calculate attorneys' fees, and thus should be clear evidence supporting the fact that GMP was not seeking the full amount of the contract between the City and Synagro.

### D.    The Special Master Correctly Used 10% To Calculate Damages as Lost Profits

Synagro claims that GMP sought the entire value of the implied contracts themselves.  Synagro is making this assertion only to attempt to mislead the Court into accepting an excessively high award of attorneys' fees.  It makes no sense that GMP would be seeking the entire amount.  The claim was for damages for breach of an implied contract – not for the entire contract.  Industry standards dictate 10% as a typical amount for profits.  Moreover, the Special Master, in fact, used 10% of the total amount that she

perceived as the amount of the full contract to perform the calculation of lost profits. Thus, 10% should be the amount used to calculate GMP's damages.

### E. Synagro Should Not Be Permitted To Raise Its Request For Attorneys' Fees In Its Opposition To the Motion To Modify

As set forth in Local Rule 54.3(a), Synagro is required to file a motion for an award of attorneys' fees. Further, as seen before in Synagro's submittal of attorneys' fees, there are block billings as well as excessive hours expended on the preparation of the Opposition. Therefore, this Court should disregard and/or deny Synagro's further request for attorneys' fees.

## III. Conclusion

Based on the foregoing, the award of fees must be based on profits from contracts totaling $950,700.00, the amount of the implied contracts – not $3,529,422.00, which was the total amount of the Synagro-City Contract. Because HRS § 607-14 caps awardable fees at 25% of the amount sued for in a counterclaim, the maximum attorneys' fees that can be awarded to Synagro for prevailing on the Counterclaim is **$23,767.50**. As such, this Court should reject the Special Master's award of $53,214.82 and modify the award so that it does not exceed 25% of lost profits from $950,700.00 or **$23,767.50**.

Dated:      Honolulu, Hawaii, <u>February 23, 2007</u>.


                      <u>     /s/ Malia S. Lee           </u>
                      MICHAEL M. MARSH
                      TED N. PETTIT
                      JOHN D. ZALEWSKI
                      MALIA S. LEE
                      Co-Counsel for Defendant
                      **GMP HAWAI`I, INC.**