IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

SYNAGRO TECHNOLOGIES, INC.,   )   CIVIL NO. 04-00509 SPK-LEK
                             )
          Plaintiff,         )
                             )
     vs.                     )
                             )
GMP HAWAI`I, INC.,           )
                             )
          Defendant.         )
_____)

## REPORT OF SPECIAL MASTER ON PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES

Before the Court, pursuant to a designation by Senior United States District Judge Samuel P. King, is Plaintiff Synagro Technologies, Inc.'s ("Synagro") Amended Motion for Attorneys' Fees and Related Non-taxable Expenses ("Motion"), filed May 26, 2006, and Defendant GMP Hawai`i Inc.'s ("GMP") Objections to Amended Bill of Costs Filed Herein on May 26, 2006 ("Objections"), filed June 6, 2006. Synagro requests $93,214.87 in attorney's fees and $242.94 in non-taxable expenses, for a total of $93,457.81. Synagro's Amended Bill of Costs ("Bill of Costs"), filed May 26, 2006, seeks $5,088.96 in taxable costs.[1]

In accord with Rule 7.2(d) of the Local Rules of Practice of the United States District Court of the District of Hawai`i ("Local Rules"), the Court finds these matters suitable for disposition without a hearing. After reviewing the parties'

_____

[1] The Court notes that there was a calculation error in the addition of Synagro's copying costs.

submissions and the relevant case law, the Court FINDS and RECOMMENDS that the Motion should be GRANTED IN PART and DENIED IN PART.  The Court recommends that, after the entry of judgment, the district court award Synagro attorney's fees in the amount of $53,214.82 and taxable costs in the amount of $242.94, for a total of $53,457.76.  The Court further FINDS and RECOMMENDS that the Objections should be DENIED.  The Court recommends that, after the entry of judgment, the district court tax costs against GMP and in favor of Synagro in the amount of $5,088.96.

## BACKGROUND

The instant case arose from a dispute between Synagro and GMP concerning a wastewater treatment bioconversion facility ("the Project"), which Synagro contracted with the City and County of Honolulu ("the City") to design, construct, and operate.  GMP alleged that it had an oral agreement with Synagro that GMP would perform engineering design and construction management portions of the Project.  Synagro denied having entered into such an agreement.  Synagro subcontracted with various entities, including Andritz-Ruthner, Inc. ("Andritz") and CBI Walker ("CBI"), to perform various portions of the Project. These entities subcontracted with GMP, but GMP argued that the subcontracts were for less work than Synagro had promised GMP. According to Synagro, GMP refused to deliver engineering plans and drawings, as required by its subcontract with Andritz, unless

2

Synagro gave GMP further work or paid GMP more money.

On August 18, 2004, Synagro filed the Complaint in the instant action pursuant to diversity jurisdiction.[2]  Count I of the Complaint sought a declaratory judgment that Synagro had no contractual obligations to GMP.  Count II alleged that GMP's failure to perform its obligations under the Andritz subcontract constituted tortious interference with Synagro's contract with the City.  Synagro also sought punitive damages.  GMP filed its Answer and Counterclaim on September 2, 2004.  Count I of the Counterclaim alleged breach of implied contract and Count II sought punitive damages.  On August 31, 2004 and September 13, 2004, GMP delivered the drawings and plans to Andritz, effectively resolving the issues in the instant Complaint, and Synagro focused its efforts in this case on the Counterclaim.

On September 15, 2005, Synagro filed a renewed and supplemented motion for summary judgment on the Counterclaim.[3]  The district court granted that motion in an order dated January 11, 2006 ("Summary Judgment Order").

_____

[2] On August 13, 2004, Andritz filed a separate suit against GMP, Civil Number 04-00497 SOM-LEK, addressing GMP's failure to timely deliver the engineering plans and drawings.  Andritz and GMP settled this case, putting the terms on record on August 27, 2004 and filing a stipulation for dismissal on August 12, 2005.  Synagro was not a party to that action.

[3] Synagro filed a motion for summary judgment on January 3, 2005.  The district court denied that motion without prejudice to allow GMP to conduct discovery.

3

On March 30, 2006, the district court approved Synagro and GMP's Stipulation and Order to (1) Vacate Trial Date, Trial-Related Deadlines, (2) Set Brief on Plaintiff's Motion for Attorneys' Fees and Costs, and (3) Dismiss Claims ("Stipulation"). The Stipulation provides that, after the final decision on Synagro's motion for attorneys' fees and costs, Synagro and GMP "will dismiss the remaining claims in this action with prejudice." [Stipulation at ¶ 4.]

## I.    Motion for Attorney's Fees

In the instant Motion, Synagro argues that it is entitled to the attorney's fees and non-taxable expenses that it incurred pursuing its claim for declaratory relief and in defending against the Counterclaim.  Synagro argues that these claims are in the nature of assumpsit and that Synagro is entitled to attorney's fees and non-taxable costs pursuant to Haw. Rev. Stat. § 607-14.  Synagro claims it is the prevailing party on the Counterclaim pursuant to the Summary Judgment Order, which also "validated Synagro's overlapping claim" in Count I of the Complaint.  [Mem. in Supp. of Motion at 14.]

Synagro argues that, as required by § 607-14, the amount requested does not exceed twenty-five percent of the amount that GMP sought in the Counterclaim.  Synagro excluded the fees related to the non-assumpsit aspects of the case, including the tortious interference claim, and argues that the hourly rates

and number of hours requested are reasonable.  Finally, Synagro states that its non-taxable expenses were necessarily incurred in pursuing its declaratory judgment claim and in defending against the Counterclaim.

In its memorandum in opposition to the Motion, GMP apparently concedes that Synagro is entitled to some attorney's fees in this case, in particular those incurred in connection with Count I of the Counterclaim.  [Mem. in Opp. at 6.]  GMP, however, argues that $43,079.93 of the requested fees are not compensable because Synagro's counsel either did not adequately describe the work performed or redacted so much information from the description that meaningful review is impossible.  Further, GMP argues that some of the work entries do not appear to be related to this case, let alone to the assumpsit claims.  GMP also disputes Synagro's entitlement to fees for work counsel did on the Andritz case because that is a separate proceeding.

GMP argues that Synagro's claim for declaratory relief is not in the nature of assumpsit because Synagro sought to prove that there was no contractual relationship between it and GMP. GMP also argues that Synagro's tortious interference claim and GMP's claim for punitive damages are not claims in the nature of assumpsit.  GMP asserts that the courts must apportion the requested attorney's fees between the assumpsit claims and the non-assumpsit claims.  GMP suggests an apportionment of twenty-

five percent of the fees to Count I of the Counterclaim.[4]

Finally, GMP argues that Synagro was mistaken in its description of the amount of damages sought in Count I of the Counterclaim. Synagro cited the $2,683,422.00 for the design contract and $846,000.00 for the construction management contract, but GMP states that these amounts refer to figures from Synagro's contract with the City and are unrelated to the amounts claimed by GMP. GMP asserts that the value of the services it was to perform were: $254,469.00 for engineering services; and $696,231.00 for construction management services, for a total of $950,700.00. Of that amount, GMP's damages, including lost profits, would be approximately ten percent of the total value of the contracts, or $95,700.00. Thus, the maximum that Synagro could recover under § 607-14 is twenty-five percent of that amount, or $23,767.50.

In its reply memorandum, Synagro first argues that counsel sufficiently described their work and that the redacted material was attorney-client privilege or work product material.[5] Synagro also argues that it is entitled to recover the fees

_____

[4] GMP argues that there are four claims at issue: Synagro's claim for declaratory relief; Synagro's claim for tortious interference; Count I of the Counterclaim, which alleged breach of an implied contract; and Count II of the Counterclaim, which sought punitive damages.

[5] On September 14, 2006, Synagro filed an ex parte motion to file an unredacted copy of counsel's billing summaries under seal. This Court denied the motion in an October 2, 2006 order.

6

incurred in pursuing the declaratory relief claim because it is inextricably intertwined with the assumpsit claims. Further, Synagro points out that it has already deducted a portion of the work performed on the Complaint to account for work on non-assumpsit issues. Synagro also argues that GMP's position that the declaratory relief claim sought a finding that there was no contractual relationship is contrary to GMP's earlier position that GMP had a limited contract with Synagro to provide a raw sludge sample. Thus, Synagro's declaratory relief claim arguably seeks an interpretation of an existing contract.

Synagro contends that it is entitled to attorney's fees incurred defending against the punitive damages "claim" in the Counterclaim. Under Hawai`i law, punitive damages are not recoverable in a breach of contract action. Further, even in actions where punitive damages are available, they are a remedy rather than a separate claim for relief. The punitive damages claim is also inextricably intertwined with the assumpsit claims.

Synagro asserts that it is entitled to one-half of the fees incurred while working with counsel in <u>Andritz</u>. That work was inextricably intertwined with the assumpsit claims in this case because GMP refused to deliver the plans and drawings as a result of its insistence that it had a contract with Synagro. Synagro argues that its participation in <u>Andritz</u> was necessary to the prosecution of Count I of the Complaint. Further, Synagro

7

argues that its request is reasonable because it is only seeking half of the _Andritz_ fees incurred prior to the filing of the Complaint in this case.

Synagro also argues that the fees it incurred for discovery and settlement efforts do not have to be apportioned between the Complaint and the Counterclaim. GMP delivered the plans and designs to Andritz shortly after the filing of the Complaint. Synagro therefore focused its efforts in this case on the assumpsit claims because GMP ceased interfering with Synagro's contract with the City. Synagro argues that the remaining claims in the Complaint and Counterclaim were all in the nature of assumpsit.

Finally, Synagro notes that GMP's pleadings and deposition testimony indicated that it was seeking enforcement of the implied contract and/or money damages ranging from $950,700.00 and $3,529,422.00. GMP's Counterclaim made it clear that lost profits were only one category of the damages it was seeking. Further, GMP's representative testified during deposition that the profits GMP sought totaled $3,529,422.00. Synagro notes that neither GMP's pleadings nor its deposition testimony ever mentioned the fact that it was only seeking ten percent of the reported profits.

8

## II.  Bill of Costs

Synagro seeks $5,088.96 in taxable costs pursuant to Federal Rules of Civil Procedure 54(d)(1) and Local Rules 54.2 and 54.3.  Synagro again argues that the Summary Judgment Order rendered it the prevailing party as to the Counterclaim and the declaratory judgment claim.

In its Objections, GMP argues that, if Synagro's entitlement to taxable costs is based on the Summary Judgment Order, the Bill of Costs is untimely because Synagro failed to file it within thirty days of the order.  In the alternative, the Bill of Costs is premature because the court has not entered final judgment in this case.  GMP also argues that, because the Stipulation did not include an agreement regarding taxable costs, Synagro must bear its own taxable costs.[6]

Synagro filed a reply in support of the Bill of Costs on June 14, 2006.  The Local Rules, however, do not provide for the filing of a reply in support of a bill of costs.  See Local Rule LR54.2(d)1. ("Within eleven (11) days after a Bill of Costs

---

[6] Insofar as GMP took the position that the Stipulation did not allow for the taxation of costs, GMP did not raise substantive objections to the Bill of Costs.  GMP stated that, if this Court were inclined to consider the merits of the Bill of Costs, it would submit a supplemental memorandum in opposition on or by June 23, 2006.  GMP, however, did not file any further objections to the Bill of Costs.  Further, this Court is under no obligation to give the parties advance rulings on certain issues, nor is the Court required to allow the parties to file supplemental memoranda.  GMP could have presented their substantive arguments in the Objections.

is served, the party against whom costs are claimed must file and serve any specific objections . . . . [T]he Clerk of Court will refer <u>both the Bill of Costs and objections</u> to the court for a determination of taxable costs." (emphasis added)).  The Court therefore will not consider the reply.

**DISCUSSION**

I.  **Attorneys' Fees**

A federal court sitting in diversity must apply state law in determining whether the prevailing party is entitled to attorney's fees.  <u>See</u> <u>Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.</u>, 250 F.3d 1234, 1236 (9th Cir. 2001). Under Hawai`i law, "[o]rdinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement."  <u>Stanford Carr Dev. Corp. v. Unity House, Inc.</u>, 111 Hawai`i 286, 305, 141 P.3d 459, 478 (2006) (citation and quotation marks omitted).

A.  **Applicability of Haw. Rev. Stat. § 607-14**

Synagro seeks an award of fees pursuant to Hawai`i Revised Statutes § 607-14, which states, in pertinent part:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney

10

> spent on the action and the amount of time the
> attorney is likely to spend to obtain a final
> written judgment, or, if the fee is not based on
> an hourly rate, the amount of the agreed upon fee.
> The court shall then tax attorneys' fees, which
> the court determines to be reasonable, to be paid
> by the losing party; provided that this amount
> shall not exceed twenty-five per cent of the
> judgment.

Haw. Rev. Stat. § 607-14.  A court awarding attorneys' fees
pursuant to § 607-14 must apportion the fees claimed between
assumpsit and non-assumpsit claims, if practicable.  See Blair v.
Ing, 96 Hawai`i 327, 332, 31 P.3d 184, 189 (2001).

### 1.    Prevailing Party

Synagro argues that it is the prevailing party as to
both the Complaint and the Counterclaim, pursuant to the Summary
Judgment Order.  Section 607-14 states that a reasonable
attorney's fee shall be taxed in favor of the prevailing party
and against the losing party in an action in the nature of
assumpsit.  The Hawai`i courts have noted that "'[i]n general, a
party in whose favor judgment is rendered by the district court
is the prevailing party in that court, plaintiff or defendant, as
the case may be. . . .'"  MFD Partners v. Murphy, 9 Haw. App.
509, 514, 850 P.2d 713, 716 (1992) (quoting 6 J. Moore, W.
Taggart & J. Wicker, Moore's Federal Practice ¶ 54.70[4], at
54-323-54-324, (2d ed. 1992)) (some alterations in original); see
also Village Park Cmty. Ass'n v. Nishimura, 108 Hawai`i 487, 503,
122 P.3d 267, 283 (Ct. App. 2005) (quoting MFD Partners).  Thus,

11

under Hawai`i law, in order to be deemed the prevailing party for purposes of § 607-14, Synagro must have obtained final judgment in its favor. Accord Kamalu v. Paren, Inc., 110 Hawai`i 269, 278, 132 P.3d 378, 387 (2006) ("In sum, a prevailing party having 'obtained' 'a final judgment' 'against the State,' we hold that the court may award the prevailing party its 'actual disbursements' pursuant to [Haw. Rev. Stat.] §§ 607-9 and 607-24 . . . ."). Insofar as no judgment has been issued in this case, Synagro's Motion is premature.

The district court granted summary judgment in Synagro's favor on Count I and Count II of the Counterclaim, the only claims alleged in the Counterclaim. Once final judgment is entered pursuant to the Summary Judgment Order, Synagro will be the prevailing party on the Counterclaim. According to the Stipulation, once there is a final decision on the instant Motion, Synagro will dismiss its claims in the Complaint with prejudice. [Stipulation at ¶ 4.] Under Hawai`i law, the voluntary dismissal of a plaintiff's action "is sufficient to deem a defendant to be the prevailing party and the plaintiff the losing party." Ranger Ins. Co. v. Hinshaw, 103 Hawai`i 26, 31, 79 P.3d 119, 124 (2003). This Court finds that, even after final judgment is entered pursuant to the Stipulation, Synagro will not be the prevailing party as to the claims in the Complaint. Synagro, therefore, is not entitled to attorney's fees incurred

in connection with the Complaint.

2.    **Assumpsit Claims**

Once the entry of final judgment renders Synagro the prevailing party on the Counterclaim, Synagro will be entitled to the attorney's fees it incurred in connection with the defense of the Counterclaim, if the claims therein are in the nature of assumpsit. "Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." 808 Dev., LLC v. Murakami, 111 Hawai`i 349, 366, 141 P.3d 996, 1013 (2006) (citation, emphases, and quotation marks omitted).

a.    **The Counterclaim**

Count I of the Counterclaim alleged that Synagro breached an implied contract with GMP. GMP sought monetary damages. [Counterclaim at 5.] This Court finds that Count I of the Counterclaim is in the nature of assumpsit.

In Count II of the Counterclaim, GMP sought punitive damages based upon a "willful and deliberate repudiation of its implied contract with Defendant." [Counterclaim at ¶ 16.] As noted by the district court, "it is now well established in Hawai`i law that 'punitive damages are not recoverable for breach of contract.'" [Summary Judgment Order at 8 (quoting Matsuda v. Wada, 101 F. Supp. 2d 1315, 1325 n.6 (D. Hawai`i 1999)) (some

13

citations omitted).] Further, under Hawai`i law, a prayer for punitive damages is not an independent claim; it is merely incidental to an underlying cause of action. See Ross v. Stouffer Hotel Co. (Hawai`i) Ltd., Inc., 76 Hawai`i 454, 466, 879 P.2d 1037, 1049 (1994). Thus, although the Counterclaim may have presented the request for punitive damages as a separate count, it was a prayer for relief incidental to Count I. The only substantive claim in the Counterclaim was Count I and therefore the entire Counterclaim was in the nature of assumpsit. This Court finds that, pursuant to § 607-14, Synagro is entitled to attorney's fees that incurred in the defense of the Counterclaim.

### b. The Complaint

For the sake of completeness, this Court will also address whether the claims in the Complaint were in the nature of assumpsit. Count II of the Complaint alleged tortious interference with economic advantage. As this is a tort claim, Synagro concedes that it is not in the nature of assumpsit and does not seek fees associated with this claim. [Mem. in Supp. of Motion at 16 n.9; Reply at 11.] In Count I of the Complaint, Synagro sought a declaratory judgment that "it has no contractual obligations to GMP." [Complaint at ¶ 34.]

Synagro argues that it is entitled to attorney's fees associated with Count I of the Complaint because it is inextricably intertwined with the assumpsit claims in the

14

Counterclaim.  Further, Synagro argues that "the Hawai`i Supreme Court has recognized that a declaratory judgment action related to the nature and extent of a contractual relationship is an action in assumpsit . . . ." [Mem. in Supp. of Motion at 12 (citing Ranger Ins. Co. v. Hinshaw, 103 Hawai`i 26, 33, 79 P.3d 119, 126 (2003)).]  Synagro's reliance on Ranger is misplaced.

In Ranger, Kyoko Takeda booked a skydiving session with Skydive Academy of Hawai`i ("Skydive").  Before taking off, Skydive took the group sightseeing.  During the tour, Takeda left the bus and rode with Juan Rivas, a Skydive employee, on his motorcycle.  Rivas rear-ended a motor vehicle driven by David Reardon.  Takeda sustained injuries and filed suit against Rivas, Skydive, and Reardon.  At the time of the accident, Skydive was insured by Ranger Insurance Company ("Ranger") and State Farm Mutual Automobile Insurance Company ("State Farm").  State Farm provided Skydive's defense and Ranger provided Rivas' defense, subject to reservations of rights.  Ranger also agreed to provide Skydive's defense as an excess insurer, subject to a reservation of rights.  During the pendency of Takeda's case, both Ranger and State Farm filed declaratory judgment actions.  Ranger's action sought a determination that Skydive's policy did not cover the claims alleged in Takeda's complaint and that it had no duty to indemnify Skydive.  In addition, Ranger sought reimbursement of attorney's fees and costs it incurred in the

defense of Takeda's case.  See Ranger, 103 Hawai`i at 29-30, 79 P.3d at 122-23.  In holding that Ranger's declaratory action was in the nature of assumpsit, the Hawai`i Supreme Court noted that the suit sought interpretation of the insurance contract between Skydive and Ranger and that Ranger sought consequential damages, namely the reimbursement of attorney's fees and costs expended in the defense of the Takeda case.  See id. at 33-34, 79 P.3d at 126-27.

The instant declaratory action is distinguishable from that in Ranger because Synagro did not seek interpretation of a contract between it and GMP.  Synagro's position was that there was no contract with GMP.  Synagro notes that, at other points during this case, GMP has argued that it had a limited contract with Synagro to provide a raw sludge sample.  [Reply at 11.]  The declaratory action could be construed as a request for interpretation of the scope of that contract.  Hawai`i courts, however, determine whether an action is in the nature of assumpsit by looking at the facts and issues in the complaint and the relief sought.  See Ranger, 103 Hawai`i at 33, 79 P.3d at 126.  This Court therefore need not consider arguments that GMP made at other points during this litigation.  The Complaint alleges that there was no contractual relationship between Synagro and GMP.  The Complaint includes a prayer for damages, but these refer to damages flowing from the tortious interference

16

claim.  GMP's claim that it did have a contract with Synagro was the reason for its alleged tortious interference with Synagro's contract with the City, but the damages that Synagro allegedly suffered stemmed from the interference, not the contract dispute.

The Count I of the Complaint does not seek "recovery of damages for non-performance of a contract, either express or implied, written or verbal, [or] quasi contractual obligations." See 808 Dev., 111 Hawai`i at 366, 141 P.3d at 1013 (citation, emphasis, and quotation marks omitted).  This Court therefore finds that Count I of the Complaint is not in the nature of assumpsit.

Even assuming, *arguendo*, that Synagro is the prevailing party as to the Complaint, this Court finds that Synagro is not entitled to attorney's fees under § 607-14 because neither of the claims in the Complaint are in the nature of assumpsit.

**B.    Calculation of Fees**

Having found that Synagro is entitled to attorney's fees associated with the defense of the Counterclaim, this Court turns to the amount of the entitlement.

Hawai`i courts calculate reasonable attorneys' fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See DFS Group L.P. v. Paiea Props., 110 Hawai`i 217, 222, 131 P.3d 500, 505 (2006).  The court must

17

determine a reasonable fee by multiplying the number of hours reasonably expended by a reasonable hourly rate. See id. at 222-23, 131 P.3d at 505-06. In addition, Hawai`i courts may consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.

Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai`i, 106 Hawai`i 416, 435, 106 P.3d 339, 358 (2005) (citations omitted). These factors, however, are merely guides; courts need not consider them in every case. See id. In certain types of cases, some of these factors may justify applying a multiplier to the "lodestar" amount. See Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai`i, 92 Hawai`i 432, 442, 992 P.2d 127, 137 (2000).

Synagro requests the following amounts for work performed in connection with this case through April 2006:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| Paul Alston | 64.2 | $450 | $28,890.00 |
| Mei-Fei Kuo | 392.7 | $135 | $53,014.50 |
| Shellie Park-Hoapili | 44.3 | $125 | $ 5,537.50 |
| Danie Kakazu | 25.3 | $120 | $ 3,036.00 |
| Noreen Kanada | 20.3 | $100 | $ 2,030.00 |
| Kelliann Shimote | 1.3 | $ 75 | $    97.50 |
| Samson Lee | 16.5 | $ 30 | $   495.00 |
| Jya-Ming Bunch | 19.8 | $ 30 | $   594.00 |

|  |  |
|--|--|
| Subtotal | $93,694.50 |
| Half of Andritz Fees | (4,617.00) |
| Non-assumpsit Fees | (292.50) |
| Courtesy Discount | (4,410.50) |
| Legal Services | $84,374.50 |
| Hawai`i General Excise Tax @ 4.16% | $ 3,509.98 |
| **Total** | **$87,884.48** |

[Exh. F to Motion.]  In addition, from May 1, 2006 to May 26, 2006, Synagro incurred an additional $5,330.30 for work related to the recovery of attorney's fees, expenses, and costs.  This amount represents $5,117.50 in fees and $212.89 in state excise tax.  [Motion, Decl. of Paul Alston at ¶ 4.]  Thus, Synagro's total request is $93,214.78.  Synagro, however, did not submit any supporting documentation for the May 2006 fees.

Mr. Alston has been practicing law in Hawai`i since 1971 and Ms. Kuo has been practicing since 2000. Their hourly rates in this matter are less than their current normal hourly rates of $515 for Mr. Alston and $165 for Ms. Kuo. Ms. Park-Hoapili has been admitted to practice in Hawai`i since 2003. Ms. Kakazu is a paralegal with nineteen years of experience. Ms. Kanada has eleven years of experience as a paralegal and fourteen years of experience as a legal secretary. Ms. Shimote is a paralegal with one and a half years of experience. Jya-Ming Bunch and Samson Lee are document analysts. [Motion, Decl. of Paul Alston at ¶ 16.]

### 1.   Reasonable Hourly Rate

The Hawai`i courts consider the reasonable hourly rate in a manner virtually identical to the traditional lodestar formulation and some courts have considered federal law in determining a reasonable hourly rate. See, e.g., Reiche v. Ferrera, No. 24449, 2003 WL 139608, at *8 (Hawai`i Ct. App. Jan. 16, 2003) ("The reasonable hourly rate is that prevailing in the community for similar work." (citing United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988)). But see DFS Group, 110 Hawai`i at 223, 131 P.3d at 506 (determining a reasonable hourly rate by calculating the average of the four requested rates). This Court therefore finds that federal case law on the determination of a reasonable hourly rate is

20

instructive in the instant case.

In determining what is a reasonable hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.  See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See id.; Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"); see also Chun, 106 Hawai`i at 435, 106 P.3d at 358 (listing "the customary charges of the Bar for similar services" as a factor that may be considered).  It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

Synagro submitted a list from the Pacific Business News 2006 Book of Lists in support of its argument that the requested rates are reasonable.  [Exh. G to Motion.]  Further, this Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation.  Based on this Court's knowledge of the prevailing rates and the attorneys' submissions in this case,

21

this Court finds that the following requested hourly rates are manifestly reasonable: $135 for Ms. Kuo; $125 for Ms. Park-Hoapili; and $75 for Ms. Shimote. The Court finds that the following hourly rates are unreasonable: $450 for Mr. Alston; $120 for Ms. Kakazu; and $100 for Ms. Kanada. The Court finds that the following are reasonable rates for those persons: Mr. Alston - $300; Ms. Kakazu - $85; and Ms. Kanada - $80. Courts in this district have previously awarded Mr. Alston $300 per hour. See Abrams, et al. v. Di Carlo, et al., CV 95-00667 DAE-FIY, Order Granting in Part and Denying in Park Plaintiffs Arnold R. Abrams and Richard I. Blum's Motion for Sanctions Against Defendants and/or Their Counsel Filed November 5, 1998 (filed Feb. 4, 1999). Synagro has not submitted any evidence which supports an hourly rate higher than previously awarded.[7]

The Court finds that all of the time expended by Jya-Ming Bunch and Sampson Lee was clerical in nature. Work that is clerical in nature should be subsumed a law firm's overhead. This Court will therefore exclude all of their fees.

---

[7] The list from the Pacific Business news merely summarizes the range of rates changed by various law firms in the district. It is not evidence of "the customary fee for like work prevailing in the attorney's community[.]" See Local Rule 54.3(d). For example, Synagro could have submitted declarations by attorneys from other law firms attesting that Mr. Alston's rates are reasonable for an attorney of his experience and expertise doing the type of work Mr. Alston did in this case.

22

2.  **Reasonable Hours Spent**

For the reasoning stated in Section I.B.1., this Court finds federal case instructive on the issue of the reasonable number hours expended on the instant case.  Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Hawai`i 1993) (citations omitted); see also Sharp v. Hui Wahine, 49 Haw. 241, 247, 413 P.2d 242, 246 (1966) (the party requesting fees has the burden to prove that the requested fees were reasonably and necessarily incurred).  The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  See Tirona, 821 F. Supp. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987), cert. denied, 484 U.S. 927 (1987)).  This Court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).

23

a.    **The Andritz Case**

Synagro argues that the work counsel performed in connection with Andritz is inextricably intertwined with the work on the assumpsit claims in this case.  The Court disagrees.  While the issues in the two cases overlapped and counsel's work on Andritz may have contributed to the resolution of issues in the instant case, this Court cannot award attorney's fees for work performed in connection with another case.  This is particularly so because the vast majority of the work on Andritz was performed before the Complaint in the instant case was even filed.  This Court therefore finds that all of the time that counsel spent on work in Andritz is not compensable.  In addition to the work performed before the filing of the Complaint in the instant case, the Court will also deduct other time entries which were related solely to Andritz.[8]  The Court therefore reduces Mr. Alston's hours by 20.5 and Ms. Kuo's hours by 0.5.

b.    **Non-assumpsit Fees**

Insofar as this Court has found that Synagro is not the prevailing party on the Complaint and, in the alternative, that the claims in the Complaint were not in the nature of assumpsit, the Court finds that all of the time counsel spent on the

---

[8] The Court notes that there were some time entries where counsel reviewed Andritz filings to conduct research for matters in the instant case.  The Court finds those entries to be compensable.

24

Complaint is not compensable. The Court will reduce Mr. Alston's time by 2.3 hours and Ms. Kuo's time by 10.2 hours for work done on the Complaint. The Court, however, declines to reduce the remainder of counsel's hours to account for work done on non-assumpsit claims. By mid-September 2004, GMP had delivered the plans and drawings to Andritz, effectively resolving the concerns which prompted Synagro's Complaint. Synagro thereafter focused its efforts in this litigation on the Counterclaim, which was in the nature of assumpsit.

### c. **Clerical Tasks**

As stated above, work that is clerical in nature should be subsumed in a law firm's overhead and is not compensable in a motion for attorney's fees. Ms. Kuo had numerous entries for telephone calls to the courtroom managers about the scheduling of various hearings and court conferences. The courtroom managers are part of the office of the Clerk of the Court. Telephone conferences with courtroom managers are deemed clerical in nature and are not compensable. This Court therefore deducts 2.0 hours from Ms. Kuo's time entries. Ms. Kakazu and Ms. Kanada also billed time for various clerical tasks including the maintenance of internal files and indexes. This Court will reduce Ms. Kakazu's time by 2.0 hours and Ms. Kanada's time by 4.0 hours.

d.  **May 2006 Work**

Synagro requests a total of $5,330.30 for legal fees, with tax, incurred from May 1, 2006 to May 26, 2006.  First, Synagro did not submit any supporting documentation for that period.  This Court therefore cannot determine whether those fees were reasonably and necessarily incurred.  Further, based on this Court's knowledge of the case, those fees were apparently incurred in connection with the Amended Motion for Attorneys' Fees and Related Non-Taxable Costs and the Amended Bill of Costs. The pre-May 2006 billings already include entries for work on the original motion for attorney's fees and the original bill of costs.  The amended filings increased Synagro's requests to include fees, expenses, and costs associated with its claim for declaratory judgment and the motions for attorney's fees and bills of costs.  [Mem. in Supp. of Motion at 1.]  Synagro states that, "[a]fter the original motion was filed, Synagro discovered a case from the Hawai`i Supreme Court, which held that claim [sic] for a declaratory judgment refuting the existence of contractual obligations is in the nature of assumpsit . . . ." [Id. at 1-2.]  That newly discovered case was Ranger Insurance Co. v. Hinshaw, 103 Hawai`i 26, 79 P.3d 119 (2003).  Synagro could have "discovered" Ranger prior to filing the original motion for attorney's fees.  Similarly, Synagro could have determined that its time incurred in the pursuit of attorney's

26

fees, expenses, and taxable costs was recoverable before filing the original motion. This Court will not allow Synagro to recover for the preparation of the amended motion for attorney's fees and bill of costs, which were apparently prompted by counsel's failure to perform adequate research before filing the round of documents. Even if Synagro had submitted supporting documentation for the May 2006 fees, this Court would find that they are not compensable.

### e.    **Block Billing and Excessive Hours**

A substantial portion of counsel's time entries are in the block billing format. "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted). Block billing entries generally fail to specify a breakdown of the time spent on each task. This practice makes it difficult to determine whether counsel spent a reasonable amount of time on a particular task. This Court will therefore reduce Mr. Alston's, Ms. Kuo's, and Ms. Park-Hoapili's hours by approximately five percent to account for the fact that their block billing prevents this Court from determining whether

the hours expended were reasonable.[9]  The Court will deduct: 3.0
hours from Mr. Alston; 20.0 hours from Ms. Kuo; and 2.0 hours
from Ms. Park-Hoapili.

In addition, Ms. Kuo billed almost 400 hours working on
this case, which was resolved on summary judgment and did not
involve unusually complex factual or legal issues.  Even with the
other deductions found by this Court, her time is excessive.  The
Court will therefore deduct an additional 50.0 hours from
Ms. Kuo's time.

**f.    Inadequately Described Entries**

Counsel's time entries are heavily redacted.  For
example, many of the entries for telephone conferences and
correspondence are redacted so that there is no indication of the
subject of the communication.  Many of the research entries are
redacted so that there is no indication of the topic.  Synagro
stated that the redactions were necessary to prevent disclosure
of attorney-client privilege or work product material.  GMP
objected, arguing that the redactions made it impossible for GMP
to evaluate the reasonableness of the fees.  This Court agrees
that the redactions significantly hampered review of the Motion.

---

[9] The Court notes that the support staff's time entries were
also in block billing format, but, insofar as their individual
time entries were not as lengthy, the Court finds that their
block billing is not so problematic as to warrant a percentage
reduction.

Synagro could have, and did in other entries, included more information about the work performed without divulging attorney-client privilege or work product material. For example, a description of a telephone conference with a client could state "regarding settlement offer". It would not have to divulge attorney-client privilege material by including the terms of the offer or the attorney's and client's opinions about the offer. An example of an adequately described research notation in Synagro's request is "research re FRCP Rule 11 sanctions, 12(b)(6) review standard, HRS provision re statute of frauds . . . ." [Exh. F to Motion at 39.] GMP's counsel and this Court expended significant time reviewing the redacted version. This Court therefore did not allow Synagro to supplement the Motion with an unredacted version of counsel's billing summaries filed under seal. Based on this Court's knowledge of what is required to litigate cases similar to this one, this Court is able to make an estimation of the number of hours reasonably expended based on the redacted submission. This Court will, however, reduce the attorneys' times by approximately fifteen percent to account for inadequately described entries. See Local Rule 54.3(d)2. ("If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly."). The Court will deduct 9.0 hours from Mr. Alston, 60.0 hours from Ms. Kuo, and 6.0 hours from

Ms. Park-Hoapili.

### 3.   **Total Award**

Based on the foregoing, this Court finds that Synagro has established the appropriateness of the following attorney's fees incurred in the defense of the Counterclaim:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| Paul Alston | 31.4 | $300 | $ 9,420.00 |
| Mei-Fei Kuo | 250.0 | $135 | $33,750.00 |
| Shellie Park-Hoapili | 36.3 | $125 | $ 4,537.50 |
| Danie Kakazu | 23.3 | $ 85 | $ 1,980.50 |
| Noreen Kanada | 16.3 | $ 80 | $ 1,304.00 |
| Kelliann Shimote | 1.3 | $ 75 | $    97.50 |
| | | Subtotal | $51,089.50 |
| | Hawai`i General Excise Tax @ 4.16% | | $ 2,125.32 |
| | | **Total** | **$53,214.82** |

This Court finds it unnecessary to adjust the award amount based on the factors articulated in Chun.  See 106 Hawai`i at 435, 106 P.3d at 358.

Section 607-14 limits the award of attorney's fees to twenty-five percent of the judgment.  Attorney's fees assessed pursuant to § 607-14 are "assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment."  Haw. Rev. Stat. § 607-14.  The Counterclaim alleges

that Synagro and GMP had an implied contract that GMP was to provide engineering design and construction management services for the Project. [Counterclaim at ¶ 5.] The Counterclaim states that the design portion of the contract was worth approximately $2,683,422.00 and the construction management portion was worth approximately $846,000.00. It asserted that GMP was entitled to damages, including lost profits from the implied contract. [Id. at ¶¶ 12-14.] Thus, the total claimed value of the alleged contract was $3,529,422.00. The parties dispute whether GMP sought this entire amount as lost profits. Even if this Court accepts GMP's assertion that it only sought ten percent of the value of the contract as lost profits, that amount is $352,942.20 and twenty-five percent of that is $88,235.55. The recommended award of attorney's fees is therefore within the twenty-five percent limit imposed by § 607-14. This Court RECOMMENDS that the district court award Synagro attorney's fees in the amount of $53,214.82, upon the entry of judgment on the Counterclaim.

## II.    Costs

### A.    Non-taxable Costs under § 607-14

Although § 607-14 does not expressly authorize an award of costs in addition to attorney's fees, Hawai`i courts award costs pursuant to § 607-14. See, e.g., Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 87 Hawai`i 37, 52, 951 P.2d 487, 502 (Hawai`i 1998) (noting that appellate courts have

jurisdiction to award attorney's fees and costs on appeal

pursuant to § 607-14).

Synagro requests the following non-taxable costs

pursuant to § 607-14:[10]

| | |
|---|---|
| Messenger services | $147.00 |
| Long-distance telephone charges | $ 11.16 |
| Facsimiles | $  2.00 |
| Postage | $ 82.78 |
| **Total** | **$242.94** |

[Mem. in Supp. of Motion at 23; Exh. H to Motion (itemization of

costs within each category).]  Synagro states that it necessarily

incurred these expenses in pursuing its declaratory judgment

---

[10] Synagro asserts that it is entitled to costs pursuant to Haw. Rev. Stat. § 607-9, which states, in pertinent part:

> No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.
> All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.  In determining whether and what costs should be taxed, the court may consider the equities of the situation.

Section 607-9, however, apparently describes the costs that may be awarded while other statutes and rules provide the authority to award costs.  See Collins v. South Seas Jeep Eagle, 87 Hawai`i 86, 90, 952 P.2d 374, 378 (1997) (stating that "[a]llowable taxable 'costs' are defined in [Haw. Rev. Stat.] § 607-9" in the context of Haw. Rev. Stat. § 378-5(c)); see also Schefke v. Reliable Collection Agency, Ltd., 96 Hawai`i 408, 459, 32 P.3d 52, 103 (Hawai`i 2001) (stating that § 607-9 gives courts discretion in determining what costs should be awarded).

claim and defending against the Counterclaim.  [Mem. in Supp. of Motion at 24.]  Section 607-9 expressly authorizes long-distance telephone charges and postage, and messenger and facsimile charges are expenses that are reasonably and necessarily incurred during litigation.

The Court notes that Synagro does not provide any information about what documents were sent to whom or who counsel called long-distance.  This makes it difficult to determine whether the costs were reasonably and necessarily incurred.  However, insofar as Synagro's counsel stated in a declaration that the costs were reasonably and necessarily incurred and GMP does not contest the requested costs, this Court finds that the amount requested is manifestly reasonable.  Further, all of the costs were incurred after Synagro focused its efforts in this case on the Counterclaim, which is in the nature of assumpsit.  The Court therefore finds that all of the requested costs are compensable under § 607-14.  This Court RECOMMENDS that the district court award Synagro's non-taxable costs in full, upon the entry of final judgment on the Counterclaim.  The Court notes that the recommended award of attorney's fees and costs does not exceed twenty-five percent of the judgment.  See DFS Group, 110 Hawai`i at 220, 131 P.3d at 503 ("§ 607-14 also provides that an award of costs and fees 'shall not exceed twenty-five per cent of the judgment.'").

**B.**    **Taxable Costs under Rule 54(d)(1)**

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Fed. R. Civ. P. 54(d)(1). The Local Rules provide that "[t]he party entitled to costs shall be the prevailing party in whose favor judgment is entered, or shall be the party who prevails in connection with a motion listed in LR54.2(b)." Local Rule LR54.2(a).

**1.**    **Prevailing Party**

GMP objects to the Bill of Costs, arguing that, if the Summary Judgment Order rendered Synagro the prevailing party, Synagro waived its right to taxable costs by failing to file within thirty days of that order. The Local Rules require that, "[u]nless otherwise ordered by the court, a Bill of Costs shall be filed and served within thirty (30) days of the entry of judgment [or] the entry of an order denying a motion filed under Fed. R. Civ. P. 50(b), 52(b), or 59 . . . ." Local Rule LR54.2(b). The Summary Judgment Order is not an order denying a Rule 50(b), 52(b), or 59 motion. Thus, the thirty-day period did not run from the entry of the Summary Judgment Order. Insofar as no judgment has been entered, the Bill of Costs is premature. Pursuant to the Summary Judgment Order, judgment will eventually be entered in favor of Synagro on the Counterclaim. Pursuant to

34

the Stipulation, Synagro will dismiss the claims in the
Complaint.   This Court must therefore determine whether Synagro
will be the prevailing party for purposes of Rule 54(d)(1),
assuming that the corresponding final judgment is entered.

The United States Supreme Court has stated that the
term "prevailing party" is a legal term of art.   See Buckhannon
Bd. & Care Home, Inc. v. W. Vir. Dep't of Health & Human Res.,
532 U.S. 598, 603 (2001).   The Supreme Court noted that Black's
Law Dictionary defines "prevailing party" as "'[a] party in whose
favor a judgment is rendered, regardless of the amount of damages
awarded <in certain cases, the court will award attorney's fees
to the prevailing party>. - Also termed successful party.'"   Id.
(quoting Black's Law Dictionary 1145 (7th ed. 1999)) (alterations
and emphasis in original).   This definition was supported by
prior Supreme Court cases.   Thus, "enforceable judgments on the
merits and court-ordered consent decrees create the 'material
alteration of the legal relationship of the parties' necessary to
permit an award of attorney's fees."   Id. at 604 (quoting Texas
State Teachers Ass'n v. Garland Independent Sch. Dist., 489 U.S.
782, 792-93 (1989)) (some citations omitted).   For purposes of an
award of attorney's fees, a prevailing party is one who succeeds
on any significant issue in the case and achieves some of the
benefit sought in the litigation.   See Farrar v. Hobby, 506 U.S.
103, 109 (1992).   The Ninth Circuit has applied the Buckhannon

analysis to the determination who is a "prevailing party" for purposes of Rule 54(d)(1).  See Miles v. California, 320 F.3d 986, 989 (9th Cir. 2003).

Synagro clearly prevailed on the Counterclaim.  Synagro arguably achieved some of the benefit it sought in the Complaint because it obtained GMP's compliance with its contractual obligations when GMP submitted the drawings and plans to Andritz. Synagro, however, did not obtain a judgment or court order which required GMP to do so.  Thus, Synagro is not considered the prevailing party on the Complaint.  In prevailing on the Counterclaim, Synagro did succeed in what became the significant issue in the litigation.  This Court therefore finds that Synagro is the prevailing party for purposes of Rule 54(d)(1).  Although some of the requested costs relate to the Complaint, it is not necessary to exclude these costs because there is no rule requiring courts to apportion taxable costs based on the relative success of the parties.  See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1348 (Fed. Cir. 2006).  "In fact, apportioning costs according to the relative success of parties is appropriate only under limited circumstances, such as when the costs incurred are greatly disproportionate to the relief obtained."  Id. (citing 10 James Wm. Moore et al., Moore's Federal Practice § 54.101[1][b] (3d ed. 2006)).  The Court finds that the circumstances of the case and

the amount of costs requested do not warrant apportionment.

GMP also argues that the Stipulation does not address taxable costs and therefore Synagro must bear its own taxable costs. The Court disagrees. The Stipulation does not provide that the parties will bear their own taxable costs and, under Rule 54(d)(1), courts generally award taxable costs to the prevailing party as a matter of course. The Stipulation addresses the timing of the filing of Synagro's motion for attorney's fees, and presumably non-taxable, costs. Nothing in the language of the Stipulation indicates that parties agreed to bear their own taxable costs. The Court now turns to the determination of which costs are taxable.

### 2.    Determination of Taxable Costs

A district court may exercise discretion in allowing or disallowing reimbursement of the costs of litigation, but it may not tax costs beyond those enumerated in 28 U.S.C. § 1920. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987), superseded on other grounds, 42 U.S.C. § 1988(c). "Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in § 1920." Frederick v. City of Portland, 162 F.R.D. 139, 142 (D. Or. 1995) (citing Alflex Corp. v. Underwriters Lab., Inc., 914 F.2d 175, 177 (9th Cir. 1990) (per curiam)). Costs enumerated in § 1920 include the following:

1.  Fees of the clerk and marshal;
2.  Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
3.  Fees and disbursements for printing and witnesses;
4.  Fees for exemplification and copies of papers necessarily obtained for use in the case;
5.  Docket fees under section 1923 of this title;
6.  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Synagro requests the following taxable costs:

| | |
|---|---|
| Fees of the Clerk | $159.00 |
| Fees for Sheriff's Services for Service of the Complaint | $25.00 |
| Fees of the Court Reporter for all or any part of the stenographic transcript necessary for use in the case | $2,862.48 |
| Fees for the Exemplification and Copies of Papers necessary for use in the case (at actual cost or at $.10 per page) | $2,042.48 |
| **TOTAL** | **$5,088.96** |

[Bill of Costs at 2.]

### a.    Fees of the clerk and marshal

Fees of the clerk and marshal are taxable pursuant to 28 U.S.C. § 1920(1). Synagro requests the $159.00 filing fee for the Complaint and the $25.00 sheriff's fee for the service of the Complaint. Synagro submitted supporting documentation for each of these items and this Court finds that they are fully taxable pursuant to § 1920(1).

38

**b.**    **Transcripts**

Section 1920(2) allows for the taxation of court reporter fees for transcripts necessarily obtained for use in the case.  The Local Rules provide that:

> The cost of a stenographic and/or video original and one copy of any deposition transcript necessarily obtained for use in the case is allowable.  A deposition need not be introduced in evidence or used at trial, so long as, at the time it was taken, it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery.  The expenses of counsel for attending depositions are not allowable.

Local Rule LR54.2(f)2.

Synagro's transcript costs consist of the following:

| Date Incurred | Description | Amount |
|---|---|---|
| 1/13/06 | Original transcription re 12/14/05 Plaintiff's Renewed and Supplemented Motion for Summary Judgment on Defendant's Counterclaim filed 9/15/04 | $151.25 |
| 7/15/05 | Original transcript and one copy re: deposition of Peter Melnyk taken on 7/15/05 | $881.40 |
| 9/19/05 | Original transcript and one copy re: deposition of Wagdy Guirguis, P.E. taken on 9/19/05 | $1,156.92 |
| 10/5/05 | Original transcript and one copy re: deposition of Peter Melnyk, Ph.D., taken on 10/5/05 | $672.91 |
| | **Subtotal** | **$2,862.48** |

[Mem. in Supp. of Bill of Costs at 5.]  Synagro included invoices for each of the transcript orders.  [Exh. E to Bill of Costs.] Synagro's counsel states that these transcripts were necessary to prepare for hearings and other depositions in this case and that,

at the time, Synagro believed they would be used for trial preparation.  [Bill of Costs, Decl. of Paul Alston ("Alston Decl.") at ¶¶ 10-11.]

This Court finds that Synagro's transcript costs were reasonable and necessarily incurred and that they meet the requirements of Local Rule 54.2(f)2.  The Court notes that the transcript for the hearing on the motion for summary judgment was completed and filed on the same day as the Summary Judgment Order.  Thus, the transcript may seem unnecessary for trial preparation.  Synagro, however, ordered the transcript on December 21, 2005, before the district ruled on the motion for summary judgment.  At that time, Synagro reasonably believed that the transcript would be used for trial preparation.  This Court finds that Synagro's transcript costs are fully taxable under § 1920(2).

### c.    Copying Costs

Section 1920(4) allows for the taxation of copies necessarily obtained for use in the case.  Local Rule 54.2(f)4. states that internal copying costs may be taxed at up to $0.15 per page and that external copying costs may be taxed if reasonable.  However, copies made for the use or convenience of the requesting party or counsel are not taxable.

40

Synagro's copying expenses consist of the following:

| Date Incurred | Description | Amount |
|---|---|---|
| 8/18/04-present | Photocopies from in-house photocopier (at $.10 per page) | $833.70 |
| 5/18/05 | Copying charges by Professional Image re 741 file copies provided by Sakai Iwanaga & Sutton Law Group (black and white, color and oversize copies) | $354.56 |
| 5/31/05 | Copying fees by Sakai Iwanaga & Sutton Law Group re 78 file copies from Sakai Iwanaga & Sutton Law Group | $11.38 |
| 8/23/05 | Copying fees by Professional Image re 772 file copies of documents produced by GMP Hawai`i, Inc. (black and white, and oversize copies) | $124.17 |
| 8/26/05 | Copying fees by Professional Image re 1,095 file copies of documents produced by GMP Hawai`i, Inc. (black and white, color and oversize copies) | $718.67 |
| | **Subtotal** | **$2,042.48** |

[Mem. in Supp. of Bill of Costs at 6.] Synagro included invoices from Sakai Iwanaga & Sutton Law Group ("GMP Counsel") and Professional Image. [Exh. F to Bill of Costs.] Synagro copied a total of 2,608 pages at Professional Image of documents produced in discovery by GMP Counsel. Professional Image's per page rate varies based on the number of copies made and the nature of the copies, *e.g.* black and white or color. Synagro's counsel states that all copies were necessary to the effective litigation of the case. [Alston Decl. at ¶ 13.] GMP Counsel made a total of seventy eight copies for Synagro at a cost of $0.14 per page,

plus tax.  Synagro's counsel states that these were copies of documents produced in discovery and that they were necessary to the effective litigation of the case.  [Id. at ¶ 14.]

Synagro also included a table identifying the date, document, number of copies, and number of pages, of all copies made by counsel in-house.  [Exh. G to Bill of Costs.]  Counsel copied 8,337 pages of relevant pleadings at $0.10 per page. Counsel states that the copies were necessary to the effective litigation of the case.  [Alston Decl. at ¶ 17.]

This Court finds that Synagro's copying expenses were reasonable and necessarily incurred in the effective litigation of this case.  Further, Synagro has provided the information required by Local Rule 54.2(f)4., and the per page rates are within the rule's limits.  This Court therefore finds that the copying costs are fully taxable pursuant to § 1920(4).

### 3.    **Total Taxable Costs**

This Court finds that all of Synagro's costs are taxable pursuant to § 1920.  The Court RECOMMENDS that the district court deny the Objections and tax Synagro's costs in full after the entry of final judgment.

### **CONCLUSION**

In accordance with the foregoing, this Court, acting as Special Master, FINDS and RECOMMENDS that Synagro's Amended Motion for Attorneys' Fees and Related Non-taxable Expenses,

42

filed May 26, 2006, be GRANTED IN PART and DENIED IN PART.  The Court recommends that, after the entry of judgment, the district court award Synagro attorney's fees in the amount of $53,214.82 and taxable costs in the amount of $242.94, for a total of $53,457.76.  The Court further FINDS and RECOMMENDS that GMP's Objections to Amended Bill of Costs Filed Herein on May 26, 2006 be DENIED.  The Court recommends that, after the entry of judgment, the district court tax costs against GMP and in favor of Synagro in the amount of $5,088.96.  The Court emphasizes that these recommendations are contingent upon the entry of final judgment in accordance with the Summary Judgment Order and the Stipulation.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAI`I, January 23, 2007.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**SYNAGRO TECHNOLOGIES, INC. V. GMP HAWAI`I, INC.**; CIVIL NO. 04-00509 SPK-LEK; REPORT OF SPECIAL MASTER ON PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES